## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

JONATHAN W. RUDE,

      Plaintiff,

    v.                         Case No. 05cv1278(RCL)

THE DANCING CRAB AT
WASHINGTON HARBOUR,
L.P. et al.,

      Defendants.

### PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

COMES NOW, Plaintiff, by and through his counsel, and submits this Memorandum of Points and Authorities In Support of Plaintiff's Motion For Partial Summary Judgment.

### Introduction

Plaintiff is seeking summary disposition as to Defendants' Affirmative Defenses.[1] The complaint asserted three alternative basis for relief—(1) respondent superior, (2) negligence in the hiring, supervision and retention of employees, and (3) ratification of conduct by Defendants. Plaintiff seeks compensatory and the imposition of punitive damages. Plaintiff, a student at Georgetown University at the time of the underlying incident, received serious injuries after being attacked by employees of The Dancing Crab at Washington Harbour (hereinafter referred to as the "Dancing Crab). The incident began on the premises of the Dancing Crab and continued on K Street, N.W. in the

---

[1] Defendants Dean A. Cibel and The Dancing Crab at Washington Harbour, L.P. filed a Joint Answer and asserted the same affirmative defenses. (See Doc. #9). Defendants further provided the same information in regard to the involved defenses. In the event the affirmative defense is insufficient for one defendant, that affirmative defense is insufficient as to both defendants.

District of Columbia. Defendants raised the affirmative defenses of (1) plaintiff was a

trespasser, (2) plaintiff's claims are barred by contributory negligence, and (3) plaintiff

assumed the risk of injury (Doc. #9, pg. 3).

STATEMENT OF FACTS

Plaintiff has submitted herewith a Statement of Material Facts in Support of Motion

For Partial Summary Judgment. Such facts are incorporated herein as if set forth in full.

Plaintiff has attached to the Statement of Material Facts documents, deposition excerpts

and exhibits, and relevant transcript excerpts that pertain to the events of June 27, 2004.[2]

The attachments are designated numbers 1 through 6, with subparts. References in this

Memorandum, where necessary, are to the points as identified in the Material Statement

of Facts (identified hereinafter as "MSF ___").

On June 27, 2004 at approximately 1:45 A.M. plaintiff entered the main restaurant and

bar area of the Dancing Crab (MSF 11) Plaintiff was as the Dancing Crab to provide

Michael Gillman a ride home (MFS 11).  The Dancing Crab conducted business as a

restaurant, bar and dining establishment at the Washington Harbour Complex. (MFS 1).

The Complex is located at 3000-3050 K Street, N.W., Washington, D.C. (MFS 1). The

Dancing Crab was an establishment licensed by and regulated by the District of

Columbia Alcoholic Beverage Regulation Administration (MFS 2). The Dancing Crab

had a class CRO3 license and was open to the public as required by the law and District

Regulation (MFS 3).  Olayinka Adeboyeku (hereinafter "Yinka") and Anthony B. Wood

(hereinafter "Wood") were employees of the Dancing Crab on June 27, 2004 (MFS

---

[2] Plaintiff has attached the documents and materials listed on Plaintiff's Statement of Material Facts. The Attachments have been separated into sub-parts as necessary to accommodate the ECF Filing System.

2

4,5,10). Wood has an extensive criminal record including serious felonies which was generally known to the managers of the Dancing Crab (MFS 6).

Officers Robert Owen and Glenn Luckett were present in the main bar area of the Dancing Crab along with plaintiff while Yinka, Wood and Yinka's brother Oluwatosin Adeboyeku stood outside the main entrance/exit to the Dancing Crab. (MFS 15). Yinka was acting in a very angry manner, banging and pulling on the doors saying that he was going to fight plaintiff. (MFS 17). Officers Robert Owen and Glenn Luckett were off-duty and worked for the Washington Harbour Complex providing security services to the Complex.

