UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

JONATHAN W. RUDE,

    Plaintiff,

v.                                              Civil Action No. 05cv1278(RCL)

THE DANCING CRAB AT
WASHINGTON HARBOUR, et al.,

    Defendants.

**MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF MOTION FOR SANCTIONS**

COMES NOW, Plaintiff, by and through his counsel, and submits this Memorandum of Points and Authorities in support of Plaintiff's Motion For Sanctions. Plaintiff in support of the Motion states as follows:

State of Facts In Support Of Motion

Plaintiff on June 27, 2005 filed a multiple count complaint alleging negligence on behalf of the named defendants. The complaint likewise sought to include unnamed partners and managers. The defendants filed a joint answer on or about October 20, 2005. The parties met and submitted to the court a proposed procedural order. The court on February 1, 2006 approved and entered a Scheduling Order in this proceeding (Doc. #17).[1]

**(A)**

Facts Related to the Discovery

Plaintiff issued interrogatories and requests for production of documents to defendants. The defendants failed to respond and were uncommunicative with counsel for plaintiff

---

[1] The February 1st Order was amended by Order entered August 16, 2006 (Doc. #25). The discovery period was extended to August 31, 2006 and Dispositive Motions are now due October 2, 2006.

until the time for naming additional defendants had expired.[2] Defendants likewise failed to properly comply with the requirements of Rule 26(a)(1). Plaintiff in January, February and March 2006 filed three motions to compel compliance with discovery. The court granted the involved motions to compel on May 15, 2006 (See Doc. #21, #22, #23). The court ordered that defendants, both Dean Cibel and Dancing Crab at Washington Harbour, provide full and complete compliance with the involved discovery. The court further provided that in the event defendants' failed to comply with the involved discovery requests that plaintiff could seek sanctions. Defendants have not fully complied with the involved discovery requests. Hence, plaintiff is now requesting the imposition of sanctions.

**(B)**

Facts of the Assault and Battery

The facts that have been developed by the discovery to date reflect the following:
(**1**) On June 20, 2004 plaintiff observed an employee of the Dancing Crab at Washington Harbour (trading as "Tony & Joe's Seafood Place", hereinafter "Tony & Joes") engage in an assault and battery on a customer. (**2**) The assault and battery occurred at the entrance to the parking garage of the Washington Harbour Complex (hereinafter "Harbour Complex"). (**3**) The plaintiff reported that incident by way of cellular telephone to Mr. Robert Puzio.[3] (**4**) Mr. Puzio's cellular telephone records confirm receipt of the involved

---

[2] The February 1, 2006 Scheduling Order required the naming and addition of managers and partners be submitted by April 15, 2006. Defendant Dancing Crab at Washington Harbour, L.P. is a limited partnership organized under the laws of the District of Columbia. Plaintiff obtained the names of the partners by means of a discovery subpoena to the DC Alcoholic Beverage Regulation Administration ("ABRA"). Defendant Dean A. Cibel is the son of one of the partners and held a Manager's License from the DC ABRA. Neither defendant has complied with the court's Order to produce the defendants' document, licensing and informational filings with the ABRA.

[3] Mr. Robert Puzio was responsible for security for Tony & Joes and his duties included the hiring, supervision and termination of the security personnel (hereinafter referred to as the 'door staff'). The

