UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

JONATHAN W. RUDE                                  :
                                                 :
        Plaintiff                                :
                                                 :
vs.                                              :     Case No.: 1:05CV01278
                                                 :
THE DANCING CRAB AT WASHINGTON HARBOUR,          :
LP, ET AL.                                       :     JUDGE ROYCE C. LAMBERTH
                                                 :
        Defendants.                              :
                                                 :

---

**MEMORANDUM IN SUPPORT OF OPPOSITION TO MOTION FOR SANCTIONS**

---

The Defendants, THE DANCING CRAB AT WASHINGTON HARBOUR, LP and DEAN CIBEL,

by and through their counsel, Richard R. Page Wyrough and Cain & Wyrough, PC,  in support of

their opposition to Plaintiff's Motion for Sanctions submit this memorandum.

**INTRODUCTION**

Plaintiff spends five (5) pages in his memorandum describing "facts" elicited during

discovery.  The connection between those alleged facts and the requests for relief made in the motion

is never made.  The decision of the Defendants not to address the manner in which those facts are

presented should not be taken as an acknowledgment that the "facts" are accurately described; or that

the inferences that Plaintiff would bestow on those "facts" is accurate.  Those facts simply have

nothing to do with this motion and, accordingly, will not be addressed.  On the other hand, what that

five (5) page recitation confirms is that there was extensive discovery taken in this matter.  Plaintiff's

cries of foul are disingenuous and misleading at worst and wishful at best.  First, the simple fact of

the matter is that there are no tapes of the incident; there never were any tapes of the incident; and

there is absolutely no proof which supports the naked allegation that tapes were deliberately destroyed. With respect to the claim that financial records, corporate records or related information were not produced, in the first instance, information concerning the corporate structure of the Defendant, the Dancing Crab, as well as other entities about which Plaintiff informally inquired was disclosed and other business records were produced , and in the second instance, Plaintiff counsel acknowledged that Plaintiff was not entitled to the financial records of the Defendants until if and when a judgment was obtained. Not until after the close of discovery and the filing of this motion did Plaintiff take the contrary position that Plaintiff was entitled to financial information and tax records to support a punitive damage claim. Finally, Plaintiff was provided with the name of each and every employee of the Defendant as well as the names of employees of other entities, the work schedules and hours of all those employees for the time period in question without the benefit of a request or subpoena to those other entities, the employment files of some of those employees and the opportunity to review the employment files of all those employees which Plaintiff declined to do. Both current and ex-employees were produced for deposition without the need for the issuance and service of a subpoena. Each and every employee that the Plaintiff requested was produced for deposition. In short, Plaintiff got all the information which he sought or to which he was entitled, has not suffered any prejudice, and is not entitled to the extreme relief requested.

## SPOLIATION

Plaintiff asserts "that it was determined that defendants engaged in the spoliation of key evidence". *see page 7 of plaintiff's motion*. Plaintiff also variously asserts that "[d]efendants failed to produce . . . video tapes of events inside Tony & Joes restaurant that *would have included oral statements* , actions of plaintiff, the witnesses, defendants' employees . . . [d]efendant indicated that no tape existed ." *see page 7 of plaintiff's motion, emphasis added.* Plaintiff goes on to argue that

the security camera was operational and the tape machine functional. That the security camera was functional was never disputed or hidden. *see response to request for admissions 6, 7, 8 and 9 in Plaintiff's exhibit 3*    Those responses were forwarded to Plaintiff on January 26, 2006. The testimony of the witnesses was that the cameras were functional. *see Plaintiff's exhibit 4* Whether or not the tape machine was functional is unclear. *see Plaintiff's exhibit 4*  What is missing is that no one testified that tapes were made or kept on a daily basis or for that matter that tapes of the incident were made and, then, deliberately destroyed.   There is no testimony or evidence that the tape machine was used on the night in question.  There is a question as whether or not the machine was even functional at the time. *see deposition excerpt of David Pera attached hereto as Exhibit 1.* If asked, the testimony of representatives of the Defendants would be that the tape machine did not function properly and had not been used for quite some time, which is a question Plaintiff failed to ask.  Plaintiff asserts that the Defendants deliberately spoiled evidence when there is not a shred of evidence that tapes of the night of the incident were made, kept or destroyed by anyone.  Plaintiff's argument is that there were cameras.  There likely was a functioning recording device attached to the camera, although none of the deposition testimony cited by the Plaintiff clearly supports that position.  Therefore, a tape was made of the incident, that tape would have sound (a contention for which there is absolutely no support in the record), and that because the tape was not produced by the Defendants, that means that the tape was deliberately destroyed.  The identity of the person or persons who destroyed the tape is not disclosed by the Plaintiff, nor is the identity of anyone who claims the tape was destroyed.  The Plaintiff is asserting that the Defendants, despite the lack of any evidence that the Defendants participated in or directed the destruction of the alleged tapes, should be sanctioned.  Any contention that the Defendants destroyed evidence is groundless and speculative. Plaintiff should be precluded from making such a slanderous, prejudicial and conclusory argument

