**CAIN & WYROUGH, P.C.**
Attorneys-at-Law
15051 Marlboro Pike
Upper Marlboro, Maryland 20772
(301) 627-4600
fax: (301) 627-2716
page@SoMdLaw.com

Steven T. Cain*
Richard R. Page Wyrough

Sloane R. Franklin

*Also admitted in the District of Columbia

Of Counsel:

John W. Mitchell
Annette DeCesaris

EXHIBIT 1

June 1, 2006

Rick A. Rude, Esq.
207 Park Avenue
Suite 103
Falls Church, Virginia 22046

      RE:   Rude v. Dancing Crab
              Discovery Issues

Dear Mr. Rude:

      This is in response to your letter of May 26, 2006 and in response to your emails received this morning. Quite frankly, after our recent meeting and subsequent telephone conversations, I was surprised to receive the letter and the tone of the letter and emails surprise me as well. Be that as it may, since you have taken a position in writing, I am compelled to respond in kind.

      You start out the letter of May 26, 2006 by stating that "[you] are going to make every effort to complete discovery in this case by July 31, 2006." That position is contrary to the position taken at our discovery conference when you stated, I did not broach the subject, that a two month discovery extension would be appropriate and I should take the lead on preparing a consent motion to that effect. It is also contrary to your expressed view that this case and your companion case likely would be consolidated for trial. Given the scheduling order in place in the companion case, your position with respect to the date by which discovery must be completed is mystifying. It also is contrary to the statement you have made to me on numerous occasions, that as along as you are being treated professionally, you will respond in kind. As I told you when we had our discovery conference, the lack of recent responsiveness is my fault alone and due to the demands of my practice. I assured you that I would try to respond in a more timely and cooperative fashion. The explanation seemed to satisfy you. I have endeavored to keep that promise, both with respect to written discovery and documents and depositions. There also is a great disconnect between the professional nature of our person to person contacts and the apparent attitude and tone taken in the letters and emails.

      I will attempt to respond to the issues raised in the letter and emails. Many of the questions you ask are questions which flow naturally from the content of the documents and in many instances are more appropriately the subject of questions directed to the appropriate representative of the Dancing Crab and do not comprise a failure to cooperate with you in discovery.

The Lease

      Your document request is addressed to the Dancing Crab. In that request you ask for a copy of the lease. As you correctly point out the lease was provided to you in December, 2005. Your only comment to me at our discovery conference was that the lease appeared to be

incomplete. Your letter of May 26, 2006 raises additional concerns. What the issues raised concerning Nick's Riverside Grill and Cabanas have to do with a request for the Dancing Crab's lease is unclear. If you are supplementing your prior discovery request or informally asking for a copy of those leases as well, I will be glad to comply with any such request. To date, no such request has been made.

With respect to reference to statement the "[t]he answer identifies [Riverside Grill/Cabanas] as a trade name", what answer you are referring to unclear. Further, what any record filings or lack thereof have to do with the adequacy of the discovery responses is unclear.

As recently indicated the corporate structure of the various entities you asked about at the discovery conference is as follows:

**The Dancing Crab at Washington Harbour Limited Partnership t/a Tony and Joe's**

19.0% Waterside Management, this is the controlling entity of the General partnership – it is 100% owned by Anthony B Cibel

2.5% Csaba Maggassey

2.5% Gregory Casten

7.5% OceanPro Industries Limited

68.5% Anthony B Cibel

There was sixth investor who owned 0.5% in 2005, but that interest was acquired by Anthony Cibel this year.

**PPT Inc – t/a Nick's Riverside Grille**

16.33% Greg Casten

16.33% Nick Cibel

16.33% Dean Cibel

51.00% Anthony B Cibel

**3050 K LLC – t/a Cabanas**

33.33% Greg Casten

33.33% Nick Cibel

33.33% Tony Cibel

**Lemlee Corp t/a The Dancing Crab**

100.0% Anthony B Cibel

**OceanPro Industries t/a Profish**

10.0% Anthony B Cibel

2.5% Nick Cibel

24.3% Timothy Lydon

63.2% Gregory Casten

**Oceanside Management Corp**

100.0% Anthony B Cibel

The original lease was for a term of 10 years with two (2) five year renewals which would have extended at least into this year. The tenant's name is noted as Waterside Management Corporation with a trade name of the Dancing Crab. The lease provides that there would be a trade name change at some point. That trade name change was never formalized in writing with the landlord. It was, however, implemented, i.e. Tony & Joe's is used. As the foregoing indicates, Waterside Management is the general partner of the entity that operates the restaurant and is an appropriate party to the lease.

