UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

JONATHAN W. RUDE,

    Plaintiff,

v.   Civil Action No. 05cv1278(RCL)

THE DANCING CRAB AT
WASHINGTON HARBOUR, et al.,

    Defendants.

PLAINTIFF'S REPLY TO DEFENDANTS'
OPPOSITION TO MOTION FOR SANCTIONS

COMES NOW, Plaintiff, by and through his counsel, and submits this Reply Memorandum to Defendants' Opposition to Plaintiff's Motion For Sanctions filed October 2, 2006. Plaintiff states as follows.

REPLY STATEMENT OF FACTS

Plaintiff filed a personal injury action alleging negligence and respondent superior as to the Dancing Crab at Washington Harbour, L.P. trading as "Tony & Joe's Seafood Place" and Mr. Dean A. Cibel[1]. The discovery phase of this proceeding concluded on August 31, 2006. Defendants (Dancing Crab and Dean Cibel, hereinafter jointly referred to as "Dancing Crab") submits to the court an Opposition Memorandum with exhibits

---

[1] Mr. Cibel is a manager employed by Tony & Joe's. The Dancing Crab at Washington Harbour is one of a number of family owned enterprises controlled and operated by the "Cibel Family"—Anthony Cibel, Dean Cibel, Nicholas Cibel and Gregory Casten. The Cibel Family also operate a restaurant identified as the "Rockfish" in Annapolis and another identified as "Kaufman's Tavern". The Cibel Family operates 5 restaurants in the District of Columbia and has been identified as being associated with the following entities: (1) Oceanpro Industries, Ltd., (2) Profish, Ltd., (3) Waterside Management Corporation, (4) Oceanside Management Corporation, (5) LVL Corporation. The Dancing Crab at Washington Harbour, L.P. was identified as a Limited Partnership organized in the State of Maryland as well as being a Limited Partnership organized in the District of Columbia. The 'addresses' of these various entities are either duplicative or upon on-site investigation "non-existent". The restaurants that defendants have been identified as operating in the District of Columbia are (a) Tony & Joe's Seafood Place, (b) PPT, Inc. t/a The Riverside Grill, (c) The Malt Shop, (d) "The Dancing Crab", (e) 3050 K Street, LLC t/a Cabanas.

1

(hereinafter referred to as "Dcrab Opp. Memo at ___ " and the exhibits will be referred to as "Dcrab ex.___").

Plaintiff in support of his motion for sanctions submitted a series of Attachments to his Memorandum in support of his motion (Attachments 1 through 7-D). Plaintiff, in his response has included additional documentation (Attachments 8 through 20) and will continue the identification of these attachments commencing with Attachment 8.[2]

Defendants have omitted from their discussion and memorandum the numerous letters and messages from plaintiff's counsel requesting compliance with the May 15, 2006 Orders (Doc. #21, 22 & 23). In fact, plaintiff gave defendants three (3) weeks notice that the involved sanctions motion would be filed as a last ditch effort to obtain proper compliance with those Orders. These attachments and their import are as follows:

<u>Attachment No. 8</u>

This attachment includes the cover e-mails and page 1 from each attachment/document provided to plaintiff by counsel for Dcrab. These represent ALL the discovery responses provided by Dcrab in April 2006. The document identified by Dcrab at "DC Ex. 7" (record reference Doc. 40, part 3) was never received by plaintiff. It is noted that the document is undated, unsigned and has no executed certificate of service. If Dcrab had complied with the Certification requirement contained in Order Doc. # 21, then perhaps this situation might have been avoided. However, Dcrab also failed properly comply with the requirements of Orders 22 and 23 as well. Dcrab was noticed on June 8, 2006, on June 15, 2006 and again on September 7, 2006 of the failure to comply with

---

[2] Plaintiff has set forth an "Index of Attachments" for the convenience of the court at the end of this Reply Memorandum. Such Index follows Plaintiff's Certification of Non-Receipt of defendants' purported "Supplemental Initial Disclosures".

2

discovery. Dcrab NEVER responded to these letters nor noted the existence or issuance of DC Ex. 7 until the submission of its Opposition to plaintiff's motion for sanctions.

