UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

JONATHAN W. RUDE,

      Plaintiff,

v.                                                   Case No. 05cv1278(RCL)

THE DANCING CRAB AT
WASHINGTON HARBOUR,
L.P. et al.,

      Defendants.

PLAINTIFF'S REPLY MEMORANDUM TO DEFENDANTS' OPPOSITION
TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

COMES NOW Plaintiff, by and through his counsel, and submits this Reply Memorandum and Consolidated Statement of Material Facts That Were Undisputed By Defendants and Reply Statement of Material Facts.

Introduction

The proceeding involves a complaint for personal injury by plaintiff as against The Dancing Crab at Washington Harbour, L.P. and Dean A. Cibel (hereinafter referred to as "Dancing Crab", "Dcrab", or defendants). Dancing Crab submitted a Memorandum and a Statement of Material Facts In Dispute. Dancing Crab did not file the required Statement of Genuine Issues as required by the rules of this court. Cf. LCvR 56.1 and LCvR 7(h). The Dancing Crab Statement of Material Facts likewise fails to include the required "references to the parts of the record relied on to support the statement". *Id.* These deficiencies render Dancing Crab's Opposition of little value and in turn place upon the court the improper requirement that the court search the record to locate and identify the

1

basis for defendants' alleged facts. Plaintiff is thusly submitting this Reply Memorandum based upon defendants' contentions as can be reasonably perceived from its submission.

In addition to the above deficiencies, Dancing Crab appears to have gone beyond the legal issues raised by plaintiff's motion for partial summary judgment. Dancing Crab further did not provide the court with any specific response to Plaintiff's Statement of Material Facts Not Subject to Dispute. Under that circumstance, such facts are taken as admitted unless it can be plainly determined from defendants' submission that such facts are controverted. Cf. *Ibid.* (the material facts identified by the moving party are taken as admitted unless such a fact is "controverted in the statement of genuine issues"). As noted above, Dancing Crab failed to file the required statement of genuine issues.

Lastly, Dancing Crab has made contentions beyond the legal issues and attempted to insert facts which are (1) not material to the motion, (2) irrelevant, (3) incorrect, (4) not supported by the record or (5) inconsistent with the documented record. It is of note that the primary material facts alleged by plaintiff are indeed undisputed by defendants. (See CSMF, pg. 2-8, fact points 1, 2, 4, 5-11, 13-17, 21-34).

Plaintiff, mindful of the admonition of LCvR 56.1, has hereby submitted a detailed review of the extent to which Dancing Crab has disputed plaintiff's facts and has further submitted as part of plaintiff's Consolidated Statement of Material Facts ("CSMF") documented and referenced facts in reply (See, CSMF, pages 9-14). Plaintiff has submitted with the CSMF a series of attachments (#2-A, and 7-20) that are referenced in the CSMF and will be noted in this Reply Memorandum. Plaintiff's facts will hereinafter be identified as "MFS _____" for the convenience of the court. The CSMF include 72 separate and distinct fact points.

## THE STANDARD FOR SUMMARY JUDGMENT

Plaintiff set out this court's legal standard for summary judgment at page 6 of his Opening Memorandum. Dancing Crab did not dispute the correctness of the articulated standard. Plaintiff would note that the non-moving party has the burden to establish the existence of "material facts" necessary to a "genuine issue". The Supreme Court, in <u>Anderson v. Liberty Lobby, Inc.</u>, (1986) 477 U.S. 242, 248. 1-6 S.Ct. 2505, 91 L.Ed.2d. 202, stated:

> "Substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will be properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted".

