**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

JONATHAN W. RUDE,

    Plaintiff,

v.                                                    Case No. 05cv1278(RCL)

THE DANCING CRABT AT
WASHINGTON HARBOUR,
L.P. et al.,

    Defendants.

PLAINTIFF'S CONSOLIDATED STATEMENT
OF MATERIAL FACTS THAT WERE UNDISPUTED BY
<u>DEFENDANTS AND REPLY STATEMENT OF MATERIAL FACTS</u>

COMES NOW, Plaintiff, by and through his counsel, and submits this Consolidated Statement of Material Facts that are undisputed by Defendants and Reply Statement of Material Facts.

This Court's Rules of Procedure require movants to provide a documented, referenced statement of material facts to which there is no genuine issue. LCvR 56.1; LCvR 7(h). The court's rules specifically note that in determining a motion for summary judgment "the court may assume that facts identified by the moving party in its statement of facts are ADMITTED unless such a fact is controverted in the statement of genuine issues filed in opposition to the motion.

Plaintiff has restated below Plaintiff's Statement of Material Facts and has further identified which such facts are controverted. Defendants failed to file any statement of genuine issues nor directly answer Plaintiff's 34 fact points. Plaintiff hereby notes as follows:

1

PLAINTIFF'S OPENING STATEMENT OF MATERIAL FACTS

:

1. Defendant Dancing Crab at Washington Harbour, L.P. conducts business as a restaurant, bar and dining establishment at 3000-3050 K Street, N.W. in the District of Columbia.

DEFENDANTS: Undisputed.

2. Defendant Dancing Crab at Washington Harbour, L.P. was issued a license to serve alcoholic beverages, class CRO3, by the Government of the District of Columbia Alcoholic Beverage Regulation Administration which license was in effect during the period January 1, 2004 through December 31, 2004. (Doc. #1, Cmplt, para. 8; Doc. #9, Answer, pg. 1, point 5).

DEFENDANTS: Undisputed.

3. Defendant Dancing Crab at Washington Habour, L.P. is a "public" establishment and subject to the regulations contained in Title 23—Alcoholic Beverages of the District of Columbia Municipal Regulations ("DCMR").

DEFENDANTS: Dispute that they are subject to the alcoholic beverage regulations contained at Title 23 –Alcoholic Beverages of the DCMR.

4. Anthony B. Wood, a/k/a Willie Joyner, Jr. was an employed by the Dancing Crab at Washington Harbour, L.P. as a doorman/bouncer during the period June 1, 2004 through at least the end of September 2004. (Doc. #1, Cmplt, para. 18; Doc.#9, Answer, pg. 2, point 13).

DEFENDANTS: Undisputed.

5. Olayinka Adeboyeku, a/k/a/ Yinka was employed by the Dancing Crab at Washington Harbour, L.P. as a doorman/bouncer during the period June 1, 2004 through June 27, 2004. (Doc. #1, Cmplt, para. 19; Doc. #9, Answer, pg. 2, point 13).

DEFENDANTS: Undisputed.

6. Anthony B. Wood possessed a criminal conviction history which history includes three felony convictions for crimes of violence including unlicensed possession of weapons, possession of drugs, and distribution of drugs in both the District of Columbia and State of Georgia. (Doc. #1, Complt, para. 21, 22; Doc. #9, Answer, pg. 2, point 16).

DEFENDANTS: Undisputed.

7. Anthony B. Wood was arrested by the Metropolitan Police Department on June 27, 2004 at the restaurant facilities of The Dancing Crab at Washington Harbour, L.P. and charged with Aggravated Assault on Plaintiff. (Doc. #1, Complt, para. 38; Doc. #9, Answer, pg. 2, point 24).

DEFENDANTS: Anthony Wood was arrested in the public area of the Washington Harbour Complex. (Def. Stmt of Material Facts, pt. 26).

8. Olayinka Adeboyeku was arrested on July 8, 2004 in Montgomery County Maryland as a fugitive from the District of Columbia. (Attachment No. 1, Def. Response to Admission Request No. 8).

DEFENDANTS: Undisputed.

9. Olayinka Adeboyeku was returned to the District of Columbia and charged with Aggravated Assault on Plaintiff (Doc. #1, Complt. Para. 40; Doc. #9, Answer, pg. 2, point 24).

DEFENDANTS: Undisputed.

10. Olayinka Adeboyeku and Anthony B. Wood were working at the restaurant facilities of The Dancing Crab at Washington Harbour, L.P. on June 27, 2004. (Attachment No. 1, Def. Response to Admission Requests 1, 5).

