## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____

JONATHAN W. RUDE,            )
                             )
    **Plaintiff,**             )
                             )
    **v.**                     )      **Civil Action No. 05-1278 (RCL)**
                             )
THE DANCING CRAB AT          )
WASHINGTON HARBOUR, LP, *et al.*  )
                             )
    **Defendants.**            )
_____)

### MEMORANDUM OPINION

This matter comes before the Court on plaintiff's Motion [29] for Partial Summary Judgment and plaintiff's Motion [38] for Sanctions. Plaintiff's motion [29] seeks summary judgment to strike defendants' affirmative defenses of trespasser, contributory negligence, and assumption of the risk. Plaintiff's motion [38] requests the Court to enter default as to both defendants, and in the alternative, the motion [38] requests to prohibit defendants from calling any witnesses identified in the Court's May 15, 2006 Order [21] and to prevent defendants from disputing the facts stated in the depositions of James Sylvester and Michael Gillman. Plaintiff's motion [38] also seeks leave to move for attorney's fees. Having considered plaintiff's motions, defendants' oppositions, plaintiff's replies, the entire record herein, and the applicable law, the Court DENIES plaintiff's Motion [29] for Partial Summary Judgment and GRANTS IN PART and DENIES IN PART plaintiff's Motion [38] for Sanctions.

## I.    BACKGROUND

### A.    Factual Background

On June 27, 2004, plaintiff, a college football player for Georgetown University

1

weighing between 270 and 280 pounds (Defs.' Opp'n to Summ. J. Ex. 1), got into a fight with

Olyanika Adeobyeku ("Yinka"), a college football player at the University of Maryland who was

employed by the Dancing Crab at Washington Harbor ("Dancing Crab") as a doorman and

bouncer. (Defs.' Opp'n to Summ. J. Ex. 8 at 41; Pl.'s Compl. ¶ 19.) At approximately 1:45

A.M. on June 27, plaintiff went to the Dancing Crab, a restaurant and bar (Pl.'s Compl. ¶ 8), to

give his friend, Michael Gillman, a ride home. (Pl.'s Mem. of P & A in Supp. of Summ. J. Ex. at

24-25.) Yinka saw plaintiff and was agitated that plaintiff was at the Dancing Crab because

plaintiff had been banned from the Dancing Crab the previous week for an altercation with

Yinka. (*See* Defs.' Opp'n to Summ. J. Ex. 1 at 14; Defs.' Opp'n to Summ. J. Ex. 6 at 59.)

Another employee of the Dancing Crab, knowing that plaintiff was banned from the Dancing

Crab, instructed a bartender to ask plaintiff to leave, and a police officer then escorted plaintiff

off the Dancing Crab's premises to avoid any conflict with Yinka. (*See* Defs.' Opp'n to Summ.

J. Ex. 7 at 82.)

Yinka chased after plaintiff, and Anthony Wood ("Wood"), another bouncer and

doorman at the Dancing Crab, followed Yinka. (Defs.' Opp'n to Summ. J. Ex. 1 at 33.) At the

time, both Yinka and Wood had finished work for the night. (*See* Defs.' Opp'n to Summ. J. Ex.

7 at 82.) When Yinka caught up to plaintiff, he walked beside plaintiff for about a block and a

half. (Pl.'s Mem. of P & A in Supp. of Summ. J. Attach. 4 at 72.) Yinka then lunged at plaintiff

and struck him in the head, and a street fight broke out. (*Id.* at 77, 106.) Wood intervened and

ensured that the plaintiff and Yinka had a fair fight. (Defs.' Opp'n to Summ. J. Ex. 5 at 148-49.)

Plaintiff and Yinka proceeded to exchange blows. (*Id.*) Plaintiff lost the fight (Pl.'s Mem. of P

& A in Supp. of Summ. J. Attach. 6-B at 5) and suffered several injuries (Pl.'s Compl. ¶ 37).