Robert Puzio, a manager for the Dancing Crab, approached James Sylvester and asked Sylvester to ask plaintiff to leave as Yinka was very angry with plaintiff (MFS 12). Plaintiff had a conversation inside the main bar area of the Dancing Crab with Officer Owen in which plaintiff indicated that he did not have a problem with Yinka and that he was willing to speak with Yinka (MFS 13). Plaintiff specifically stated that he did not want to fight Yinka as he had no quarrel with him (MFS 14). Officer Owen told plaintiff that it would be better not to even see Yinka (MFS 16). Officer Owen took plaintiff, Michael Gillman and two individuals out a side entrance to avoid Yinka and any incident. (MFS 19). Officer Owen, plaintiff and these individuals then walked past the Sequoia restaurant on the boardwalk toward 30th Street and toward K Street, N.W. (MFS 20). Yinka began to follow Officer Owen and plaintiff as they left the side entrance and Yinka began screaming at them, throwing tables and chairs and banging on the outdoor furniture. (MFS 18). Officer Owen turned to address the ruckus that Yinka was creating while plaintiff, Gillman and the other two individuals continued walking up 30th Street.

(MFS 20). Yinka and Wood then turned and cut through the restaurant and main bar area
of the Dancing Crab at which time Yinka told James Sylvester that he was going to
"knock Jon Rude out" and then he was going to come back and knock out Sylvester.
(MFS 21). Yinka and Wood exited the main entrance of the Dancing Crab and ran into
the garage of the Complex. (MFS 22). Yinka and Wood the left the garage area and ran
up the main steps of the Harbour Complex leading toward K Street, N.W. (MFS 23).
Yinka and Wood spotted plaintiff, Gillman and two other persons walking away from the
Complex and down K Street, N.W. (MFS 24).  Yinka ran after plaintiff, Gillman and
these individuals and caught up to them (MFS 25).  Yinka then lunged at plaintiff striking
plaintiff in the back of the head causing plaintiff to fall (MFS 26). Gillman then grabbed
Yinka. (MFS 28). Wood then tackled plaintiff. (MFS 27). As plaintiff lay on the
sidewalk, Wood then pulled Gillman off Yinka. (MFS 28). Yinka then ran over where
plaintiff lay on the sidewalk and kicked plaintiff in the head. (MFS 29). Yinka then was
on top of plaintiff on the sidewalk and striking plaintiff in the head and hitting him in the
face such that plaintiff head was bouncing off the cement sidewalk (MFS 30).[3] When
Wood saw what Yinka was doing, he pulled Yinka off plaintiff and Yinka again kicked
plaintiff in the head. (MFS 31).  Yinka and Wood then returned to the Dancing Crab at
Washington Harbour and went inside to an employee meeting (MFS 32).  Plaintiff, from
the time that he walked into the Dancing Crab until the unprovoked attack, did not speak
to nor communicate in any way with Wood, Yinka nor Oluwatosin Adeboyeku. (MFS
33).  Wood was arrested by the police on June 27, 2004 at the restaurant facilities of the

---

[3] This portion of the involved brutal attack was witnessed by another off duty police officer. That officer, at
the subsequent criminal trial testified that Yinka hit plaintiff in the head approximately 5 times and these
were some of the hardest hits he had ever seen or heard. This is a relevant fact point to the aggravated
nature of the assault. The officer's testimony is not included herewith as it would be duplicative.

Dancing Crab and charged with aggravated assault on plaintiff (MFS 7). Yinka fled to

Maryland and was arrested on July 8, 2004 as a fugitive from the District of Columbia.

(MFS 8). Yinka was returned to the District of Columbia and charged with aggravated

assault on plaintiff (MFS 9).

## ARGUMENT

### Summary of Argument

Plaintiff raises three affirmative defenses. The first defense, that plaintiff was a

"trespasser" is not a valid defense under the current state of the law in the federal courts

in the District of Columbia. That defense is likewise premised upon the purported ability

of defendants to refuse service to anyone. Such a concept was acceptable at common law.