2

telephone call from plaintiff. (**5**) The parking garage incident was not the first time that the involved employee had left his assigned post and sought to engage in a confrontation or altercation with a customer. (**6**) On June 27, 2004 plaintiff walked into the main bar area of Tony & Joes at approximately 1:45 A.M. to pick up Mr. Michael Gillman an employee of Tony & Joes. (**7**) Plaintiff waited inside the main bar area for Mr. Gillman. (**8**) Olayinka Adeboyeku a/k/a "Yinka", the employee that plaintiff had reported to Mr. Puzio, was working as a doorman at the outside patio bar area of Tony & Joes, did observe plaintiff, and became angry that plaintiff was at Tony & Joes. (**9**) Yinka and two other employees, were outside the main entrance/exit of Tony & Joes waiting for plaintiff to exit and Yinka was acting in a very agitated manner clearly threatening plaintiff.[4] (**10**) Anthony Wood approached security personnel employed by the Harbour Complex informing them of the intent to have a "fight" and requesting that they" look the other way". (**11**) The security guards were off-duty Metropolitan Police Department Officers and they refused to permit the sought "fight".[5] (**12**) Officer Robert Owen approached plaintiff and informed him of the intent of the involved employees and subsequently escorted the plaintiff, Mr. Gillman and two other individuals out a side door to avoid the Tony & Joes employees. (**13**) Plaintiff told the security officers that he had no problems

---

assailant in the garage, Olayinka "Yinka" Adeboyeku was a "cash employee" and a member of Tony & Joes door staff.

[4] These employees included Olayinka Adeboyeku, Oluwatosin Adeboyeku and Anthony B. Wood. These three employees were part of the door staff but abandoned their respective duties at Tony & Joes in order to confront and clearly attempt to engage in an assault on plaintiff. Oluwatosin Adeboyeku was a "supervisor" of the door staff and therefore part of the management of Tony & Joes.

[5] The individuals were Officers Robert Owen and Glenn Luckett. Officer Owen testified for the government in the subsequent trial of Olayinka Adeboyeku, <u>United States v. Olayinka Adeboyeku</u>, F04-4460 and F-04-4895. Mr. Adeboyeku ultimately followed plaintiff from the Harbour Complex; attacking the plaintiff including kicking the plaintiff with a shod foot while plaintiff lay unconscious on the sidewalk. Mr. Wood, who accompanied Mr. Adeboyeku, admitted to tackling plaintiff which resulted in plaintiff receiving a dislocated shoulder as well as striking his head on a cement sidewalk. Mr. Wood, after he had severely injured plaintiff then announced a 'fair fight' would be held during which Mr. Adeboyeku further injured plaintiff in an effort to permanently damage plaintiff's eyesight. Plaintiff underwent three separate surgeries to repair the involved injuries but did suffer permanent nerve damage to his face.

with Yinka and expressly declined to become involved in any altercation nor did plaintiff engage in any communication with Yinka, Anthony Wood nor Oluwatosin Adeboyeku. (**14**) Anthony Wood and Yinka observed the departure of plaintiff and began to follow the plaintiff and Officer Owen. (**15**) Yinka was highly agitated and was turning over tables and throwing chairs in the outside restaurant area of Tony & Joes as he followed plaintiff. (**16**) Officer Owen, became fearful of the situation and sought to turn Mr. Wood and Yinka back to Tony & Joes. (**17**) Yinka and Anthony Wood turned away from Officer Owen, then running through the interior and the main bar area of Tony & Joes where the incident had begun. (**18**) Yinka, as he ran through the main bar area, announced that he was going to "knock Jon Rude out" and then he was going to come back an attack another employee—Mr. James Sylvester. (**19**) Mr. Wood followed Yinka through Tony & Joes and they went to the garage area of the Harbour Complex in search of plaintiff. (**20**) Yinka and Anthony Wood then observed plaintiff walking down K Street with Mr. Gillman and two other individuals. (**21**) Yinka ran after plaintiff coming from behind plaintiff's left side. (**22**) Yinka walked behind plaintiff for a few paces and then suddenly lunged at plaintiff striking plaintiff in the back of his head causing plaintiff to fall. (**23**) Mr. Gillman grabbed Yinka to prevent further attack. (**24**) Mr. Wood ran up and attacked plaintiff by tackling him to the sidewalk again. (**25**) While plaintiff lay on the sidewalk, Mr. Wood freed Yinka from the grasp of Mr. Gillman permitting Yinka to further attack plaintiff. (**26**) Yinka, during the course of this attack, did kick plaintiff in the head several times. (**27**) Yinka and Mr. Wood returned to Tony & Joes after the involved attack. (**28**) Mr. Wood was arrested at Tony & Joes and charged with aggravated assault. (**29**) Yinka fled to Maryland and was arrested in Rockville on July 8,