in front of a jury, and the assertions certainly do not support in any fashion the requests for the harsh

sanctions advanced by the Plaintiff.

## CORPORATE RECORDS

As with the records concerning employees which is addressed below, Plaintiff fails to

disclose to the court that the Defendants provided the Plaintiff with the Dancing Crab's answers to

interrogatories and the Dancing Crab's and Dean Cibel's responses to request for production of

documents on April 14, 2006 and Dean Cibel's answers to interrogatories on April 19, 2006. *see*

*April 14, 2006 email marked as exhibit 2*   Counsel for the Plaintiff and counsel for the Defendants

met and conferred on May 5, 2006 concerning Defendants' responses to discovery.  The areas of

disagreements with respect to the content of the responses in light of the objections were discussed

and compromises reached.  On May 15, 2006 the court issued its orders that the Defendants should

respond fully and completely to Plaintiff's discovery within ten (10) days.  At the time of the orders

Plaintiff had had Defendants' responses for almost a month and the parties had addressed Plaintiff's

concerns with Defendants' objections and responses.  With respect to the request for financial

information and tax records the Defendants had taken the position that the information was not

discoverable unless and until a judgment was obtained.  At that time of judgment, the financial

information on which any punitive damage award might be based would be produced and the trial

would move into a second phase.  Notwithstanding that, the Defendants did subsequently produce

all the records in its possession concerning cash payments to employees during the time period in

question contrary to Plaintiffs' assertion in the motion.  The validity of the Defendants' position

concerning the financial information generally and tax returns specifically was acknowledged.  At

the conference on May 5, 2006 counsel for the Plaintiff indicated that what he really wanted to

ensure with respect to reviewing the financial information was that the proper party had been sued.

On May 30, 2006 the Defendants provided Plaintiff with a summary of ownership structure of the entities about which Plaintiff had inquired at the conference on May 5, 2006. *see email dated May 30, 2006 marked as exhibit 3*  In the interim, Plaintiff had been provided with a number of additional documents responsive to Plaintiff's requests. *see emails marked collectively as exhibit 4.*  Those documents included a copy of the general partner's corporate charter.  Other business records were produced as well.  The corporate structure was confirmed in writing again on June 1, 2006 in response to a letter from counsel for Plaintiff dated May 26, 2006. *see copies of letters attached as exhibits 5 and 6.*  In his letter of May 26, 2006, Plaintiff's counsel took the position that the court's order of May 15, 2006 "superceded" any disagreements that arose out of the May 5th conference.  In his motion Plaintiff asserts that the court's orders "overruled any objections" made by the Defendants in their responses. *see page 7 of Plaintiff's memorandum*   What exactly Plaintiff's counsel meant by superceded is unclear generally and certainly unclear with respect to the production of financial records, other than the ones referenced above, and tax returns.  The Defendants had attempted to answer fully and completely Plaintiffs' discovery in mid April.  Objections were made to certain requests.  Plaintiff now interprets the court's orders as precluding the Defendants from making any appropriate objections to Plaintiff's discovery.  The Defendants did not read the court's order as requiring the Defendants to waive objections made with a good faith legal basis.  The Defendants certainly did not believe themselves to be in breach of the court's orders to fully respond to discovery after counsel had met; discussed the objections; attempted to resolve any disputes concerning discovery; and, in large part, believed that the disputes had been resolved prior to the issuance of the court's orders.  In any event, on June 1, 2006 in response to the letter of May 25, 2006 counsel for the Defendants reiterated that:

> With respect to the tax returns and financial records and as discussed at the discovery

conference, you [are] going to have to provide me with some legal authority on why you are entitled to any of those records. You seemed to acknowledge the validity of this point at our discovery conference. *see exhibit 7, bottom of the 3rd page*

Counsel for the Plaintiff never responded to the letter of June 1, 2006 and never again demanded the production of the financial records or tax returns and never provided the authority requested. Note that the Plaintiff asserts that his entitlement to punitive damages is predicated in part on an assertion that "it is long established that there is a duty to call the police when an assault is foreseeable". The Plaintiff acknowledges that police officers escorted the Plaintiff off the premises and attempted to prevent an altercation from occurring. If that is the case, where is the breach and how could the Defendants ever be said to have acted in a grossly negligent fashion.

Other than the assertion that he is entitled to financial records to support a punitive damage claim, Plaintiff makes a number of allegations with respect to the failure to produce business records and the alleged prejudicial impact visited upon the Plaintiff as a result thereof. The allegations are somewhat disjointed, but will be addressed seriatim as presented in the memorandum. Plaintiff asserts that the Defendants failed to produce any business records of the Defendant limited partnership. The assertion is inaccurate. Copies of articles of incorporation for the corporate general partner were produced. *see exhibit 4* The leases for the limited partner defendant were produced. *see exhibit 4* The Defendants offered to produce a copy of the partnership agreement. *see exhibit 6* Other records not referenced in emails were produced as well. All the records from ABRA were obtained by the Plaintiff himself. Copies of the manager's licenses were produced by the Defendants as were other records to and from the Liquor Board. Every record of a cash payment during the time period in question was provided by the Defendants as were complete copies of whatever documents were in the employee files of Yinka, Wood and Oluwatosin Adeboyekyu. *see*

*exhibit 4*

Finally, Plaintiff boldly claims that Defendants sought "to obscure the nature and full identity of all partners by refusing to comply with the document production ordered by the court". *see page 16 of Plaintiff's memorandum*. As is described above, information concerning the corporate structure was provided to the Plaintiff by the Defendants prior to Plaintiff's receipt of any documents from ABRA, the professed purpose of which was to obtain information on Defendant Dancing Crab's corporate structure.. Further, if the Plaintiff procured all that information from ABRA that there was to obtain, there can be no prejudice, if the documents are even material to Plaintiff's claim. The Plaintiff then goes on to outrageously assert that the "court may disregard the limited partnership of the Dancing Crab and permit the general partners to held directly liable . . ." as '. . . [t]his would balance the scale *because of defendant's failure to acknowledge any discovery until after the time for adding these individuals had passed under the scheduling order*." *see page 17 of Plaintiff's memorandum - emphasis added* The time to amend the complaint to add new parties except for parties specifically named in the complaint expired on December 15, 2005. No deadline was set for an amendment adding parties specifically named in the complaint. Defendants responses to discovery were not due until almost two (2) months after the deadline for amendments. The assertion that the Defendants deliberately failed to respond to discovery to forestall action before a deadline that had already passed or had not been set is ridiculous.

### EMPLOYEE IDENTIFICATION & RECORDS

Plaintiff complains of an alleged failure to produce documents which identified the employees who were working on three (3) specific days and copies of their employment files. Plaintiff then asserts that the parties agreed that all the employment and personnel files of the doormen would be produced and that the Defendants never produced those files. *see page 10 of*

*Plaintiff's memorandum.* Thereafter, Plaintiff alleges that the ". . . Defendant was required to identify witnesses . . ." and " . . . simply did not comply" and, therefore, the Defendants should be barred from calling any of the witnesses identified in the 26(a)(1) statement and should be barred from disputing the versions of events of two of Plaintiff's witnesses as to what occurred on June 27, 2004. *see pages 11 and 12 of Plaintiff's memorandum.* That extreme remedy purportedly is justified by the alleged willful nature of Defendants' "[failure] to produce employment files on witnesses preventing the identification and location of material witnesses" and effectively foreclosing access to witnesses who were no longer employees. *see pages 7 & 11 of Plaintiff's memorandum.* The allegations fall apart under glancing scrutiny.