With respect to the hand drawn diagrams forwarded to you with the response to the request for production of documents, your document request specifically requests that any diagrams of the premises be forwarded. They were provided in response to your request. The diagrams forwarded are not part of the lease as a review of the second transmittal of the lease should have disclosed and made abundantly clear. There is no written agreement with the Landlord with respect to the patio, expect that the Landlord consented to obtaining a patio license.

With respect to the assignment of the lease to a subsequent purchaser of the Washington Harbor complex, the only agreements executed in conjunction with those transfers were estoppel certificates. There have been two amendments to the lease. Those amendments relate primarily to extensions of the term of the lease. Copies have been forwarded to you.

Employee Information/Document Production Requests

You were provided yesterday with a payroll summary of the employees of not only Tony & Joe's, but Riverside Grill. There are no pending or valid discovery requests to Riverside Grill. The fact those records were produced at all should have alleviated some of the concerns you have expressed about an apparent failure to cooperate.

You have also been provided copies of time records for the period in question.

As I indicated in my email yesterday, provide me with a date or dates you are available to go the Dancing Crab's accountant's office, which is where the bulk of the records are kept, and all the employee files you want to review will be provided.

With respect to the tax returns and financial records and as discussed at the discovery conference, you have going to have to provide me with some legal authority on why you are entitled to any of those records. You seemed to acknowledge the validity of this point at our discovery conference.

With respect to the partnership agreement for the Dancing Crab at Washington Harbor, if you want a copy of that document, I will provide a copy.

With respect to the Badr file, I will inquire if there are any other records in the Dancing Crab's possession. The case was settled by the Dancing Crab's insurer. Whether or not the Dancing Crab's insurer or the counsel retained by the insurer still have any additional documents is unknown. I will make some inquiries. As to the position that the content of those documents dictates whether or not you seek to bring Badr back to the US belies your statement very early in the case that it was your intention to bring Badr back or go to Morocco to depose him. Apparently, you have changed your mind.

The Dancing Crab does not deny making cash payments to certain employees. The Dancing Crab denies making cash payment to certain employees in addition to paychecks. I have repeatedly told you that Yinka, Tony Wood and Yinka's brother were paid in cash. Yesterday I advised you that the chits concerning those cash payments would be produced. There are no 1099's.

With respect to other items on your list you now have time records for the period in question with the exception of the chits. There are no records for Natasha who worked at Riverside Grill, unless she went by some other name, however, there was a Natalie who worked at the Riverside Grill. She is still employed there and will be made available for a deposition if you so choose. There was a Denisha Natasha Jones who worked at Tony & Joe's. She is no longer working there. At last report she was working out west somewhere as a teacher. She worked at Tony & Joe's for two years and is a "known commodity", i.e. it is reasonable to believe that her current whereabouts can be determined. In any event, her last known address is being obtained.

As you were told at the discovery conference, there are no computer, camera or monitor tapes, discs etc for any of the time frames in question.

As you were told at the discovery conference, there is no explicit security service arrangement in place with the landlord. However, the landlord, apparently, during the time period in question did hire off duty metropolitan police officers to patrol the complex who did cooperate with and address concerns of the tenants. If you want anything more specific than that, you are going to have to get it from the Landlord. Tony & Joe's during the time period in question also would periodically hire off duty officers, but it was not pursuant to any written agreement.

With respect to your rhetorical comments received this morning about the absence of a reference to Tony Wood, Yinka and Yinka's brother on the payroll reports, those reports reference employees who received paychecks, which none of the foregoing received. The chits referenced above should address that concern.

Depositions

I provided you with a number of dates for depositions. Those dates were subject to the availability of the witnesses and the parties which is how the Federal Rules provide discovery should be conducted as much as possible and is simply a matter of professional courtesy. As I told you rather than have you incur the expense and time associated with subpoenaing certain of the

witnesses, I would make them available for deposition. Those witnesses include Mssrs. Puzio, Moran and Eagleton. If my representation that they will appear is not good enough, then I suggest you subpoena them. However, it is a needless exercise on your part.

I hope the foregoing alleviates some of your concerns. I would much prefer to return to the cooperative spirit discussed at our discovery conference. The rational way to proceed is to extend discovery as previously agreed.

Very truly yours,

Cain & Wyrough, PC

Richard R. Page Wyrough