Attachment No. 9

The cover messages for Dcrab's discovery responses show that these were held until close of business on Friday April 14, 2006. Plaintiff promptly sought a meeting with counsel for Dcrab regarding the deficiencies in the responses. On May 5, 2006 a meeting was held at the offices of counsel for Dcrab. Plaintiff provided to Dcrab 3 documents—(1) a list of the deficiencies, (2) a list to which Dcrab complied with document requests, and (3) a list of the documents received by plaintiff on April 17, 2006. A review of the document list reflects that complied with ONE document request (insurance policies) and partially complied with FOUR others. Dcrab complied with less than 10% of what was sought and required.

While the parties have made reasonable efforts to work out any disputes—the notes of plaintiff's counsel in regard to "defendants corporate, financial and tax records" reflect that the parties "agree to disagree". Plaintiff did agreed to forego the production and review of invoices between Dcrab and what was perceived as 'controlled' vendors.[3] Plaintiff did not agree to forego the production of Dcrab financial, corporate and tax records as is now alleged by Dcrab.

---

[3] It is common for family controlled enterprises to utilize multiple entities for the shifting of incomes, expenses and personnel between the enterprises. These activities can have legitimate purposes but can also be abused for such purposes as tax avoidance, or under-reporting for "State" tax compliance issues. These activities are often exposed through an analysis of corporate financial and tax records. It was found that employees of Dcrab 'left' Dcrab and became employees of other controlled entities. Not subject to direct deposition notice by plaintiff but still under the "control' of Dcrab.

<u>Attachment No. 10</u>

Plaintiff made it clear to Dcrab by an e-mail sent May 18, 2006 that it was the position of plaintiff that the May 15, 2006 Orders (Doc. #21, 22 & 23) "obviates any further dispute regarding what is to be produced".

<u>Attachment No. 11</u>

On June 2, 2006 plaintiff took the deposition of Mr. Dean Cibel. Counsel for Dcrab appeared and carried what appeared to be a stack of records/documents/envelopes. At the conclusion of the deposition, counsel for Dcrab went on the record and noted the documents, and the need to copy and to "review the employee files". (Cibel Dep. At page 124, line 11-12). June 2nd was a Friday and Mr. Cibel had to leave to attend to a personal matter. Plaintiff agreed to inspect the documents at the office of counsel for Dcrab.

<u>Attachment No. 12</u>

Plaintiff attempted to reach counsel for Dcrab on June 5,6,7 and 8th. On June 8, 2006 plaintiff telefaxed a letter to Dcrab noting the fact that plaintiff had not been afforded access to the involved records. Plaintiff made it clear that unless access was provided he would ask the Judge Lamberth to intervene. Plaintiff, in his original motions to compel, provided the Certification that Dcrab refused to permit access and review of documents "without an appointment" to be established by counsel for Dcrab. Dcrab refused access to the 'proffered' documents. Dcrab did not respond to the June 8th letter.

<u>Attachment No. 13</u>

On June 12, 2006 plaintiff received an envelop containing a mixture of miscellaneous documents, copies of earlier documents and obviously incomplete materials. On June 15, 2006 plaintiff AGAIN telefaxed a letter to Dcrab noting the deficiencies in the

4

production. Plaintiff stated: "I have not received copies of the personnel files nor the financials for defendants, nor tax information on the doormen and any witnesses". Dcrab AGAIN did not respond to this letter.

Attachment No. 14

The deposition schedule adopted by the parties included the deposition of Mr. Gregory Casten. Mr. Casten is the son-in-law of Anthony Cibel and is represented as the "man in charge" of Dcrab and related entities. Mr. Cibel and his counsel failed to appear. The Notice included the requirement to produce all of the documents required by the May 15th discovery Orders (See Plaintiff's Exhibit #1 to Attachment No. 14 herein). Mr. Casten eventually appeared on July 19, 2006 but did not produce any records.