The Honorable Judge Gladys Kessler, her recent memorandum order in <u>Essex Insurance Co. v. Associates For Renewal In Education, et al.</u> (Case no. 04cv1460(GK), filed August 30, 2006, Memorandum at pages 7-8) explicitly cited this requirement and further noted that the non-moving party has the "affirmative duty" to provide "enough" evidence that a reasonable jury could return a verdict in its favor …that there must be a showing of "specific facts" to support an alleged genuine issue. Judge Kessler, again quoting <u>Anderson,</u> concluded by noting that the court must evaluate the evidence presented and if the evidence presented is "so one-sided" then the moving party must "prevail as a matter of law". <u>Ibid.</u>

This court recently noted that the non-moving party must present "admissible evidence" and may not rely upon "conclusory statements". Cf. <u>Lyles v. Micenko</u>, 404 F.Supp.2d. 182, 186 (D.D.C. 2005). The courts have further established that a non-moving party cannot create nor establish "genuine issue(s) of material facts" by simply providing two or more conflicting versions of facts. For example, a corporation, or in

this case a limited partnership, can not present conflicting testimony between its own employees to thereby establish that a material factual dispute exists. <u>Halperin v. Abacus Technology Corporation</u>, 128 F.3d. 191, 198 (4th Cir. 1997). Dancing Crab has attempted to use its own employees as well as past employees that are now in the employment of other wholly owned business to create factual disputes that are either meaningless or do not actually exist.

## **REPLY ARGUMENT**

### Summary of the Issues

Plaintiff by his motion sought summary judgment as to defendants' affirmative defenses. Plaintiff, noting that Dancing Crab was a publicly licensed establishment, has taken the position that the District of Columbia Equal Services Act and DC Human Rights Act have pre-empted the common law as to purported "trespassers" and public accommodations. Plaintiff noted that controlling law holds that restaurant patrons are defined as "business invitees". Lastly, that under precedent in the federal courts of the District of Columbia, the distinctions between "invitees, licensees and trespassers" has been superceded by a general requirement of "reasonable care under all of the circumstances". (Opening Memorandum at page 7). Dancing Crab disputes this analysis and argues that the trespasser doctrine has not been superceded by the statutes cited by plaintiff. The issue of "statutory pre-emption" is a pure question of law and interpretation of statute and therefore subject to summary judgment (questions of law, not fact).[1]

---

[1] Plaintiff included in the CMSF the actual scope of the underlying facts. Dancing Crab has over-stated and misstated these facts in an apparent belief that the court nor plaintiff will actually 'check the record'.

4

Dancing Crab raised the affirmative defenses of (1) assumption of the risk and (2) contributory negligence. Plaintiff, in his Opening Memorandum and his Statement of Material Facts, set forth the events of June 27, 2004 to the extent known by plaintiff. There are no facts reflecting any actions by plaintiff which would support those affirmative defenses. Dancing Crab did not dispute any of the fact points that involved plaintiff's actions on June 26-27, 2004. Dancing Crab, however seeks to assert allegedly disputed facts which occurred on June 19-20, 2004, in lieu of any facts otherwise applicable on the night that plaintiff was attacked—June 27, 2004. This also presents a two fold "legal" question— (a) can a defendant use facts from some other prior event as an excuse to justify an aggravated assault by a defendant employee on a patron; and (b) if so, do those earlier facts themselves provide the necessary factual predicate for the affirmative defenses of assumption of the risk and contributory negligence.

I.   DID DISTRICT OF COLUMBIA STATUTORY LAW PRE-EMPT THE COMMON LAW RIGHT OF TAVERNS AND RESTAURANTS TO REFUSE SERVICE TO MEMBERS OF THE PUBLIC?

Plaintiff referenced the court to the District of Columbia Equal Services Act, Chapter 29 of Title 47 of the D.C. Code—specifically sec. 47-2902(a). Plaintiff further referenced the public accommodations statutes of the DC Human Rights Laws. Cf. D.C. Code Annon. 2-1402.31(a)(1) and (a)(2). Section 47-2902(a) of the D.C. Code states:

> "(a) It shall not be lawful for the keeper, proprietor, or proprietors of any licensed hotel, tavern, RESTAURANT, ordinary, sample room, tippling house, saloon, or EATING HOUSE to refuse to receive, admit, entertain, and supply any quiet and orderly person or persons, OR to exclude any person OR persons on account of race or color."