DEFENDANTS: Undisputed.

11. On June 27, 2004, at approximately 1:45 A.M. to 2:00 A.M. Plaintiff entered the main bar of the Dancing Crab at Washington Harbour. L.P. to wait for Micheal Gillman and give him a ride home. (Attachment No. 2, Dep. J. Sylvester, pg. 13, Ex. 2, pg. 1; Attachment No. 3, Dep. M. Gillman, pg. 15-16, 24-25, Ex. 3, pg. 1).

DEFENDANTS: Undisputed.

12. Robert Puzio told James Sylvester to ask the Plaintiff to leave as "Yanka was angry with" the Plaintiff. (Attachment No. 2-Dep. J. Sylvester, Ex. 2, pg. 1; Attachment No. 3-Dep. M. Gillman, pg. 24, (Lines 21-23).

DEFENDANTS: disputed. Contend that Puzio told Sylvester to ask plaintiff to leave because plaintiff was not supposed to be there having been 'banned'.

13. Plaintiff had a conversation with Officer Rob Owen in which Plaintiff indicated that he "did not have a problem with Yanka and would talk to him if he wanted to". (Attachment No. 2-Dep. J. Sylvester, Ex. 2, pg. 1;Attachment No. 3-Dep. M. Gillman, pg. 26-27, Ex. 3, pg. 1-2).

DEFENDANTS: Undisputed.

14. Plaintiff specifically stated he "did not want to fight" as he "had no quarrel" with Yinka. (Attachment No. 3-Dep. M. Gillman, Ex. 3, pg. 2)

DEFENDANT: Undisputed.

15. Officers Robert Owen and Glenn Luckett were present in the main bar of the Dancing Crab at Washington Harbour, L.P. while Yinka, Anthony Wood and Oluwatosin Adeboyeku stood at the main entrance/exit to the Dancing Crab at Washington Harbour, L.P. (Attachment No. 4-Dep. A. Wood, pg. 69; Attachment No. 5, pg. 314; Attachment No. 6-A, pg. 4, lines 11-17).

DEFENDANTS: Undisputed.

16. Officer Robert Owen told Plaintiff that it would be better not to even see Yinka. (Attachment No. 2-Dep. J. Sylvester, ex. Pg. 1).

DEFENDANTS: Undisputed.

17. Yinka was standing outside at the main entrance where he was pulling and banging on the doors saying that he was going to fight the Plaintiff. (Attachment No3-Dep. M. Gillman, pg. 26, lines 19-21.

DEFENDANTS: Undisputed.

18. Yinka began to follow Officer Owen. Plaintiff and the other individuals after they left the side entrance and Yinka began screaming and throwing tables and banging on the outdoor furniture. (Attachment No. 3-Dep. M. Gillman, pg. 27, lines 20-24; Attachment No. 6-A-Interview Stmt. A. Wood, pg. 4, lines 11-16; Attachment No. 5, pg. 318).

DEFENDANTS: Disputed. Yinka was not throwing chairs. (Def. Stmt of Material Facts, pt. 16)

19. Officer Robert Owen took Plaintiff, Mr. Gillman and two other individuals out the side entrance of the Dancing Crab at Washington Harbour to avoid an incident. (Attachment No. 3-Dep. M. Gillman, pg. 27, lines 12-14; Attachment No. 5, pg. 315; Attachment No. 4-Dep. A. Wood, pg. 69).

DEFENDANTS: Disputed as to reason –Yinka was upset that Plaintiff had come back to the restaurant (Def. Stmt Material Facts, pt. 15).

20. Officer Owen, Plaintiff and Mr. Gillman left by a side door and began walking up the boardwalk toward the Sequoia and 30th Street, N.W. and thence up 30th Street to K Street, N.W. (Attachment No. 3-Dep. M. Gillman, Ex. 3, pg. 2)

DEFENDANTS: Undisputed.

21. Yinka and Anthony Wood then cut through the restaurant and main bar area of the Dancing Crab at Washington Harbour during which time Yinka stated to James Sylvester that he was going to "knock Jon Rude out" and then he would return and knock out James Sylvester. (Attachment No. 2-Dep. J. Sylvester, Ex. 2, pg. 2).

DEFENDANTS: Undisputed.

22. Yinka and Anthony Wood exited the main entrance to the Dancing Crab at Washington Harbour ran into the garage of the Washington Harbour Complex. (Attachment No. 4-Dep. A. Wood, pg. 70, lines 2-20 to pg. 71, line 7).