Yinka and Wood then left the scene and did not return to the Dancing Crab.  (Defs.' Opp'n to Summ. J. Ex. 8 at 62.)

   **B.     Procedural Background**

   On June 27, 2005, plaintiff filed a three-count complaint against defendants to recover personal injuries.  (Pl.'s Comp. ¶¶ 41-67.)  During the course of discovery, plaintiff filed three separate motions [16, 19, 20] to compel.[1]  (*See* Pl.'s Mem. of P & A in Supp. of Mot. for Sanctions [herein after Pl.'s Mem.] at 2.)  On May 15, 2006, the Court granted all three motions to compel and ordered the defendants to comply fully with plaintiff's discovery requests.  (*See* Ct. Order [21]; Ct. Order [22]; Ct. Order [23].)  In addition, the Court ordered that if defendants fail to comply with the discovery orders, plaintiff may move the court for sanctions.  (*See* Ct. Order [22]; Ct. Order [23].)

   Plaintiff alleges that defendants did not comply with the discovery orders, and now moves this Court to impose sanctions on defendants.  In particular, plaintiff contends that defendants did not provide the witness information required by Court Order [21]. (Pl.'s Mem. at 7.) Furthermore, plaintiff alleges that defendants failed to comply with Court Orders [22, 23] because defendants failed to produce relevant business documentation and engaged in the spoliation of evidence by not disclosing the existence of security cameras and tapes that may have captured the incident.  (*Id.* at 7-8.)  Plaintiff seeks the sanction of default.  In the alternative, plaintiff requests the Court to prohibit defendants from calling any witnesses identified in the Court's May 15, 2006 Order [21] and from refuting the facts stated in the

_____

   [1] Plaintiff subsequently filed a fourth Motion [26] to Compel which the Court granted on March 30, 2007.

3

depositions of James Sylvester and Michael Gillman.  Plaintiff also asks for leave to file a

motion for attorney's fees.

In addition to plaintiff's motion [38], plaintiff's motion [29] for partial summary

judgment remains pending before the Court.  Plaintiff's motion [29] seeks to strike defendants'

affirmative defenses of trespass, contributory negligence, and assumption of the risk.  Because a

ruling granting plaintiff's motion [38] would render motion [29] moot, the Court will address

plaintiff's Motion [38] for Sanctions first and then turn its attention to plaintiff's Motion [29] for

Partial Summary Judgment.

## II.    DISCUSSION

### A.    Motion for Sanctions

#### 1.    Legal Standard

Plaintiff submitted his Motion [38] for Sanctions pursuant to Federal Rule of Civil

Procedure 37(b)(2) because of defendants' alleged failure to comply with the Court's Orders [21,

22, 23].  Rule 37(b)(2) allows the Court to administer a variety of sanctions including:  (1)

ordering that certain facts to be taken as established for the purposes of the action; (2) ordering

that the disobedient party cannot support or oppose a designated claim or defense, or cannot

introduce designated matters as evidence; (3) ordering the striking of pleadings, including the

entry of a dismissal or default; and/or (4) treating the failure to comply with the Court's order as

contempt.  Fed. R. Civ. P. 37(b); *see also Caldwell v. Ctr. for Corr. Health & Policy Studies,

Inc.*, 228 F.R.D. 40, 42 (D.D.C. 2005).  In awarding sanctions, the Court must ensure that such

sanctions are just and proportionate to the offense.  *See Bonds v. District of Columbia*, 93 F.3d

801, 808 (D.C. Cir. 1996).  When the most severe sanctions, such as dismissal or default, are

requested, the Court must determine whether lesser sanctions would be more appropriate. *See id.* (explaining that litigation-ending sanctions are to only be used as a matter of last resort where lesser sanctions would prove futile).