However, the common law was preempted by statutory law in 1869. Cf. title 47, Chapter

29, D.C. Annotated (2005 Supp.) Discrimination in Public Licensed Places.

Defendants further raise the defenses of contributory negligence and assumption of the

risk.  Defendants were clearly negligent in the controlling/supervision of their employees.

The employees themselves engaged in an intentional tort.  The record is devoid of any

evidence to establish that on June 27, 2004 plaintiff engaged in any act which could in

any manner be construed as being contributorily negligent or by which he can be said to

assume any risk. Plaintiff sought to avoid any confrontation and left the premises.

Defendants' employees gave chase and attacked him. The record clearly reflects that

plaintiff was kicked in the head several times during the course of this multiple defendant

brutal attack. In addition, the law is clear that defenses such as contributory negligence

and assumption of the risk are not available to, nor applicable to, intentional torts such as

an assault.

## THE STANDARD FOR SUMMARY JUDGMENT

This Court in *Demar v. PA Consulting Group, Inc.*, Case No. 04-00826 (RCL)

(D.DC.), Memorandum Opinion dated June 30, 2006, set forth this Court's legal standard

for a summary judgment motion. The court noted as follows:

> "Summary judgment shall be granted 'if the pleadings, depositions, answers
> to interrogatories, and admissions on file, together with the affidavits, if
> any, show that there is no genuine issue as to any material fact and that the
> moving party is entitled to judgment as a matter of law'. Fed.R.Civ.P. 56.
> In determining whether there is a genuine issue of material fact, the Court
> views the facts and all reasonable inferences to be drawn from them, in
> the light most favorable to the plaintiff, as the non-movant. (citation omitted).
> Plaintiff must respond to the summary judgment motion by going 'beyond
> the pleadings and by her own affidavits, or by the depositions, answers to
> interrogatories, and admissions on file, and designate specific facts showing
> that there is a genuine issue for trial (citation omitted). It is not enough for
> the plaintiff to point to any alleged factual dispute; rather, she must point to
> a genuine issue of material fact that might affect the outcome of the suit under
> the governing substantive law. (citation omitted). The court must not weigh
> the evidence, Rather, the court must determine whether enough evidence
> exists to enable a reasonable fact finder to find in favor of the plaintiff."

This same standard applies to affirmative defenses raised by a defendant. Defendant has

the burden of proof as to these defenses. As this Court has noted, if an essential element

of a claim (or defense ) is missing; then judgment must be entered for the party seeking

summary judgment. Cf. *Brisbin v. Washington Sports And Entertainment,* Case No. 04-

0643 (RCL), Memorandum Order dated February 21, 2006, at page 4 (the moving party

is successful if the opposing party fails to make a showing of an element essential to that

party's case and on which that party has the burden of proof).  Defendants have the

burden of proof as to the affirmative defenses they have raised—not only as to the

alleged factual basis, but the legal sufficiency as well. If a defense is legally insufficient,

then the facts become irrelevant. The involved affirmative defenses fail on both grounds.

I.    DEFENDANTS' USE OF THE TRESPASSER DEFENSE IS
      NOT CONSISTENT WITH THE CURRENT LAW.

The Court in a Memorandum Order filed March 21, 2005 in *Ver Standig v. The John F.*

*Kennedy Center For The Performing Arts*, Case NO. 02-0555(RCL) , took note that the

common law distinctions have been abolished citing *Sandoe v. Lefta Assocs.* 559 A.2d.

732, 739-740 (D.C. 1988). This Court stated:

    "Current law requires an owner and operator of property to exercise 'reasonable

     care under all of the circumstances to any person lawfully on his premises".

The appellate court in *Smith v. Arbaugh's Restaurant, Inc.*, 469 F.2d. 97, 106 (D.C. Cir.

1972) noted that the "status of an entrant onto property is not solely determinative of the

duty of care owed to him".  Plaintiff is by law a business invitee. See; *Feldt v. Marriott*

*Corporation*, 322 A.2d. 913, 916 (App.D.C.) (restaurant patrons are considered to be

business invitees).