2004 as a fugitive. He was arraigned on July 14, 2004 and charged with aggravated assault. (**30**) Yinka, upon release from jail, returned to Tony & Joes and threatened James Sylvester, a witness to the earlier assault. (**31**) Yinka, on or about August 23, 2004, was re-arrested and charged with felony threats. (**32**) Yinka was indicted on November 2, 2004 on six felony counts, including aggravated assault, assault with a deadly weapon, felony threats, and obstruction of justice. (**33**) Mr. Oluwatosin Adeboyeku and Mr. Anthony Wood were retained in the employment of Tony & Joes.

### (C)
### Facts Particular To Defendants' Negligence

In addition to the above facts, it was established as follows: (**34**) Tony & Joes has security cameras and monitors, with recording devices, which would have captured most of the above described events. (**35**) Mr. Cibel was in the office where these monitors were located. (**36**) Mr. Puzio was present in the main bar area conducting a mandatory employee meeting. (**37**) Mr. Puzio and another manager, Charles Moran, were drinking alcoholic beverages and handing out beers to the employees. (**38**) The door staff duties included cleaning up, restocking the beverage coolers and these activities generally took until approximately 3 A.M. (**39**) Yinka was raising such a ruckus at the main entrance and at the departure of plaintiff that his actions would have been observed by everyone present, including the managers-- Puzio, Moran and Cibel. (**40**) Tony & Joes along with 4-5 other restaurants were outlets for a substantial wholesale seafood business operated by the owners/management of Tony & Joes. (**41**) There had been complaints of noise, vulgar and lewd behavior, and other inappropriate activities by patrons of restaurants and bars at the Harbour Complex.  (**42**) Tony & Joes entered into an agreement to restrict its

hours of operation to resolve a permit renewal protest and thereby retain its liquor license issued by the ABRA. (**43**) Tony & Joes would be out of business without an ABRA license and there would be no retail outlets for the underlying wholesale seafood business.[6]

Defendant Dancing Crab at Washington Harbour answered the complaint admitting that it conducted business as a restaurant, bar and dining establishment that had been issued a CRO3 liquor license by the District of Columbia Alcoholic Beverage Regulation Administration (Cmplt, para. 8) The regulations of the ABRA and that of the Metropolitan Police Department required that the MPD file a report with the ABRA when the police are called to an ABRA licensed establishment. Tony & Joes' managers, who were also required to be licensed by the ABRA, were aware that if they called the MPD, there would have been a report regarding the involved assault. That report would have created issues regarding defendant's compliance with an agreement that had been reached with the ABRA and residents of the Harbour Complex.[7]

**(D)**

Defendants' Failure To Comply With The Discovery Orders

As noted above, the Court issued three Orders. Defendants did not comply with the requirements of the Order to provide information on witnesses (Doc. #21). While defendants did subsequently produce three of these individuals for deposition, there was no compliance with the remainder. The deposition of Charles Moran established that

---

[6] This underlying business was identified as "Oceanpro Industries, Ltd" t/a "Profish, Ltd." and these entities occupied the same premises as Tony & Joes at 1900 Fenwick Street, N.E. There are other entities such as Oceanside Management Corporation and Waterside Management Corporation as well. These activities were owned and operated by members of the Cibel family (Anthony, Sr. Nicholas and Dean) as well as Mr. Gregory Casten the son-in-law of Anthony, Sr.

[7] The Washington Harbour Complex includes expensive condominiums valued in the millions of dollars. The ABRA, in August 2002, sent investigators to the Harbour Complex because of complaints by these resident owners.