On or about April 26, 2006 Plaintiff was served with a copy of a supplemental Rule 26(a)(1) disclosure. *see amended disclosure attached as exhibit 7* The supplemental disclosure provided more current information on the seventeen (17) individuals identified therein. The order of May 15, 2006 did not require the Defendants to produce copies of the employment files of all the seventeen (17) individuals identified. Of the seventeen (17) witnesses identified, Plaintiff had already identified some of the witnesses with their addresses in his initial disclosure. Of the seventeen (17) individuals listed Plaintiff deposed Robert Puzio, John Eagleton, and Charles Moran, none of whom were Dancing Crab employees at the time of their depositions and all of whom appeared at the behest of the Defendants without the need for a subpoena. Plaintiff deposed another former employee not listed in the disclosure statement, but identified in the payroll and labor reports produced. Her attendance at the deposition without a subpoena was procured in part by efforts of the Defendants. Plaintiff's counsel indicated that he did not desire to depose James King, who is not a current employee of the Dancing Crab, but is an employee of a related entity, nor did Plaintiff's counsel desire to depose any other employee of the Dancing Crab even though counsel was advised that those

employees would be made available for deposition. One of those employees was Dave Barrow. In addition making witnesses available for deposition, the Defendants produced copies of payroll and labor reports from the Dancing Crab and Nick's Riverside Grill, not a party to the suit, time sheets, schedules for the bouncers and guest checks from the time period in question, all of which contained information about the employees and potential witnesses to the incident. *see exhibit 4*. The Defendants also produced the employee files of "Yinka" and Tony Wood, the alleged assailants, as well as a copy of the Plaintiff's employee file. *see exhibit 4* There were indeed discussions about the review of employment files. Give the concerns about the confidential information in those files, while the Defendants were not inclined to simply copy the files, Plaintiff was given the opportunity to review those files. *see exhibit 6* Plaintiff decided that such a review was unnecessary. The long and short of it is that Plaintiff was provided with ample documentation on the identity and whereabouts of potential witnesses; Plaintiff deposed three of those witnesses; specifically declined to depose another and opted not to depose another. If Plaintiff has been unable to locate material witnesses, it was not due to any wilful act on the part of the Defendants.

If there has been a failure to comply with the court's order it was counsel's failure to provide the certification to the court that the records had been examined. The failure was not that of the Defendants. The failure to see that the certification was filed was due solely to counsel's oversight. That omission was made against the backdrop that the supplemental 26(a)(1) disclosure was made prior to the date of the court's order, that disclosure constituting at least partial compliance with the court's order, and the ongoing conversations between counsel concerning discovery. The omission was not deliberate and certainly does not constitute grounds to sanction the Defendants in the manner sought by Plaintiff.

## CONCLUSION

Plaintiff's protests of foul and prejudice are in large part hyperbole, likely driven by a father's desire to protect his son. However, the pursuit of that natural and commendable goal in this instance is overzealous. There is absolutely no legally cognizable proof that these Defendants directed or participated in the destruction of evidence. Plaintiff was provided with Defendants' responses to discovery prior to the issuance of the court's May 15, 2006 order, the Defendants attempted in good faith to respond fully and completely to Plaintiff's discovery, many business records were produced and any objection to the failure to produce financial records material to a punitive damage claim, if discoverable at all at this juncture, has been waived. Finally, the assertion that the Plaintiff was not provided with information on the identity and location of witnesses with knowledge of facts material to the case is groundless. The instance of non-compliance complained of by the Plaintiff, the failure to certify, is the fault of counsel alone and that failure does not warrant the imposition of the sanctions sought by the Plaintiff. Plaintiff's motion accordingly should be denied.

Respectfully submitted,

CAIN & WYROUGH, P.C.

_____/s/_____
RICHARD R. PAGE WYROUGH, #02821
15051 Marlboro Pike
Upper Marlboro, Maryland 20772
(301) 627-4600

<u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 17th day of October, 2006, a copy of the foregoing was electronically filed in this case and was electronically mailed to:

Rick A. Rude, Esq.
Suite 103
207 Park Avenue
Falls Church, Virginia 22046

_____/s/_____
RICHARD R. PAGE WYROUGH