Attachment No. 15

On August 10, 2006 counsel for plaintiff forwarded a letter by internet, to document receipt, which placed Dcrab on notice that plaintiff had obtained proof that the employees utilized their cell phones for Dcrab business. Dcrab represented that they used radios. The cell phone services utilized by these employees included "walkie-talkie" features that function the same as a walkie-talkie radio. The cell phone records revealed an extensive and undisclosed pattern of communications between Dcrab personnel, including the managers, on June 20, 2004 as well as June 27, 2004. Dcrab had denied receiving a telephone call from plaintiff at 1:51 AM on June 20, 2006 during which plaintiff reported an attack by Olayinka Adeboyeku on another patron.  The telephone records of Mr. Puzio, whose responsibility was "security" and to supervise the door staff, confirmed that

such a call was made and received by Mr. Puzio. Plaintiff placed Dcrab on notice that its prior discovery responses were not correct and requested correction.[4]

### Attachment No. 16

Plaintiff gave Dcrab formal notice of the receipt of documents from the US Attorney's Office by way of the Metropolitan Police Department. Plaintiff further noted the document/information responses from Sprint/Nextel as well as the pending receipt of additional records regarding two more of Dcrab's employees. Plaintiff again gave notice of the 'walkie-talkie' activities and that such documents were to have been included in response to the initial document production request. Lastly, again demanded compliance with plaintiff's second request for production of documents which would include those cell phone records noting the failure to produce was "not only a violation of the May 15th Order but was highly prejudicial to plaintiff's discovery process".

### Attachment No. 17

Plaintiff, by letter via internet on September 7, 2006, AGAIN placed Dcrab on notice that defendants had not properly and fully complied with the May 15th Order. Plaintiff noted to Dcrab:

> "I am not going to provide a detailed itemized list of all of the documents and items which were not provided. I must assume that you are aware of what was provided and what was not provided. The topical areas are sufficient for purposes of this correspondence. The areas include (1) information relevant to plaintiff's claim for punitive damages, (2) information relevant to the events occurring inside Tony & Joe's main bar area between 1:30 AM and 3:00 AM on June 27, 2004, (3) the actual identity of the other doormen who may have been present as well as their 'home' information necessary to locate and interview. These discovery deficiencies do not include the incomplete and inadequate responses to the interrogatories".
> . . .
> "The failure to produce the records and filings to the DC Alcoholic

---

[4] Fed.R.Civ.Prod. 26(e)(2) requires a party to amend any discovery response when the party learns that the prior response was incomplete or incorrect. Dcrab did not comply with Rule 26(e)(2) either.

6

> Beverage Control Administration, as well as the record to the DC Department Of Consumer and Regulatory Affairs not only go to the issue of the real party Defendants but also go to the motivation for the decision not to call the Metropolitan Police Department on June 27, 2004."
> . . .
>
> "I have reached the conclusion that defendants are seeking to delay this proceeding. While I would be justified in seeking further orders regarding compliance with outstanding and past due discovery, I am simply going to request reasonable sanctions. However, prior to filing the involved motion, I am giving you notice of my intent. Since there has been no compliance on the financial, business and DC filing records I am going to request that General Partners of the Dancing Crab be held directly liable for any judgment obtained. Secondly, that anay judgment be automatically increased to the fullest extent permitted under Supreme Court precedent involving punitive damages. Thirdly, that defendants not be allowed to contest the deposition testimony of Mr. Sylvester and Mr. Gillman, nor the trial testimony of Mr. Owen and Mr. Luckett."
> (Attachment 17, Ltr. Pg. 2-3)

Plaintiff placed Dcrab on notice on September 7, 2006 of his intent to seek sanctions. Defendant Dcrab did NOT respond to this letter nor did defendants amend their discovery responses.

## Attachment No. 18

Mr. Anthony Wood produced federal W-2 Forms which revealed that he had been at one time employed by both Oceanpro Industries and Dcrab. The question is how many other involved individuals had the same 'multiple' employer situation. (See footnote 1 page 1 infra). This is an example of this multiple business situation.