The above statute is supplemented by the D.C. Human Right Law on Public Accommodations, section 2-1402.31(a)(1) and (a)(2). Those statutes read as follows:

5

> "(a) General. It shall be an unlawful and discriminatory practice to do any of the following acts, wholly or partially for a discriminatory reason based on the actual or perceived: race, color, religion, national origin, sex, age, marital status, personal appearance, sexual orientation, gender identity or expression, familial status, family responsibilities, genetic information, disability, MATRICULATION, political affiliation, source of income, or place of residence or business of any individual:
>
> (1) to deny, directly or indirectly, ANY PERSON THE FULL AND EQUAL ENJOYMENT OF THE GOODS, SERVICES, FACILITIES, PRIVILEGES, ADVANTAGES, AND ACCOMMODATIONS OF ANY PLACE OF PUBLIC ACCOMMODATION;
>
> (2) to print, circulate, POST, or mail, or otherwise cause, directly or indirectly, to be published a statement, advertisement, or sign which indicates that the full and EQUAL ENJOYMENT OF THE GOODS, SERVICES, FACILITIES, PRIVILEGES, ADVANTAGES, AND ACCOMMODATIONS OF A PLACE PUBLIC ACCOMMODATION WILL BE UNLAWFULLY REFUSED, WITHHELD from or denied an individual; OR that an individual's PATRONAGE OF, OR PRESENCE AT, A PLACE OF PUBLIC ACCOMMODATION IS OBJECTIONABLE, UNWELCOME, UNACCEPTABLE OR UNDESIRABLE."

The District of Columbia Council, in the enactment of the Human Rights Law specifically stated that it was the "intent" of the Council in the enactment of these statutes to "secure an end in the District of Columbia to discrimination FOR ANY REASON". d.c. code Sec. 2-1401.01 (2006 Supp.)

Dancing Crab has misread Section 47-2902(a) as applying only to plaintiffs on account of "race and color". (Opp. Memo. at pg. 4). This is profoundly incorrect. The statute, as set forth in full above, uses the word "OR". Such wording is in the "disjunctive". Simply, any restaurant in the District of Columbia may no longer "refuse to admit" … "any quiet and orderly person" nor may such public facilities refuse to admit "persons of color". Secondly, the D.C. Human Rights Law was enacted for the explicit purpose of ending any form of discrimination "for any reason". Further, the "posting" of individuals as being refused admittance to any public establishment is likewise a patent

violation of section 2-1402.31(a)(2). Dancing Crab does not have any concept of the scope of the anti-discrimination statutes. Lastly, section 2-1402.31(a) prohibits discrimination (not only for ANY reason) for specifically in regard to "Matriculation". The Dancing Crab is openly discriminating against Georgetown University students— and Georgetown athletes and football players in particular. Dancing Crab's peculiar interpretation of these statutes would result in restaurants being permitted to discriminate against everyone but "persons of color".

The doctrine of statutory pre-emption has a long history under federal law. In most cases the question is one of "State versus Federal" law. The test for pre-emption is whether the statutes "regulates" the same activities—as example; the minimum standards for mining coal—<u>Hodel v. Virginia Surface Mining and Reclamation Association</u>, (1981) 452 U.S. 264, 289-290. One of the earliest pre-emption cases that exists is <u>Texas & Pacific Railway Co. v. Abilene Cotton Oil Company</u>, (1907) 204 U.S. 426 ("Abilene Cotton"). In that case the Supreme Court held that the enactment of a statute worked to pre-empt the common law requirement of reasonable rates.

This court, in its interpretation of these statutes is required to look to the "plain language" of the statute. Cf. <u>Consolidated Rail Corp. v. United States</u>, 896 F.2d. 574, 578-579 (D.C. Cir. 1990). If the intent is clear from the plain language that is the end of the matter. In the present case, the D.C. Council has been explicit regarding sections 2-1402.31(a)(1) and (a)(2). No publicly licensed entity may discriminate against anyone for any reason.[2]

---

[2] This perhaps explains why Dancing Crab denied it was subject to Title 23 of the D.C. Municipal Regulations. Dancing Crab is a licensed public establishment. See; CSMF 1, 2, 45, 46, 47, 48, 51 and referenced Attachments 7, 8, 9, 11.