DEFENDANTS: Undisputed.

23. Yinka and Anthony Wood then exited the garage and then ran up the main steps of the Washington Harbour Complex toward K Street. (Attachment No. 4-Dep. A. Wood, pg. 71, line 8 to pg. 7).

DEFENDANTS: Undisputed.

24. Plaintiff, M. Gillman and the two other individuals were at the corner of the Washington Harbour Complex walking away from the Complex. (Attachment No. 4-Dep. A. Wood, pg. 72, lines 9-13); Attachment No. 3-Dep. M. Gillman, pg. 14. lines 5-9).

DEFENDANTS: Undisputed.

25. Yinka ran after the Plaintiff, M. Gillman and the two other individuals and caught up to them. (Attachment No. 4-Dep. A. Wood, pg. 72, line 9-16, pg. 76, lines 15).

DEFENDANTS: Undisputed.

26. Yinka then lunged at Plaintiff striking plaintiff in the back of the head causing Plaintiff to fall. (Attachment No. 3-Dep. M. Gillman, pg. 28. lines 16-24;Attachment No. 4-Dep. A. Wood, pg. 106, line 9).

DEFENDANTS: Undisputed.

27. Anthony Wood then tackled Plaintiff. (Attachment No. 4-Dep. A. Wood, pg. 77, line 19-20; Attachment No. 6-A, Interview Stmt A. Wood, pg. 4, line 25 – pg. 5, line 2).

DEFENDANTS: Undisputed.

28. Michael Gillman then grabbed Yinka and Anthony Wood pulled Gillman off Yinka. (Attachment No. 3-Dep. M. Gillman, pg. 29, lines 3-12; Ex. 3, pg. 3).

DEFENDANTS: Undisputed.

29. Yinka ran over to where Plaintiff was on the sidewalk and kicked Plaintiff in the head. (Attachment No. 3-Dep. M. Gillman, pg. 29, lines 13-17).

DEFENDANTS: Undisputed.

30. Yinka was on top of Plaintiff and was striking Plaintiff in the head hitting him in the face with his head bouncing off the cement sidewalk. (Attachment No. 3-Dep. M. Gillman, pg. 29, lines 19-21; Attachment No. 6-B, Interview Stmt Anthony Wood, pg. 7, lines 1-3).

DEFENDANTS: Undisputed.

31. Anthony Wood pulled Yinka off Plaintiff and as he did so, Yinka kicked Plaintiff in the head again. (Attachment No. 6-B, Interview Stmt Anthony Wood, pg. 7, lines 5-23, pg. 10, lines 6-10).

32. DEFENDANTS: Undisputed.

33. Anthony Wood and Yinka then returned to the Dancing Crab at Washington Harbour where they went inside and attended a meeting. (Attachment No. 6-B, Interview Stmt. Anthony Wood, pg. 10, line 17-18).

DEFENDANTS: Disputed. Wood and Yinka did not return to the restaurant for a meeting after the incident (Def. Stmt of Material Facts, pt. 24)

34. On June 27, 2004 Plaintiff did not speak nor communicate in any way with Anthony Wood, Olayinka Adeboyeku nor Oluwatosin Adeboyeku while at the facilities of the Dancing Crab at Washington Harbour, L.P.

DEFENDANTS: Undisputed.

8

PLAINTIFF'S REPLY STATEMENT OF MATERIAL FACTS

Plaintiff, for purposes of clarity, will continue with the numbering initiated in his Opening Statement of Facts. Plaintiff submitted a excerpt and exhibit from the June 27, 2006 deposition of Mr. James Sylvester as Attachment "No. 2". Plaintiff is hereby submitting additional deposition transcript pages for Mr. Sylvester that included in and are identified as "Attachment No. 2-A".

35. It was the normal practice for personnel at the Dancing Crab to clear out the outside bar area before they would announce 'closing' and clear out the inside main bar and lounge area of the Dancing Crab. (Attachment No. 2-A, Dep. Tr. J. Sylvester, pg. 8, lines 10-18).

36. It was a normal occurrence for people to remain in the main bar area of the Dancing Crab after 2:00 AM. (Attachment No. 2-A, Dep. Tr. J. Sylvester, pg. 8, lines 19-21).

37. Such individuals were allowed to stay if they were a friend of the management or one of the employees and included individuals that were there is give someone a ride home. (Attachment No. 2-A, Dep. Tr. J. Sylvester, pg. 8, line 22 to pg. 9, line 9).