Here, plaintiff seeks the sanctions of default judgment. Default judgment is an appropriate sanction where (1) "the opposing party's ability to present its case has been so severely prejudiced that it would be unfair to require him to proceed," (2) "the burden placed on the court is intolerable," and (3) "there is a sufficient need to deter similar conduct in the future." *Caldwell*, 228 F.R.D. at 46. In the alternative, plaintiff requests the Court to prohibit defendants from calling any witnesses identified in the Court's May 15, 2006 Order [21] and to take all facts stated in the depositions of James Sylvester and Michael Gillman as established. Plaintiff also seeks leave from the Court to file a motion for attorney's fees.

### 2.     Application of Standard

Plaintiff contends that default is the appropriate sanction because defendants failed to produce documents which prejudiced plaintiff's ability to fully prosecute his claims. In particular, plaintiff asserts that defendants engaged in the spoliation of key evidence, failed to produce employment files, and failed to produce supplemental initial disclosures as required by the Court. The Court finds that the prejudice suffered by plaintiff, if any, is not so severe as to warrant default judgment in the plaintiff's favor.

Plaintiff argues that defendants engaged in the spoliation of key evidence by destroying or failing to produce security tapes from June 27, 2004. Plaintiff, however, is unable to demonstrate that such spoliation occurred. In their response to plaintiff's request for production, defendants stated that no such tape existed. (Pl.'s Mem. Attach. 1 ¶ 36.) Contrary to plaintiff's

argument, defendants do not dispute that the Dancing Crab had security cameras.  (Pl.'s Mem.

Attach. 3 ¶¶ 6-9.)   In addition, defendants do not dispute that the security cameras were

functional.  (*Id.* ¶ 7.)  Rather, defendants maintain that the recording device on the system was

either not in use or not operational.  (*See* Pl.'s Mem. Attach. 4; Defs.' Opp'n to Mot. for

Sanctions Ex. 1.)  Plaintiff has not presented any evidence in response to defendants' assertion

that the recording device was not in operation on June 27, 2004.  Furthermore, plaintiff has not

demonstrated that the recording device was used at any time.  Instead, plaintiff alleges that if

such tapes existed, they would have "proven plaintiff's case."  (Pl.'s Reply to Opp'n to Mot. for

Sanctions at 12.)  This allegation, however, does not establish that the recording device was in

use on June 27, 2004 and that a tape did in fact exist.  Thus, the Court finds that defendants did

not engage in the spoliation of evidence.

       In addition, plaintiff asserts that default is the proper sanction because defendants did not

fully comply with plaintiff's document requests and because defendants failed to supplement

their initial disclosures as required by the Court's May 15, 2006 Order [21].  In response to

plaintiff's document requests, defendants provided all relevant documents.  Defendants produced

plaintiff with the names of all employees that worked on the dates in question.  (Defs.' Opp'n to

Mot. for Sanctions Ex. 4.)  The information also included the time sheets and schedules of the

employees that worked on those dates.  (*Id.*)  Furthermore, defendants provided employment

records for Yinka, Wood, and plaintiff, and made available all additional employment records

for plaintiff's inspection.  (Defs.' Opp'n to Mot. for Sanctions Exs. 4, 6; Pl.'s Reply to Opp'n to

Mot. for Sanctions Attach. 11.)  The parties dispute whether plaintiff had an actual opportunity

to review the additional employee information.  Any harm caused by defendants' failure to

physically turn over all employee records, however, was not so prejudicial to the point that default should be awarded to plaintiff because plaintiff had all relevant information necessary to conduct discovery, including the names of all employees present on June 27, 2004.