    The above legal precedent is buttressed by the District of Columbia 'Equal Services'

laws contained in Chapter 29 of Title 47 of the D.C. Code.  Section 47-2902(a) forbids

any publicly licensed establishment "to refuse to receive, admit, entertain, and supply any

quiet and orderly person or persons".  There is no evidence in the record that plaintiff did

anything except enter and wait for his friend. Lastly, it is unlawful under the laws of the

District of Columbia to refuse admission or service to any person in regard to public

accommodations. See; D.C. Code Annon. 2-1402.31(a)(1) and (a)(2).  A review of the

Material Statement of Facts shows that it was defendants' employees that were

disorderly. Defendants' concept of the controlling law is antiquated and incorrect. It must

also be noted that there is NO commonality between issues or law related to entry onto

private property versus and "publicly licensed establishment". Defendants cannot make

such commingling of precedent.

II.   THE DEFENSES OF CONTRIBUTORY NEGLIGENCE
      AND ASSUMPTION OF THE RISK ARE EITHER IN-
      APPLICABLE OR ARE NOT SUPPORTED BY THE
      RECORD IN THIS PROCEEDING.

A cursory review of the statement of material facts would show that plaintiff

undertook to avoid a confrontation and a fight. Plaintiff was chased and attacked. There is

nothing in the record to show that on June 27, 2004 plaintiff invited the involved attack.

He stated he did not want to fight and left the premises. It was clear the employees were

the persons looking for a fight.[4]

The Court of Special Appeals of Maryland, in *State Farm Mutual Automobile*

*Insurance Co. v. Hill*, 775 A.2d. 476 (Md.App. 2001) recently discussed the applicability

of the doctrines of contributory negligence and assumption of the risk in a fact situation

similar to the instant case. The appellate court in that case noted earlier precedent which

held that contributory negligence has "no application when the action is founded on

intentional violence" 775 A.2d. at 481. The Court then went on to examine the law

regarding assumption of the risk. The court, reviewed the case of *Janelsins v. Button*, 102

Md.App. 30, 41-43, 648 A.2d. 1039 (1994). In the *Janelsins* case the plaintiff was

KICKED IN THE FACE by the defendant.  The court rejectedas against public policy,

the contention that assumption of the risk could be available as a defense. 775 A.2d. at

482.

---

[4] The cell phone records of plaintiff and Robert Puzio correspond at to date and exact time as to when plaintiff complained about an earlier assault by Yinka on another customer of the Dancing Crab. The inability or lack of interest by defendants in controlling , supervising or disciplining Yinka are overwhelming.

Plaintiff has shown that there are no facts to support any contention that plaintiff willingly engaged in any altercation. Clearly, any reasonable person would attempt to defend themselves. Plaintiff, after being attacked made an attempt. The medical evidence supports the conclusion that the tackle of Mr. Wood caused plaintiff to strike his head and further to incur a dislocated shoulder.[5]  The alleged affirmative defenses are inapplicable in the facts of this case as being contrary to the "legitimate public policy of deterring and punishing wrong-doing". 775 A.2d. at 482.

<u>CONCLUSION</u>

WHEREFORE, in consideration of the above and foregoing, it is hereby respectfully requested that plaintiff's motion for partial summary judgment as to defendants' affirmative defenses be granted as filed.

Dated: 2 October 2006

Respectfully submitted,


_____ /S/ _____
RICK A. RUDE, Esq. #244897
Suite 103
207 Park Avenue
Falls Church, VA. 22046
(AC 703) 536-3063 Tele.
(AC 703) 536-4841 Fax.

Counsel For Plaintiff

---

[5] Wood stood 5ft 10 inches tall, was extremely muscular, and weighed approximately 260 pounds. Plaintiff struck his shoulder on the sidewalk and was 'under' Wood. Plaintiff was already severely injured when Wood enabled Yinka to assault plaintiff a second time. So much for Wood's version of a 'fair fight'.