6

there was a mandatory employee meeting occurring in the main bar area of Tony & Joes at approximately the same time as the events outlined at pages 3-4 infra.[8] These other individuals were students or other short time employees, that would have confirmed plaintiff's facts as to what had occurred at Tony & Joes. Defendants, by failing to provide this information, obstructed plaintiff's ability to locate and interview witnesses. This proceeding involves that circumstance where the preponderance of the evidence is in the sole possession of defendants. Defendants by intentionally delaying discovery and then by subsequent non-compliance with the Court's Order, effectively foreclosed plaintiff access to witnesses that were no longer employees of defendants.

The Court, in Orders Nos. 22 and 23, directed defendants to fully and completely answer plaintiff's interrogatories and to produce the documents sought by plaintiff. Plaintiff has attached hereto and identified as Attachment No. 1, defendants response to plaintiff's request for production of documents. These responses included objections to which the Court's Orders overruled or to which defendants simply did not produce the documents. It was also determined that defendants had engaged in the spoliation of key evidence.

Defendants failed to produce any business documentation regarding the defendant limited partnership, the financial records of the defendant and its related entities, defendants' filings with various agencies of the District of Columbia government; as well as video tape of events inside Tony & Joes restaurant that would have included oral statements, actions of plaintiff, the witnesses, defendants' employees and managers, as well as that of Anthony Wood and Olayinka Adeboyeku. Defendant indicated that no tapes existed. Subsequent deposition testimony revealed that Tony & Joes had working

---

[8] See Moran deposition, pages 23-24, identified hereto as Attachment No. 2.

7

security cameras with recordation devices[9]. It was also established that the management of defendant were fully aware of all of the events by 3:30 A.M. on June 27, 2004. Defendants, with this knowledge, did not preserve nor safeguard this evidence in violation of a direct legal duty. When this incident was investigated by the Metropolitan Police Department, defendants did not disclose the existence of these security cameras and tapes. Plaintiff will hereinafter outline each type of document/information which defendants failed to produce, the relevance of that information, and the sanctions sought. Plaintiff is seeking the sanction of default regarding the spoliation of the security camera tapes as well as the failure to produce agreed upon employee records.

## ARGUMENT

### STANDARDS FOR THE IMPOSITION OF SANCTIONS

This Motion has been submitted pursuant to Federal Rule of Civil Procedure 37(b)(2). The court has substantial discretion regarding the nature of the sanctions imposed. Rule 37(b)(2) provides a series of options. These options include: ordering that certain facts be taken as established in accordance with the claim of the party obtaining the Order (option (A)); refusing a party the ability to prosecute or oppose a designated claim (option (B)); the striking of pleadings, including the entry of a dismissal or default (option (C)); treating the failure to comply with the discovery Order as contempt (option (D)). The courts have established that the sanction is to be "just" and "related to the particular claim which was at issue" in the discovery order. Cf.; _Okla. Federated Gold & Numismatics v. Blodgett_, 24 F.3d. 136, 139 (10th Cir. 1994). Judge Urbina, in _Securities_

---

[9] See Defendant Cibel's Answers Nos. 6,7,8, and 9 to Plaintiff's First Request For Admissions, included as Attachment No. 3 hereto. Plaintiff has included in Attachment No. 4 the deposition testimony of Mr. Cibel, Mr. Eagleton and Mr. Puzio acknowledging the existence and operation of the security cameras and the recordation device. This is compared with Defendant's Response to Document Production Request No. 36 requesting these recordings and the response "None" contained in Attachment No. 1 hereto.