## Attachment No. 19

This attachment contains sample documents obtained from District of Columbia and Maryland government agencies. Dcrab lists its princpal office at 11005 Earls Gate Lane, Bethesda, MD. The address of the DC agent is "1900 Fenwick Street NE". The State of Maryland, on the other hand, shows that the Dancing Crab at Washington Harbour, L.P. was a limited partnership whose charter was 'forfeited' on October 2, 1997. A return the

7

DC records determined that Dcrab was also separately established in the District of Columbia. Two entities operated at the same time with the same name AND with the same addresses. Waterside Management Corporation is represented as a general partner in Dcrab. The corporation, as of May 9, 2005, was not in good standing and had not filed any corporate returns since 2003. Maryland official records show "Profish, Ltd" as a foreign corporation doing business in Maryland as of September 13, 2005. According to Maryland's record Profish, Ltd. is a DC corporation. On September 24, 2005, plaintiff was informed by the Department of Consumer and Regulatory Affairs that "such an entity is not of record with this office". Further that "there is no record of this corporation being incorporated or registered with this office".

These documents are samples and representative of the "issues" regarding the true nature of the actual defendant(s) as well as the punitive damages issue.

<u>Attachment No. 20</u>

This document is the "employee manual" for Dcrab. It is AGAIN in the name of another corporation—"Oceanside Management Corporation". The manual reflects the multiple restaurants; the 'contents' of the employee personnel files; the grounds for termination; the procedure for discipline; and the 'after-hours drinking policy'. This document compliments those matters raised under Attachment No. 19 above and underscores the total lack of compliance with the May 15th Orders (Doc. #21, 22 & 23).

<u>REPLY ARGUMENT</u>

Plaintiff was authorized by the court's Orders of May 15, 2006 to obtain sanctions in the event that Dcrab failed to comply with the Orders (Doc. #22 & 23). Plaintiff is seeking the level sanctions that he believes is appropriate to the degree of Dcrab's non-

8

compliance and the resultant level of prejudice to plaintiff.  The court's record (the formal docket entries) show that plaintiff has been required to obtain court orders to obtain the enforcement of the provisions of Fed.R.Civ.Proc. 26, 33 and 34. Parties are supposed to comply with those provisions without being ordered to by the court. The court presently has pending a fourth motion to compel compliance with discovery that was due July 31, 2006. It is now late October. The court, in its evaluation of 'willfulness' Dcrab's conduct, is entitled to and must weigh the cumulative effects of Dcrab's continuous pattern of non-compliance. The level of sanctions to be imposed may include as a factor this overall pattern of conduct.

Plaintiff has provided the court with a detailed statement of the facts. (Plaintiff Memorandum In Support at pages 1-6, points 1 thru 43).  Dcrab states the facts have nothing to do with the motion. (Dcrab Opp. Memo at page 1).  Drab does not recognize that this fact statement is necessary for the court to gauge the level of prejudice due to Dcrab's non-compliance. As a basic tenet of motions practice, what is not 'disputed' may be taken as conceded.  This is especially true when it comes to fact points 34 thru 43 which address the facts particular to Dcrab's negligence.  Thusly, the court may treat these facts as established for purposes of this motion for sanctions.

Plaintiff has submitted to the court an extensive list of documents and explained the gist of these documents (see pages 2-8 infra). Plaintiff has made continual requests upon Dcrab to attempt to obtain voluntary compliance with the Court's Order. Plaintiff gave Dcrab three weeks advance notice of the motion. The result? –NO reply, no documents, no correction of prior incorrect discovery.

Defendants have separated their Opposition into three parts—(1) spoliation, (2) corporate records, and (3) employee identification and records. Plaintiff will reply to each category.

### A. SPOILATION OF CAMERA TAPES.

Defendant states that "there are and were no security tapes which were destroyed". (Dcrab Opp. at 2, point 7). Dcrab further argues that there is no testimony or evidence that the tape machine was used on the night in question. (Dcrab Opp. Memo at page 3). Dcrab states that "If asked" it would have been represented that "the tape machine did not function properly and not been used for quite some time" and lastly "There likely was a functioning recording device attached to the camera, although none of the deposition testimony cited by Plaintiff clearly supports that position" (Dcrab Opp. Memo at page 3).