7

In addition to the above, the D.C. Court of Appeals has noted that restaurants that are defined under D.C. Code sec. 25-103(n) (Title 25—Alcoholic Beverage Regulation) are plainly subject to the Equal Services Laws. *D.T. Corp. v. District of Columbia*, 407 A.2d. 707, 709 notes 3, 4, 5, 6 ).  The court in that case noted that the equal service laws apply to "bona fide restaurant(s)".

Defendants' interpretation of the underlying "facts" is a wrong headed as its interpretation of the controlling law. Dancing Crab claims that plaintiff was "banned" based upon alleged that occurred between "Yinka" and "other Georgetown football players" (Opp. Memo at pg. 2). Dancing Crab claimed that the Georgetown football players' behavior was "belligerent" (Ibid). Dancing Crab description of the event, while totally irrelevant to the legal issue of statutory pre-emption, can not go unchallenged. Plaintiff has included in his CSMF points 50, 51, 52, 53, 54, 55, and 56). To summarize: John Eagleton was the general manager of Nick's Riverside Grill. Eagleton was not an employee of the Dancing Crab and had never worked at the Dancing Crab. On June 19, 2004 he was called to the lower level of the fountain area of the Washington Harbour Complex. He observed an incident between Olayinka Adeboyeku and a Georgetown student identified as Jonathan Cummings. Mr. Eagleton had no knowledge of how the incident began. The area where this incident occurred was not part of either Nick's Riverside Grill nor Tony & Joes (Dancing Crab) but was a open public area. Mr. Eagleton stated that plaintiff was standing next to Jonathan Cummings. Plaintiff was not engaged in the incident; was not saying anything to anyone; was touching anyone; nor was plaintiff insulting anyone (CSMF 54). Plaintiff was just 'there'. Mr. Eagleton claims that he "banned" plaintiff for "laughing". Dancing Crab, at page 6 of its Opposition,

represents that plaintiff "goaded and repeatedly taunted and/or participated in the taunting of Olayinka Adeboyeku". This is a patently false representation. As noted above, even with Mr. Eagleton's version of what occurred on June 19-20, 2004, plaintiff did not engage in those alleged acts. (CSMF 54).[3]

Dancing Crab has a procedure to ban customers that requires the involvement of the police department (CSMF 55, 56). There are no records that either Mr. Cummings nor plaintiff were banned under the procedures described by Mr. Eagleton.[4] In fact, another employee that was present stated that plaintiff had "not been banned". (CSMF 41, 42).

Plaintiff referred the court to the decision of the D.C. Court of Appeals in *Feldt v. Marriott Corporation*, 322 A.2d. 913 (App.DC 1974). In that case the court established that restaurant patrons were to be classified as "business invitees". 322 A.2d. at 916. The case makes it clear the public establishments and licensed restaurants (Dancing Crab was such an establishment, CSMF 45, 46, 47, 48) must be open to all but may establish a reasonable dress code. It is also noted that plaintiff was "invited" to Dancing Crab by employees of defendant. (CSMF 35, 36, 37, 38, 39). It was the custom and practice of Dancing Crab to permit persons such as plaintiff to wait for employees in the inside main bar area. (Id.).

Plaintiff's Opening Memorandum indicates that the legal distinctions between licensees and invitees no longer exists. Plaintiff referred the court to several recent decisions written by the court which noted the "general standard of care". Dancing Crab

---

[3] Plaintiff and Mr. Cummings have a significantly different version of the facts as to June 19-20, 2004. However, for purposes of this motion Mr. Eagleton's version will be employed. Plaintiff did nothing under either set of factual circumstances except report and assault to Robert Puzio.

[4] It is noted that Dancing Crab claims such documents exist but has failed to produce. Plaintiff has pending with the court, Plaintiff's 4th motion to compel discovery which includes these purported 'proofs' of banning. It is submitted that if such documentation actually existed; it would have been produced by Dancing Crab for this motion.