38. All non-employees of the Dancing Crab would be gone from the main bar by 2:30 AM. (Attachment No. 2-A, Dep. Tr. J. Sylvester, pg. 9 lines 6-9).

39. On June 26-27, 2004 Mr. Sylvester and Mr. Gillman invited and brought plaintiff into the main bar of the Dancing Crab to wait for them so that plaintiff could give Mr. Gillman a ride home. (Attachment No. 2-A, Dep. Tr. J. Sylvester, pg. 11,

lines 16-25; Attachment No. 3-B, Dep. Tr. M. Gillman, pgs. 25 line 1 to pg. 26, line 11).

40. As Mr. Gillman had clocked out Plaintiff and Gillman were approached by Mr. Sylvester and told that "Yinka had a problem with Jon and that he was going to fight Jon". (Attachment No. 3-B, Dep. Tr. M. Gillman, pg. 26, lines 9-11).

41. On June 26-27, 2004 Mr. Sylvester was not told by Robert Puzio that plaintiff had been banned or that plaintiff knew he was not supposed to be at the Dancing Crab. (Attachment No. 2-A, Dep. Tr. J. Sylvester, pg 31 line 11 to pg. 32, line 6).

42. Plaintiff had not been banned from Tony & Joe's nor had plaintiff been banned from Nick's Riverside Grill. (Attachment No. 2-A, Dep. Tr. J. Sylvester, pg. 17, lines 11-19).

43. Olayinka Adeboyeku, subsequent to June 26-27, 2004 returned to the Dancing Crab and threatened to shoot James Sylvester because Sylvester was "recruiting" people to testify about Adeboyeku in court. (Attachment No. 2-A, Dep. Tr. J. Sylvester, pg. 39, lines 1-8).

44. Anthony Wood returned to the Dancing Crab and spoke with James Sylvester about the alleged fight between Plaintiff and Olayinka Adeboyeku on K Street on June 27, 2004. (Attachment No. 2-A, Dep. Tr. J. Sylvester, pg. 12, line 14-16, Attachment No. 2, Ex. 2, pg. 2).

45. The District of Columbia regulates the sale of alcoholic beverages under Title 25 of the District of Columbia Code, 25-101 Et seq. Alcoholic Beverage Regulation (Attachment No. 7, pg. 1).

46. The District of Columbia established the Alcoholic Beverage Regulation Administration ("ABRA") pursuant to D.C. Code 25-202 and the ABRA was authorized to promulgate regulations in the District of Columbia Municipal Regulations ("DCMR"). (Attachment No. 7, pg. 2).

47. The regulations of the ABRA are published in Title 23 of the DCMR. (Attachment 8, pg. 1-2, Table of Contents and Enabling Statute).

48. The Dancing Crab at Washington Harbour submitted to ABRA a Renewal Application on May 18, 2004 for the retain sale of alcoholic beverages. (Attachment 9, Dep. G. Casten, pg. 12, lines 2-7, Ex. 2).

49. Oluwatosin Adeboyeku swore under oath on March 10, 2005 that he held the title of and was the "Supervisor" for the door staff at the Dancing Crab in June 2004. (Attachment No. 10, Tr. pg. 493, lines 3-21).

50. Mr. Jonathan Eagleton was the general manager of Nick's Riverside Grill and was never an employee of nor worked for Tony & Joe's Seafood Place. (Attachment No. 11, Dep. J. Eagleton, pg. 16, lines 7-16)

51. Nick's Riverside Grill is open to the public and is a "public establishment". (Attachment No. 11, Dep. J. Eagleton, pg. 64, lines 11-16).

52. The fountain walkway and the fountain area at the Washington Harbour Complex are not part of Nick's Riverside Grill nor part of Tony & Joe's but are public areas. (Attachment No. 11, Dep. J. Eagleton, pg. 22, lines 12-20).

53. Mr. Eagleton was called to the fountain area of the Washington Harbour Complex to intervene in a confrontation between Olayinka Adeboyeku and Mr. Jonathan

Cummings but he did not see how the incident started. (Attachment No. 11, Dep. J. Eagleton, pg. 51, lines 14-16).

54. Plaintiff was not engaged in the incident, was not saying anything to anyone and was not touching anyone, was not insulting anyone but was standing beside Cummings. (Attachment No. 11, Dep. J. Eagleton, pg. 41, lines 13-18, pgs. 67 line 18 – pg. 68, line10).