Furthermore defendants produced their supplemental initial disclosures on April 26, 2006, before the Court's Order. (Defs.' Opp'n to Mot. for Sanctions Ex. 7.) Pursuant to Rule 5(b)(2)(B) of the Federal Rules of Civil Procedure, defendants served their supplemental initial disclosures to plaintiff by mailing them to plaintiff's address. *See* Fed. R. Civ. P. 5(b)(2)(B). Upon receipt of the supplemental initial disclosures, plaintiff had the names and contact information for all individuals likely to have discoverable information. If plaintiff did not receive the supplemental initial disclosures, plaintiff should have alerted defendants in their subsequent communications. While defendants did fail to certify to the Court that they searched their employment records in compliance with the Court's Order [21], plaintiff did not suffer any harm so prejudicial to warrant default judgment.

As a result of defendants' production of documents and supplemental initial disclosures, plaintiff has in his possession all relevant information necessary to conduct discovery. He has the initial disclosure of potential witnesses, a record of all employees that worked on the dates in question, relevant employee records, and access to all other employee records. Therefore, the Court finds that plaintiff has not suffered a harm so prejudicial as to prevent plaintiff from prosecuting his claims. Accordingly, plaintiff's motion for the sanction of default is denied.

Plaintiff's alternative, less-severe sanctions are also denied. Defendants have produced supplemental initial disclosures. Therefore, it would be unjust to prohibit defendants from calling any individuals named in the Court's May 15, 2006 Order [21] as a witness. In addition,

it would be unjust and disproportionate to prohibit defendants from disputing the facts stated in the depositions of James Sylvester and Michael Gillman.

Plaintiff also requests leave to file a motion for attorney's fees. Rule 37 provides that attorney's fees are appropriate where a party discloses discovery materials after a motion to compel is filed by the opposing party, or after the Court orders the party to do so. *See* Fed. R. Civ. P. 37(a)(2)(4)(A). Here, defendants did not produce their supplemental initial disclosures until after plaintiff filed his motion to compel. In addition, defendants failed to certify to the Court that they searched their employment records. Furthermore, defendants did not produce documents responsive to plaintiff's requests until after the Court ordered them to do so. Accordingly, the Court grants plaintiff's request for leave to file a motion for attorney's fees. Whether plaintiff's counsel, as a relative to plaintiff, is eligible to receive such fees remains to be determined.

### B.    Motion for Partial Summary Judgment

#### 1.    Legal Standard

Federal Rule of Civil Procedure 56 provides that summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admission on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). It is the burden of the moving party to demonstrate that a dispute does not exist over a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). When determining whether a genuine issue of material fact exists, the Court is to believe the nonmoving party's evidence and must draw all reasonable inferences from the evidence in the nonmoving party's favor. *See Anderson v.*

*Liberty Lobby Inc.*, 477 U.S. 242, 255 (1986). To defeat a summary judgment motion, however, the nonmoving party must produce more than "a mere scintilla of evidence" in support of their claims. *Id.* at 252. The nonmoving party must demonstrate that a dispute exists over facts which might affect the outcome of the case under the governing law in order to preclude the entry of summary judgment. *Id.* at 248.

### 2.      Application of Standard

Plaintiff's Motion [29] for Partial Summary Judgment seeks to establish that defendants' affirmative defenses of trespass, contributory negligence, and assumption of the risk are not sustainable as a matter of law. The Court disagrees. For the reasons set forth below, the Court finds that defendants' affirmative defenses are sustainable as a matter of law. Accordingly, the Court will deny plaintiff's motion for partial summary judgment.

### a.      Trespass

The Court finds that defendants' defense of trespass is sustainable as a matter of law because it is not preempted by statute.[2] Therefore, a dispute exists as to whether plaintiff was entitled to the legal status of a business invitee or a trespasser. Accordingly, the Court denies plaintiff's motion for summary judgment for defendants' affirmative defense of trespass.

Plaintiff contends that the D.C. Equal Services Law and the D.C. Human Rights Law on Public Accommodations preempt defendants from asserting that plaintiff was a trespasser. The Equal Services Law provides that:

(a) It shall not be lawful for the keeper, proprietor, or proprietors of any licensed

---

[2] Defendants contend that plaintiff's alleged status as a trespasser is not an affirmative defense. The question of preemption, however, is one of law and is subject to disposition through summary judgment.

hotel, tavern, restaurant, ordinary, sample room, tippling house, saloon, or eating

house, to refuse to receive, admit, entertain, and supply any quiet and orderly

person or persons, or to exclude any person or persons on account of race or

color.