8

*And Exchange Commission v. Hollywood Trenz, Inc.*, 202 F.R.D. 3, 7, (D.DC. 2001), noted that "sanctions are integral to the operation of the judicial system". The standard for the imposition of the sanction of default was recently restated in *Caldwell v. Center For Correctional Health And Policy Studies, Inc.*, 228 F.R.D. 40, 46 (D.DC. 2005). Magistrate Facciola noted that default judgment sanction was appropriate where:

"1) whether the opposing party's ability to present its case has been so severely prejudiced that it would be unfair to require him to proceed, 2)whether the burden placed on the court is intolerable, and 3) whether there is a sufficient need to deter similar conduct in the future (citation omitted)".

Magistrate Facciola further noted the cases wherein default was entered because of a willful failure to comply with a discovery order that "went directly to the merits of the case" or "frustrated" the party's ability to litigate its case. 228 F.R.D. at 46. In addition to the above, defendants breached an established affirmative duty to preserve relevant evidence. The spoliation of evidence is grounds for sanctions. Cf. *Howell v. Maytag, et al.*, 168 F.R.D. 502, 505 (M.D. Pa. 1996)[10].

I.  **THE COURT MUST ENTER A DEFAULT AGAINST DEFENDANTS FOR THEIR FAILURE TO PRESERVE HIGHLY RELEVANT IF NOT DISPOSITIVE EVIDENCE; FOR FAILURE TO PRODUCE WITNESS EMPLOYMENT RECORDS; AND FOR THE FAILURE TO COMPLY WITH THE COURT'S MAY 15, 2006 DISCOVERY ORDERS.**

Plaintiff has included in Attachment No. 1 a series of document production requests. While defendants did not fully and completely answer interrogatories, their failure to produce documents prejudiced plaintiff's ability to fully prosecute his claims. Defendant

---

[10] The lesser sanction for spoliation of evidence is imposition of adverse inference jury instructions as well as awarding the costs and fees incurred as a result of the failure to produce the discovery that was destroyed. Cf. National Association of Radiation Survivors v. Turnage, 115 F.R.D. 543, 556-559 (N.D. Cal. 1987),

9

Dancing Crab at Washington Harbour, L.P. is essentially a family operated business[11]. The Dancing Crab was determined to be one of a series of licensed establishments operated by the "Cibel" family. Further, that the Cibel family had a wholesale seafood business identified variously as "Profish, Ltd." and "Oceanpro Industries, Ltd." which conducted business out of the same warehouse facilities controlled by the Cibel family on Fenwick Street in Northeast Washington, D.C.

Document production requests 3, 4, 7 and 8 involved the identification of employees that were working on three specific days and the production of their employment files.[12] The parties subsequently agreed that defendant would produce all of the employment and personnel files for the door staff that worked those three days. Defendant has never produced those files. Mr. Charles Moran, a manager that worked on June 26, 27, 2004 stated that there was an employee meeting being conducted by Mr. Robert Puzio in the main bar area of the restaurant at the time of the event. (See Attachment No. 2). The meeting was mandatory for the door staff and these persons would have seen most of the event in question.

Defendant denied the existence of any recording devices on the hidden security cameras. (See Attachment No. 1, response 36). Upon deposition, witnesses stated that the security cameras in fact had a tape recordation device. (See Attachment No. 4). Mr. Dean Cibel pursuant to Fed.R.Civ.Proc. 36, not only admitted the existence of the cameras, but that they were operational; that they provided a view of the interior bar, including the main bar area and lounge areas; and that the manager's office had monitors

---

[11] Defendants in answer to the complaint represented that "Nick's Riverside Grill" and "Cabanas" were trade names for the Dancing Crab business. It was determined in late May 2006 that these entities were separately established but were operating under the unregistered trade names noted herein.