It appears that Dcrab is attempting to confuse this issue. Whether or not there is some other "tape machine" is not the point. The testimony submitted by plaintiff included the acknowledgment that the involved surveillance cameras has recordation devices attached to them. Dcrab has overlooked the import and binding nature of Dcrab's responses to Plaintiff's Request For Admissions. Rule 36(b), Fed.R.Civ.Proc. 36(b), holds that "Any matter admitted under this rule is CONCLUSIVELY ESTABLISHED .." Dcrab may not now dispute facts as established under Rule 36, except pursuant to the procedures set forth in Rule 36(b). Dcrab, 8 months after issuance of their responses, has made no such effort to withdraw the involved admissions.

Dcrab admitted that there were surveillance cameras; that these cameras "were OPERATIONAL during the months of June and July 2004"; that there were monitors in the offices of Dcrab; and that they provided a view of the interior bar and lounge of

Dcrab. (See Attachment No. 3, pg. 2, admissions 6, 7, 8, and 9). Mr. Dean Cibel stated that the purpose of the surveillance cameras was for "security" (Attachment 4, Cibel pg 108, line 22). Dean Cibel further stated that these cameras also were to see that nothing is being taken out the back "like any kind of theft mainly" (Attachment 4, Cibel pg 109, lines 2-5).

Dcrab has admitted that the surveillance cameras were "operational" (i.e. working, functional) and it was subsequently disclosed that these cameras had a recordation function and ability. Dcrab may not now claim such cameras were not operating and functioning. Cf. *Kerschner v. Beloit Corp.* 106 F.R.D. 498, 499 (D. Me. 1985). The "purpose" of this surveillance was to facilitate "security" and prevent theft. It is reasonable to believe that such a system would be allowed to become inoperative? It is reasonable to believe that the system would not be repaired between June 27, 2004 and say, June 2, 2006? The answer is NO.

Dcrab has not provided any documentation to corroborate the contention that the system was 'broken'. A repair invoice? –No. Evidence of examination and repair by a surveillance company? –No. Dcrab now wants this court and plaintiff to "take it on faith" and CONTRARY to its own admissions that the surveillance cameras were not properly functioning.

There is one further point which needs to be noted. Dcrab is a very large and 'expensive' restaurant. It is noted that Dcrab provided a financial system report for June 27, 2004 which reflected that Dcrab had total revenue that day of "$52,137.46". The break out revealed a "reported" cash receipts of "$10,149.99". With this amount of

11

"cash" on hand it is simply not credible that Crab was not maintaining its security systems.

The concept of spoliation involves a breach of the defendants' affirmative duty to preserve evidence. It does not involve intentional destruction—that is obstruction of justice. Here we have the key managers of Dcrab being made aware of the serious nature of the incident which occurred on their premises and "in front of their eyes". They not only did nothing; they did nothing to preserve the involved tapes. It is submitted that very rarely does a defendant in such a situation actually admit to the destruction or discarding of evidence. However, the court may use circumstantial evidence to reach just such a conclusion. Cf. <u>Intercept Security Corp. v. Code-Alarm, Inc.</u>, 169 F.R.D. 318, 322 (E.D. Mich. 1996). The spoliation of evidence requires adverse jury instructions at a minimum and if the degree of prejudice is great, default is an appropriate remedy. <u>Howell v. Maytag</u>, 168 F.R.D 502, 507 (M.D. Pa. 1996) and <u>In Re Fine Paper Antitrust Litigation</u>, 685 F.2d. 810, 823 (3rd Cir. 1982) (sanctions appropriate for failure to cooperate in discovery with an appropriate sanction. Such a sanction would "bear a direct relation to the evidence sought under the discovery order").

In this case, the surveillance tapes would have "proven plaintiff's case" in regard to Dcrab. They would also have served to impeach Dcrab's witnesses regarding 'who did what and when' inside the main bar and lounge area. Further, they would have given 'face identification' to those individuals who were in fact present inside Tony & Joe's at the time periods in question—that would have included the unidentified door staff as well as conclusively demonstrating plaintiff's actions. The fact that plaintiff received a concussion wiping out his memory of the events of June 27, 2004 weighs heavily in favor

12

of the imposition of the default sanction. Plaintiff was so seriously injured that he was in intensive care at George Washington Hospital. It is deplorable that Dcrab and its employees would use the severity of his injuries (which they participated in directly or indirectly effected ) as a device to now claim he cannot prove his claim.