9

argues that the separate standard for 'trespassers' remains applicable to defendants' restaurant. The decision cited by Dancing Crab, <u>Lacy v. Sutton Place Condominium Ass'n</u>, 684 A.2d. 390 (App.DC 1996), is inapposite. Sutton Place was a condominium building involving residential housing. 322 A.2d. at 392. The Sutton Place Condominium Ass'n and apartment building was NOT a licensed PUBLIC establishment and wsa not open to the public in general.[5] Dancing Crab contends that there is no distinction between a public or private building. Dancing Crab totally confuses the point that Restaurant patrons have already been classified—Invitees. More importantly, Dancing Crab fails (perhaps intentionally so) to acknowledge the "open access" and "equal access to facilities" requirements of the D.C. Code.

    II.    DO THE FACTS OF JUNE 27, 2004 SUPPORT THE AFFIRMATIVE DEFENSES OF ASSUMPTION OF THE RISK AND CONTRIBUTORY NEGLIGENCE?

Dancing Crab devotes 2 paragraphs to this issue. (Opp. Memo at pg. 5-6) It is noted in the CSMF that Dancing Crab did not dispute that plaintiff did nothing on June 27, 2004. It is undisputed that he declined to engage in a fight and left by a side/rear door to avoid a confrontation.[6] Dancing Crab does not discuss these undisputable facts and instead inserts factual allegations from June 19-20, 2004. Plaintiff was likewise not involved therein. More importantly, any events of June 19-20, 2004 would be irrelevant and the

---

[5] The "public licensed facility" versus "private building" concept is a key distinction overlooked by defendants. This court has issued several recent decisions involving such public places as the John F. Kennedy Center and the MCI Center wherein the court employed the "general standard of care". Cf. Brisbin v. Washington Sports and Entertainment, Case No. 04cv0643(RCL), Memo. Order filed 2/21/06.

[6] Dancing Crab should have read its own exhibits. Dancing Crab attached a couple of pages from the trial testimony of plaintiff. It must be stated that plaintiff received very serious multiple injuries as a result of this attack including a concussion. As a result he had no memory of what happened between 8-10 PM on June 26, 2004 and approximately 12 PM on June 27, 2004 when he awoke in the hospital. However, defendants' exhibit no. 4 (Doc. 42-2, pg. 4) reveals that plaintiff had a "torn quadriceps" in his leg at the time of the attack. This represents a tear in the primary muscle in the thigh and if stressed would tear completely thence requiring surgery to repair. Any concept that plaintiff would risk such further injury for a "street fight" is ridiculous.

facts of June 26-27, 2004 upon which defendants' affirmative defenses are interposed. The 'application' of defendants' contention reveals its flaw. Arguendo, 'Ed' and "Ralph" exchange words on day 1. It is a reasonable 'proximate cause' for Ralph to suddenly attack Ed a week later? Of course not.

The defendants have not disputed that Anthony Wood and Olayinka Adeboyeku went after plaintiff after he declined a street fight. The CSMF contains a series of points that Dancing Crab does not dispute. Plaintiff noted that the affirmative defenses of contributory negligence and assumption of the risk are not available for intentional torts such as being assaulted and kicked in the face. (Plaintiff Opening Memo at pg. 8-9). Dancing Crab misses the point. A plaintiff's claim is NOT barred by assumption of the risk when a plaintiff is compelled to accept the risk in order to protect himself, his rights or a privilege. See; *Kanelos v. Kettler*, 406 F.2d. 951, 955-956 (D.C.Cir. 1968). There is no question that plaintiff was "walking away" from a fight. Dancing Crab has made a judicial admission when it is stated that "Tony Wood went chasing after Yinka to ensure that, if there was a fight, it was a fair one". (Opp. Memo. at pg. 3, para. 2). Dancing Crab is now bound by that fact assertion and the court may use such admission against interest in its decision herein. *Davis v. A.G. Edward and Sons, Inc.* 823 F.2d. 105 (5th Cir. 1987).