55. The practice of 'banning' or 'barring' involved asking someone to leave and such person is purportedly permanently excluded from patronage of the restaurant. (Attachment No. 11, Dep. J. Eagleton, pg. 62 line 5 to pg. 63, line 22).

56. The procedure for banning or barring requires getting the police department involved in order to document the banning. (Attachment No. 11, Dep. J. Eagleton, pg. 62, lines 11-15).

57. Olayinka Adeboyeku was not the University of Maryland 'starting fullback' in 2003-2004 but had attended Montgomery College obtaining an associate degree. (Attachment No. 12, Tr. Pg. 5, line 13-15.)

58. The duties of the door staff included cleaning up after the closure of the restaurants. (Attachment No. 12, Tr. Pg. 7, lines 7-10; Attachment No. 13, pg. 2).

59. Anthony Wood and Olayinka Adeboyeku were subject to the standards of conduct established by the Dancing Crab and were required to help clean up the restaurants after closing. (Attachment No. 14, Response to Admissions, pg. 4 nos. 21 and 22).

60. Olayinka Adeboyeku did not work at the Dancing Crab on Friday night, June 25-26, 2004 because it was raining. (Attachment No. 12, tr. Pg. 8, lines 13-20).

61. Anthony Wood, Oluwatosin Adeboyeku and Olayinka Adeboyeku were not required to use the employee time clocks but were paid in cash by Robert Puzio. (Attachment No. 15, Dep. R. Puzio, pg. 40, line 14).

62. The procedure for paying Wood and the Adeboyeku brothers was for Puzio to take cash from the outdoor cash registers and take the case to the inside office where the cash was placed in small manila envelopes for their payment. (Attachment No. 15, Dep. R. Puzio, pg. 40, line 18 to pg. 42, line 14).

63. When Puzio paid Anthony Wood and Olayinka Adeboyeku; Puzio would prepare a "payout slip" which was then placed with the nightly financial system records. (Attachment No. 15, Dep. R. Puzio, pg. 41, line 6- pg. 42, line 14).

64. In each instance where Robert Puzio paid someone with cash he prepared and attached a payout slip in the financial report. ( Attachment No. 15, Dep. R. Puzio, pg. 42, lines 6-14).

65. Anthony Wood, Olayinka Adeboyeku and Oluwatosin Adeboyeku were paid when they were finished with their duties and their work shift was over. (Attachment No. 15, Dep. R. Puzio, pg. 40, lines 18-22, pg. 41, line 1).

66. Anthony Wood and Olayinka Adeboyeku were not paid on the night of assault upon plaintiff-- June 26-June 27, 2004. (Attachment No. 16, Dep. A. Wood, pg. 92, lines 13-18).

67. The financial system reports of the Dancing Crab for the days of Friday June 25, 2004, Saturday June 26, 2004 and Sunday June 27, 2004 did not contain any pay out slips for Anthony Wood, Olayinka Adeboyeku nor Oluwatosin Adeboyeku and therefore they were either not working or were not paid on those days.

(Attachment No. 17, Dep. G. Casten, pgs. 82, lines 17 to pg. 88, line 2, Ex. Nos. 21, 22, 23).

68. On the early morning of June 27, 2004 Robert Puzio was conducting a mandatory meeting of the door staff in the main bar and lounge area of the Dancing Crab. (Attachment No. 18, Dep. C. Moran, page 23, lines 10-22).

69. Since Olayinka Adeboyeku had not worked on Friday night, June 25-26th, 2004 he was obligated to be at that staff meeting. (Attachment No. 18, Dep. C. Moran, pg. 23, lines 19-22, Attachment 12, Tr. Pg. 8 lines 13-20).

70. Dean A. Cibel saw Anthony Wood return to the restaurant after the assault on Plaintiff on June 27, 2004. (Attachment No. 19, Dep. D. Cibel, pg. 108, lines 5-7).

71. Olayinka Adeboyeku presented himself to emergency services at 4:17 AM on June 27, 2004 complaining of a "commercial/business site injury". (Attachment No. 20, pg. 1, 3, 5).

72. Olayinka Adeboyeku was diagnosed with two injuries—(1) an abrasion to left anterior knee and (2) an abrasion to the lateral aspect of the dorsum of the right hand. (Attachment No. 20, pg. 1, Final Diagnosis).

Dated: October 24, 2006

/S/
_____
RICK A. RUDE, Esq. #244897
Suite 103
207 Park Avenue
Falls Church, VA. 22046
(AC 703) 536-3063 Tele.
(AC 703) 536-4841 Fax.

Counsel For Plaintiff