D.C. Code § 47-2902 (2007). The D.C. Human Rights Law on Public Accommodations

prohibits any individual from denying any person full enjoyment of any place of public

accommodations on account of various forms of discrimination including matriculation. *See*

D.C. Code § 2-1402.31(a).

Neither statute prohibits defendants' defense of trespass as a matter of law. The Equal

Services Law is inapplicable because plaintiff does not assert that defendants refused to receive,

admit, entertain, supply, or exclude him on account of his race or color. Similarly, the D.C.

Human Rights Law on Public Accommodations is inapplicable because defendants did not

allegedly ban plaintiff because of his matriculation at Georgetown University. The record

demonstrates that plaintiff's ban stems from a prior altercation with Yinka, not for his

matriculation at Georgetown. (*See* Defs.' Opp'n to Summ. J. Ex. 1 at 14; Defs.' Opp'n to

Summ. J. Ex. 6 at 59.). Furthermore, it is established that absent a constitutional or statutory

right, a restaurant owner maintains the common law right to arbitrarily refuse service to anyone.

*See Feldt v. Marriott Corp.*, 322 A.2d 913, 915 (D.C. 1974) (explaining that the Equal Services

Law does not apply where discrimination or civil rights are not involved.) Therefore, if an

owner refuses to service an individual for a non-discriminatory reason, the owner revokes the

individual's status as a lawful guest, and the individual becomes a trespasser. *Cf. id.* at 916

(stating that when an individual is ordered to leave a restaurant, he or she has no right to remain

in the establishment).  Defendants allegedly exercised this common law right and revoked

plaintiff's license.  (*See* Defs.' Opp'n to Summ. J. Ex. 1 at 14; Defs.' Opp'n to Summ. J. Ex. 6 at

59.)  Accordingly, the Court finds that neither statute preempts defendants' defense of trespass.

Due to the fact that neither statute prohibits the defense of trespass, the Court finds that

plaintiff's legal status as a trespasser or an invitee is in dispute.  Resolution of this dispute will

affect plaintiff's ability to recover damages from defendants.  The common law distinction

between an invitee and licensee has been abolished, but the distinction between an invitee and a

trespasser remains.  *See Sandoe v. Lefta Assocs.*, 559 A.2d 732, 738 (D.C. 1988).  "A trespasser

is one who enters or remains upon property in the possession of another without the consent of

the possessor."  *Lacy v. Sutton Place Condominium Assoc.,* 684 A.2d 390, 393 (D.C. 1996); *see*

*also* D.C. Code § 22-3302.   A trespasser cannot recover for an injury resulting from negligence

alone; rather, a trespasser can only recover upon a showing that the landowner acted

intentionally, wantonly, or wilfully.  *See Lacy*, 684 A.2d at 393.  An invitee, however, is lawfully

present on a landowner's property and is owed a standard of reasonable care.  *Id.* at 394.  As a

result, a landowner may be liable to an invitee for negligence.  *Sandoe*, 559 A.2d at 740.

From the record, it is reasonable for a jury to believe that plaintiff was present at the

Dancing Crab against the will of the owners.  (*See* Defs.' Opp'n to Summ. J. Ex. 1 at 14; Defs.'

Opp'n to Summ. J. Ex. 6 at 59.)  As a result, plaintiff would receive the status of a trespasser,

and to hold defendants liable, plaintiff would have to demonstrate that defendants acted

intentionally, willfully, or wantonly.  Thus, the dispute over plaintiff's status as invitee or

trespasser is material to defendants' affirmative defenses.  Accordingly, the Court denies

summary judgment as to defendants' defense of trespass.