[12] Plaintiff Interrogatory Number 8 requested defendant to identify all persons that were employees and that were working on June 19-20, 2004, June 26-27, 2004 and July 23-25, 2004.

on which the images from these hidden surveillance cameras were displayed (See Attachment No. 3 & 4). These cameras would have captured the actions of the managers, the conversations, the after-hours drinking by the staff and managers, the intervention by the Harbour Complex security staff, the actions of Mr. Wood and Mr. Adeboyeku, the statements against interest by both of these individuals as well as the managers.[13]

The Court's Order of May 15, 2006 directed defendant Dancing Crab to fully comply with the requirements of Rule 26(a)(1) and to certify the search and compliance to the court. Defendant did not do so. While Fed.R.Civ.Proc. 26(a)(1) involves the identification of potential witnesses, the effect goes beyond the boundary of the Rule. Here Defendant was required to identify witnesses both in the interrogatories and to produce the witness employment files. Defendant Dancing Crab simply did not comply. Plaintiff, by this motion is seeking default in addition to the barring of the utilization as the individuals named in the Court's Order as witnesses by defendants.

It is a fundamental principle that an employer as the duty to control its employees. Secondly, that if it is foreseeable that an assault may occur, there is an affirmative duty to not only warn the victim but to call the police. The managers of the Dancing Crab were already on notice that Yinka disliked Georgetown University students; that he had left his assigned post in the past in order to confront and then assault a customer; that plaintiff had already reported Yinka regarding the earlier assault and battery; and that he had established an ongoing "problem" with some of the Dancing Crab's customers. The

---

[13] Mr. Michael Gillman, in his deposition, stated that he called Robert Puzio at approximately 3:30 A.M. on June 27, 2004 and told Mr. Puzio what had occurred. The telephone record of Mr. Puzio reflects that he received a call from Mr. Gillman's cell phone at 3:38 A.M. on June 27, 2004. Mr. Cibel and Mr. Puzio were still at defendant's restaurant facilities and were on notice immediately that the security cameras had captured the gist of the first series of events.

11

managers were further aware that Yinka's conduct violated defendant's employee policies and the standards of conduct, yet they did nothing. In fact, the 'supervisor' of the door staff (Oluwatosin Adeboyeku) participated in the involved incident. The depositions and sworn statements provided to the Metropolitan Police Department, and confirmed by interviews with the involved officers, established that Mr. Puzio made the statement that he was tired of Yinka' behavior and wanted him "locked up".[14]

It is appropriate for the court to enter a default based upon the willful nature of defendants' failure to provide key evidence. Defendants have either withheld, discarded or destroyed the video tapes. They failed to produce the employment files on witnesses preventing the identification and location of material witnesses. The evidence goes directly to what was occurring in the main bar area and directly toward the actions of defendants' employees.

Default is the most appropriate remedy for these intentional violations of the court's discovery orders as well as the duty to preserve relevant evidence. In the event the Court deems a default too extreme; the individuals identified in the Court's May 15, 2006 Order (Doc. #21) must be barred from being called as witnesses for defendants. Likewise, defendants should not be permitted to dispute the facts stated in the depositions of James Sylvester and Michael Gillman as to what occurred inside Tony & Joes on June 27, 2004.

## II. THE COURT MUST FIND PLAINTIFF IS ENTITLED TO PUNITIVE DAMAGES AND PAYABLE DIRECTLY BY THE GENERAL PARTNERS OF DEFENDANT.

Defendant Dancing Crab at Washington Harbour is a limited partnership under the laws of the District of Columbia. Plaintiff's document request nos. 1, 2, 5, 9, 10, 15 and 50 relate to plaintiff's claim for punitive damages as well as the identification of

---

[14] The absence of the camera tapes enabled Mr. Puzio to deny that statement.

12

additional named defendants. Secondly, that information went to the determination of whether or not the Dancing Crab was actually the proper entity for suit or was it some other company.[15] Plaintiff sought the records submitted to ABRA as they are made under oath and include the proper legal identification of the licensed business. Secondly, that under ABRA regulations, there must be a "manager" who was on duty and responsible for the operations of the business.  Neither Dean Cibel nor Dancing Crab at Washington Harbour produced any of these documents. They likewise did not produce financial records, tax returns, corporate and partnership records nor any records that would have been submitted to the District of Columbia.  In addition, they did not produce records of the "cash payments" required by production requests 40-45. There were no current employment records (2004 or later) on Yinka, Anthony Wood nor Oluwatosin Adeboyeku. It was stated that managers were taking cash from the registers and paying these individuals. The appearance is under declaration of revenue by defendant and its owners. That is an issue of tax fraud and credibility for defendant. The question was also; did these individuals work for the Dancing Crab or were they really employed by another of defendants' multiple entities.  The failure to produce these records prevents plaintiff from making a claim for punitive damages.