## B.  CORPORATE RECORDS AND FILINGS

Plaintiff sought Dcrab's corporate records, financial records, tax filings and the like. Plaintiff, in conjunction with its motion to compel, noted that Dcrab did not answer nor file any objections. It is axiomatic under the Federal Rules of Procedure, the failure to timely objects waives the objection. Cf. *Richmark Corp. v. Timber Falling Consultants*, (9th Cir. 1992) 959 F.2d. 1468, 1473; *Land Ocean Logistics v. Aqua Gulf Corporation* 181 F.R.D. 229, 236 (W.D. NY. 1998).

Dcrab contends that such information is not discoverable "until a judgment is obtained" (Dcrab Opp. Memo at pg 4) and that at a time of judgment "financial information" relating to an award of punitive damages "would be produced". Dcrab contends that it produced "all the records in its possession concerning cash payments to employees".[5]  Dcrab attempt to focus on what it produced rather than focus on what the document production request required. (See Attachment 1 Parts A and B).

Plaintiff has attached hereto and identified as Attachments 19 and 20 various records from the State of Maryland and the District of Columbia.  It is clear that the Cibel Family is playing the "corporate shell" game. Plaintiff attached the 1999 W-2s for Anthony Wood. He is a central figure and worked for more than one of the Cibel Family enterprises. Plaintiff sought the documentation from the DC Alcoholic Beverage

---

[5] Dcrab did produce financial systems reports for the months of June and July 2004 and nothing else. Dcrab is simply mistaken about this document production. The time period was January 1, 2000 to the date of issuance of the document production request. (See Attachment No. 5, pg. 1).

13

Regulation Administration as such filings are "under oath" and include extensive financial and corporate information. Dcrab produced NOTHING. The ABRA records were incomplete. The DC corporate filings likewise would have disclosed the 'who, what, when, how much, and 'where are they' for the Cibel Family enterprises. Dcrab produced NOTHING. The corporate charter of Dcrab included a defunct entity—Waterside Management Corporation. A review of Plaintiff Attachment No. 7- Part B shows the certification of partnership agreements, etc. Where are they?

The position of Dcrab is premised upon the contention that untimely objections to discovery can continue to be advanced after (1) earlier waiver, and (2) the issuance of an Order compelling production. From a practical point of view, plaintiff was entitled to these documents to prepare for any punitive damage aspect of this proceeding. To spring such documents on a party—without opportunity to clearly review, ascertain their completeness or correctness, and verification of contents is not consistent with due process and the discovery procedure.

Dcrab at pages 5-7 of its Opposition Memorandum notes documents that were allegedly produced (copies of articles of incorporation of the general partner, a copy of a leases). Drab represents that it offered to produce a copy of the partnership agreement with a "see exhibit 6" reference. There simply is no exhibit 6.

Dcrab takes the position that the corporate information provided to plaintiff by DC ABRA was sufficient compliance with the May 15th Order (Dcrab Opp. Memo at pg 7).

14

As noted above, the information was incomplete. The ABRA production likewise did not include the managers' applications are required. A "license" cannot substitute for the detailed and in depth documentation that is submitted to the DC ABRA.[6]

A review of the numerous letters and e-mails included as Attachments 12, 13, and 17 hereto confirms that plaintiff continually sought these corporate records, tax filings and financial information. Dcrab's contention that discovery was provided and waived is most certainly not consistent with these letters and requests. Dcrab did not respond to ANY of these letters and requests. Mr. Casten likewise did not bring these records to his deposition. (Attachment No. 14).