Defendants fair no better when it comes to the issue of contributory negligence. The court in *District of Columbia v. Sterling*, 578 A.2d. 1163, 1165 (App.DC 1990) held that the burden is upon a defendant to prove by a preponderance of the evidence that a plaintiff was negligent and that such negligence contributed as a "proximate cause" and a substantial factor in causing plaintiff's injuries. Plaintiff's injuries were the direct result of being physically assaulted by two of defendants' employees. The record is devoid of

11

any facts which reflect that plaintiff did anything on June 27, 2004 except try to avoid a confrontation and a fight. Plaintiff did undertake to defend himself after he was attacked. It is noted that defendants do not dispute that the two employees left the premises and "chased" after plaintiff. It is undisputed that Olayinka Adeboyeku publicly stated that he was going after plaintiff (CSMF 21). Anthony Wood and Olayinka Adeboyeku first searched the Complex garage and then went to K Street. (CSMF 22, 23) Anthony Wood and Olayinka Adeboyeku saw plaintiff walking away from the Harbour Complex and gave chase. (CSMF 24, 25,). It was undisputed that Olayinka Adeboyeku lunged at plaintiff striking plaintiff in the back of his head (CSMF 26). It was undisputed that Anthony Wood tackled plaintiff (CSMF 27). It was undisputed that Olayinka Adeboyeku was on top of plaintiff striking plaintiff in his head hitting him in the face which his head bouncing off the cement sidewalk. (CSMF 30) It is undisputed that Olayinka Adeboyeku kicked plaintiff in the head several times (CSMF 29, 31).

Plaintiff, as a direct result of the attack, received injuries to his face and cheek bones, his nose, his eyes and sockets, his shoulder, numerous cuts, scraps and bruises. Plaintiff had to have 3 reconstructive surgeries, has permanent nerve damage to his face as well. Dancing Crab can point to no facts which support any contention that plaintiff participated in anything other than trying to defend himself after being attacked by two individuals from behind.[7]

---

[7] Defendants make the very lame contention that plaintiff was larger than Olayinka Adeboyeku. Defendants do not state that it was "two on one" with Adeboyeku at 6 ft 250 pounds and Wood at 5'10" and 260 pounds. The medical evidence reflects plaintiff incurred a separated shoulder when Wood tackled him. Plaintiff had a concussion, a dislocated shoulder, a torn quadracep and was up against two large individuals that tag-team attacked him. When someone is ambushed it simply does not matter how large you may be. Defendants' contention is shameful.

III. DEFENDANTS AFFIRMATIVE DEFENSES WOULD TURN APPLICABLE LAW 'UPSIDE DOWN' AND ARE THEREFORE PATENTLY INAPPLICABLE.

Plaintiff claims include negligence in the hiring, supervision and retention of employees. How can a plaintiff be contributorily negligent in the hiring and supervision of someone else's employee? It is very well established that a business has the affirmative duty to control its employees. Cf. _Trahan-Laroche v. Lockheed Sanders, Inc_., 657 A.2d. 417, 419 (N.H. 1995) (failure to control involves negligence in supervision). In the District a employer has the affirmative duty to "guard against the human traits of his employees which unless controlled are likely to harm others". _Murphy v. Army Distaff Foundation, Inc._ 458 A.2d. 61, 64 (App.D.C. 1983). These affirmative duties do not even begin to include the affirmative duties placed upon defendants as tavern owners, operators and innkeepers. Defendants' contentions would require a victim to have a duty to control an unruly or unstable employee.

IV. THE COURT MAY ENTER JUDGMENT AS TO LIABILITY BASED UPON DEFENDANTS' JUDICIAL ADMISSIONS.

Defendants have now acknowledged that Olayinka Adeboyeku along with Anthony Wood chased after plaintiff as he left the Washington Harbour Complex. The affirmative duty to control extends to activities outside of the scope of employment. Cf. _Trahan-Laroche,_ supra. This liability even extends to criminal conduct. _International Distributing Corporation v. American District Telegraph Co._ 569 F.2d. 136 (D.C. Cir. 1977), 186 U.S.App.D.C. 305, 308.

In addition, neither Anthony Wood nor Olayinka Adeboyeku are entitled to any claim of self defense. In a strikingly similar case, the District of Columbia Court of Appeals

13

held that "self defense" could not be asserted by a defendant that pursued a victim and engaged in an altercation. <u>Frost v. United States</u>, 618 A.2d. 653, 662 (App.DC 1992).