### b.      Contributory Negligence and Assumption of the Risk

The Court finds that defendants' affirmative defenses of contributory negligence and assumption of the risk are sustainable as a matter of law because defendants were not intentional tortfeasors. Therefore, the Court denies plaintiff's motion for partial summary judgment with respect to defendants' affirmative defenses of contributory negligence and assumption of the risk.

"Contributory negligence is 'conduct which falls below the standard to which a plaintiff should conform for his own protection.'" *Wash. Metro. Area Transit Auth. v. Cross*, 849 A.2d 1021, 1024 (D.C. 2004) (internal citations omitted).  A defendant may invoke contributory negligence as a defense if there is some evidence from which a jury could find that the plaintiff did not act with reasonable care.  *Id.*   Assumption of the risk is applicable where "'the plaintiff . . . subjectively know[s] of the existence of the risk and appreciate[s] its unreasonable character.'"  *Jarrett v. Woodward Bros.,* 751 A.2d 972, 986 (D.C. 2000) (internal citations omitted).  By assuming the risk, the plaintiff relieves the defendant of any duty owed to the plaintiff.  *Id.*

Plaintiff asserts that the affirmative defenses of contributory negligence and assumption of the risk are not available to defendants because defendants committed intentional torts.  *See State Farm Mut. Auto. Ins. Co. v. Hill*, 755 A.2d 476, 481-82 (Md. Ct. Spec. App. 2001) (explaining that the defenses of assumption of the risk and contributory negligence are not applicable for intentional torts); *Janelsins v. Button*, 648 A.2d 1039, 1044 (Md. Ct. Spec. App. 1994) (holding that assumption of the risk is not an available defense for civil battery).  Defendants, however, are not alleged to have committed an intentional tort.  Plaintiff's complaint

contains three counts: *respondeat superior*, breach of duty, and negligence in the hiring, supervising and retaining of employees. (*See* Pl.'s Compl. ¶¶ 41-67.) Plaintiff has not produced any authority demonstrating that contributory negligence and assumption of the risk are unavailable for those counts.

Since defendants are not intentional tortfeasors, the law does not prohibit them from raising the affirmative defenses of contributory negligence and assumption of the risk. The applicability of both defenses is best left to the jury, and a reasonable jury may find that both affirmative defenses apply. It is reasonable for a jury to find that plaintiff's conduct fell below the standard of care to which plaintiff should have conformed for his own protection when he returned to the Dancing Crab after he had been banned because of a previous altercation with Yinka. As a result, plaintiff's actions may constitute contributory negligence and he may be unable to hold defendants liable. In addition, a reasonable jury may conclude from the evidence that plaintiff assumed the risk of the fight when he returned to the Dancing Crab after having been banned. Upon a finding that plaintiff assumed the risk, defendants would then have a lesser duty to protect plaintiff from harm. This in turn would affect plaintiff's ability to hold defendants liable for his injuries. Accordingly, the Court denies plaintiff's motion for partial summary judgment for defendants' defenses of assumption of the risk and contributory negligence.

## III.     CONCLUSION

For the foregoing reasons, the Court concludes that plaintiff's Motion [38] for Sanctions is GRANTED IN PART and DENIED in PART. Specifically, the Court DENIES plaintiff's requests to enter default against defendants, to prohibit defendants from calling witnesses

identified in the Court's May 15, 2006 Order [21], and to prevent defendants from refuting the facts contained in the depositions of James Sylvester and Michael Gillman.  The Court GRANTS plaintiff's request to file a motion for attorney's fees.  Whether plaintiff, as counsel's relative, can recover fees remains to be determined.

Furthermore, the Court concludes that plaintiff's Motion [29] for Partial Summary Judgment is DENIED.

A separate Order shall issue this date.

Signed by Royce C. Lamberth, United States District Judge, September 19, 2007.

14