A.  PLAINTIFF WOULD BE ENTITLED TO PUNITIVE DAMAGES IN THIS PROCEEDING.

The court will look to the precedent in the District of Columbia regarding an award of Punitive Damages. In the District of Columbia such damages are appropriate if the

---

[15] A search of the records of the District of Columbia was not successful due to the fact that the Cibel family had the practice of operating under unregistered trade names. A physical site search revealed that other entities existed as locations were only the Dancing Crab at Washington Harbour was supposed to exist. The document production request identified the period January 1, 2000 through January 2006. The document production request likewise included the members of the Cibel family and any entities which could be identified (See instruction 5 and definition of Defendant attached hereto as Attachment No. 5).

13

defendant "acted with gross fraud, wantonness, maliciousness or willful disregard of plaintiff's rights". *Rainbolt v. Johnson*, 669 F.2d. 767, 769 (D.C. Cir. 1981). Plaintiff must utilize a defendant's "net worth" as indicia of the appropriate amount of punitive damages. *Woodner v. Breeden*, 665 A.2d. 929, 940 (App.D.C. 1995). The United States Supreme Court recently addressed what constituted an appropriate ratio between compensatory and punitive damages. The Court in *BMW of North America, Inc. v. Gore* (1996) 517 U.S. 559, 581-582, 134 L.Ed.2d. 809, 830, 116 S.Ct. 1589, noted that the relevant ratio of punitive damages to compensatory damages in an intentional tort would be "not more than 10 to 1". Since defendants have refused to produce the evidence necessary to establish their net worth, plaintiff is hereby requesting that this Court impose on any judgment obtained punitive damages utilizing the ratio expressly approved by the Supreme Court as "reasonable".

Plaintiff has attached hereto and identified as Attachment No. 6 an excerpt from a June 27, 2004 MPD interview with Mr. Anthony Wood. Mr. Wood acknowledges that he was read his rights. (pg. 2, line 20-23). Mr. Wood stated he saw plaintiff's head "hit the concrete twice" (pg. 7, line 1-2). Mr. Wood stated that Yinka kicked plaintiff in the head (pg. 7, lines 8-21, pg. 10, line 6-10). Mr. Wood admitted to tackling and being on top of plaintiff (pg. 8, lines 4-12). The act of kicking someone with a shod foot, as occurred here, is assault with a deadly weapon under District of Columbia law. *Medlin v. United States*, 207 F.2d. 33 (D.C. Cir. 1953).

It is very clear that the managers of Tony & Joes were grossly negligent and acted in willful disregard of the safety and rights of plaintiff. The history of Yinka's misconduct is highly documented. Further, the managers had a clear motive NOT to call the MPD even

14

when their employee was openly threatening and was damaging defendant's business property. It is long established that there is a duty to call the police when an assault is foreseeable. Cf. *Quinn v. Winkel's*, 279 N.W.2d. 65, 68 (Sup.Ct. Minn. 1979). The actions of defendant's employees went on for approximately 30 minutes escalating by the minute before Yinka and Mr. Wood chased plaintiff from Tony & Joes. Mr. Wood said there was going to a 'fight'. The attack was apparently planned with the participation of a supervisor. Defendants had a duty to not only call MPD but to take affirmative action to control/restrain their employees. These employees left the premises and then RETURNED. The evidence at trial would more than support the imposition of punitive damages.