EMPLOYMENT RECORDS

Drab presents to the court a document identified as 'Defendants The Dancing Crab At Washington Harbour, LP and Dean A. Cibel Supplemental Initial Disclosures". Dcrab indicated that such a document was served "April 26, 2006" upon Plaintiff. Drab Opp. Memo at pg 8. Plaintiff has no record of that document. Plaintiff has included below a Certification of Counsel regarding the receipt of such a document. Plaintiff would note that on June 2, 2006 Dcrab represented that the employee files were available. The record in this case likewise reflects several efforts to obtain access to those files by plaintiff but to no avail. Dcrab is in a two-fold breach in this case. Dcrab did not comply with the requirements of Order No. 21 nor did Dcrab comply with Orders No. 22 and 23. Again we have the reference to "exhibit 6" (Dcrab Opp. Memo at pg. 9). There is no exhibit 6. However, we do have Attachment No. 11 on June 2, 2006 wherein it may be surmised that these records are described. There is also the subsequent letters seeking access to

---

[6] Dcrab takes issue with the date of April 15, 2006 versus December 15, 2005. The April 15th date, upon review, was a date incorrectly noted from a related proceeding.

these records which went unheeded by Dcrab. Plaintiff even gave Dcrab three weeks advance notice of the filing of a motion for sanctions. Dcrab—NO response.

Dcrab does not see the impact and results of the failure to provide the information on the witnesses and the employee files on the other door staff. While this may be a traditional 'defense' approach to 'control' access to witnesses, the results are not consistent with the requirements of the Federal Rules of Procedure. The failure to provide this information precluded any "independent" and "informal" discovery by plaintiff without notice and involvement of Dcrab. The result was to obstruct access to witnesses and therefore information—some or all of which might be detrimental to a defendant.

Plaintiff has attached hereto and identified as Attachment No. 20 the employment manual for Dcrab. It is noted that this document outlines the information that should have been in the involved employment files. Where are the performance reviews? Where are the disciplinary reports? Payment records?

Dcrab's counsel takes the position that any possible error was not that of Dcrab but of counsel. That misses the point. While it is admirable that counsel for Dcrab is "willing to take a bullet" for his client; the pattern is much too extensive for counsel responsibility. The Order of the Court on May 15th required the return Certification to the court that Dcrab's files had been searched and that all available information had been provided. (See Doc. #21, pg. 2).  While plaintiff cannot state what may or may not have occurred in regard to Dcrab's Exhibit 7, what is clear that the filing of the Certification would have alerted plaintiff to the situation.  The court's official docket record does not reveal the involved mandated filing. As has been stated throughout plaintiff's correspondence with

16

Dcrab, counsel was willing to work with Dcrab regarding discovery matters up to the point that prejudice would result. It is the position of plaintiff that prejudice now exists. Mr. Anthony B. Wood, in an interview with the Metropolitan Police Department on June 27, 2004, stated that he and Olayinka Adeboyeku left the premises of Dcrab; and were involved in an altercation during which Wood tackled plaintiff and Adeboyeku kicked plaintiff in the head several times. Dcrab contended that they 'had left for the night'; then why did these individuals RETURN to Dcrab's premises and attend the tail-end of a mandatory employee meeting. Dcrab is responsible for the actions of these individuals and must be held accountable.

## CONCLUSION

Plaintiff hereby requests that the court enter an Order imposing sanctions as permitted by the court's Orders issued May 15, 2006 and that the sanctions sought by plaintiff be found to be appropriate under the cumulative circumstances of this case. Further, that the court enter an Order for such other and further relief as the court deems just and appropriate in the circumstances.

Dated: 22 October 2006

                                                    Respectfully submitted,

                                                    _____/S/_____
                                                    Rick A. Rude, Esq. #244897
                                                    Suite 103
                                                    207 Park Avenue
                                                    Falls Church, VA.  22046
                                                    (AC 703) 536-3063 Tele.
                                                    (AC 703) 536-4841 Fax.

                                                    Counsel For Plaintiff

## **CERTIFICATION OF COUNSEL**

I hereby certify that I have searched the files of my office related to this proceeding and have no record of receipt of Defendants' Supplemental Initial Disclosures which is identified as Exhibit 7 to Defendants' Opposition Memorandum and included in Document no. 40, Exhibit no. 3.

Subscribed to and sworn to under the penalty of perjury of the laws of the United States.

Dated this 22nd Day of October 2006.

_____/S/_____