Dancing Crab states that neither Wood nor Adeboyeku were working at the time of the attack. This is not consistent with the evidence of record. First, it is well established that a defendant may NOT contradict itself/himself in order to create a genuine issue and dispute of fact. Cf. <u>Halperin v. Abacus Technology Corporation</u>, supra (the rule against 'self-contradiction' works to prevent sham issues of fact).

It is noted that Gregory Casten, Anthony Wood, Robert Puzio, Dean Cibel, John Eagleton, Oluwatosin Adeboyeku and Olayinka Adeboyeku all were employees of Dancing Crab or a related business. The record also reflects that Puzio now works for another Cibel family controlled company. Plaintiff attached to his CSMF a series of documents including deposition excerpts and financial records of the Dancing Crab. Attachments 7, 8 and 9 confirm that Dancing Crab is a publicly licensed establishment regulated by the Alcoholic Beverage Regulation Administration and Title 23 of the DC Municipal Regulations. Mr. Casten, who is responsible for the overall operations attended the depositions of his employees. Anthony Wood, Oluwatosin Adeboyeku and Olayinka Adeboyeku was "off the books" in that they were being paid in cash. The record of their work were "payout slips" which were prepared and entered into the Dancing Crab financial reports each day these persons worked. (CSMF 61, 62, 63, 64, 65). They were subject to the same standards of conduct as all other door staff including cleaning up after closing (CSMF 58, 59). These individuals were only paid "when they were finished with their duties and their work shift was over". (CSMF 65). The financial system reports for Friday June 25, 2004, Saturday June 26, 2004 and Sunday June 27, 2004 revealed that

14

they were either not paid or these individuals did not work (CSMF 67). This was confirmed by Mr. Casten in his deposition and his exhibits (CSMF 67). Mr. Wood stated that he had not been paid nor had Olayinka Adeboyeku been paid for the evening of June 26, 27, 2004 because of the incident which lead to his arrest by the police (CSMF 66).

Defendants material statement of facts contains the contention that both Anthony Wood and Olayinka Adeboyeku had been paid and were off the duty (Opp. Stmt at pt. 25). There is a generic 'exhibit' reference. Defendants' general manager and "chief" Gregory Casten confirmed that there was no record of these individuals being paid. Dancing Crab may not now contradict its OWN general manager and owner of the company. Further, Dancing Crab may not use the testimony of another Dancing Crab employee (such as Robert Puzio) to create a conflict of fact between its own employees in order to establish a dispute of fact.

It is further acknowledged by Dean Cibel and confirmed by James Sylvester that Anthony Wood did return to the Dancing Crab. (CSMF 70). It is also presented to the court that Olayinka Adeboyeku went to a hospital emergency services facility presenting himself at 4:17 AM on June 27, 2004 complaining of a "commercial/business site injury"—i.e. a 'work related injury' (CSMF 71). What were these injuries? Olayinka Adeboyeku received a final diagnosis of an abrasion to his knee and an abrasion to his right hand—nothing else. (CSMF 72).

These individuals were obligated to be cleaning up. Olayinka Adeboyeku was then supposed to be attending a mandatory employee meeting—conducted by Mr. Puzio. (CSMF 58, 59, 60, 69). These individuals were still working when they saw plaintiff and decided to have a street fight. They became upset when he refused and chased after

15

plaintiff as he left. This is classic negligence in failure to control, failure of supervision as well as many, many other egregious errors. Defendants are to be held accountable for the breach of their affirmative duties.

## CONCLUSION

It is hereby respectfully requested that the court grant plaintiff's motion as filed and that the court enter an Order for such other and further relief as the court deems just and appropriate in the circumstances—including that of judgment of liability upon the pleadings.

Dated: 24 October 2006

                                                    Respectfully submitted,

                                                    _____/S/_____
                                                    RICK A. RUDE, Esq. #244897
                                                    Suite 103
                                                    207 Park Avenue
                                                    Falls Church, VA.  22046
                                                    (AC 703) 536-3063 Tele.
                                                    (AC 703) 536-4841 Fax.

                                                    Counsel For Plaintiff