> B. THE DANCING CRAB GENERAL PARTNERS
> MUST BE HELD DIRECTLY LIABLE FOR THE
> DAMAGES ESTABLISHED BY PLAINTIFF.

Plaintiff was a business invitee and entitled to the reasonable care of defendants. It is well established that the Courts have eliminated the distinctions between invitees, licensees and trespassers. Cf. *Ver Standig v. John F. Kennedy Center for the Performing Arts,* D.DC. Case No. 02-0555(RCL), Memorandum Order filed 3/21/2005 at page 8 "owner and operator of property to exercise 'reasonable care under all of the circumstances'" (citations omitted). Defendant Dancing Crab is a publicly licensed establishment and is required to be open to all and may refuse service to no one. Cf. D.C. Code Annon. 47-2901 (2005 Supp.); DC Code Annon. 2-1402.31(a) (2005 Supp.); and DC Code Annon. 2-1401.01 (2005 Supp.) intent of Council to prevent discrimination for any reason in the District of Columbia (commonly referred to as the "Human Rights Law").

Defendants have refused to provide their filings with the ABRA as well as the DC Office of Consumer and Regulatory Affairs. The ABRA licensing reflects that managers must certify that they are familiar with the underlying regulations as well as having a licensed manager on duty at all times. Further, that there are extensive documentation and financial/corporate record filings required by all applicants. Defendants have sought to obscure the nature and full identity of all partners by refusing to comply with document production ordered by the Court.

The District of Columbia Code renders all general partners liable for any debts or liabilities which a limited partnership incurs. DC Code Annon. 33-204.33(a) and 204-33(b). Plaintiff obtained some documents from ABRA. Attached hereto is a deposition excerpt and two exhibits (nos. 2 and 7) of Mr. Gregory Casten. Mr. Casten admits the contents of Exhibit 2. That document, dated May 18, 2004 identifies the general partners of the Dancing Crab as (1) Anthony Cibel, Sr., (2) Gregory Casten, (3) Rodger Weeks, and (4) Csabal Magassey (see Ex. 2, ABRA pg. 0025). The document is signed by Casten, Cibel and Magassey (see Ex. 2, ABRA 0026). Mr. Casten also admits to the contents of the ABRA investigative report and that without their ABRA liquor license that Tony & Joes would be "out of business". (Casten Dep. at pg. 27, lines 11-16).[16] The owners and partners in defendant are seeking to avoid inclusion in this action by refusing to produce the documents which would identify them. Under the circumstances, in conjunction with defendants' refusal to provide the financial and corporate/partnership information; the court may disregard the limited partnership of the Dancing Crab and

---

[16] The investigate report involved another Cibel family owned operation—PPT, Inc. t/a Riverside Grill that is commonly operated. While defendants stated in their joint answer to the complaint that "Nicks Riverside Grill and Cabanas were trade names for Tony & Joes", the ABRA documents disclose that they were in fact separate legal entities.

16

permit the general partners to be held directly liable. This would 'balance the scale' because of defendant's failure to acknowledge any discovery until after the time for adding these same individuals had passed under the Scheduling Order. Further, that the myriad of entities operated and controlled by defendants can be disregarded and the true parties responsible be held directly liable.

## CONCLUSION

Wherefore, in consideration of the above and foregoing, it is hereby respectfully requested that the Court grant this motion as filed and that the Court entered the proposed Order that is submitted herewith and that the Court enter an Order for such other and further relief as the Court deems just and appropriate in the circumstances; including that plaintiff may file a cumulative motion for attorneys fees associated with the multiple motions to compel and this motion for sanctions.

Dated: 29 September 2006

Respectfully submitted,

_____/S/_____

RICK A. RUDE, Esq. #244897
Suite 103
207 Park Avenue
Falls Church, VA. 22046
(AC 703) 536-3063 Tele.
(AC 703) 536-4841 Fax.

Counsel For Plaintiff