**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

**JONATHAN W. RUDE,**

      **Plaintiff,**

  **v.**                                **Case No. 05-cv-1274 (RCL/JMF)**
                                        **Case No. 05-cv-1278 (RCL/JMF)**

**ANTHONY B. WOOD,**
**DEAN A. CIBEL,**
**And**
**THE DANCING CRAB AT**
**WASHINGTON HARBOUR,**
**LP.  D/b/a TONY & JOES**
**SEAFOOD PLACE,**

      **Defendants**

**JOINT PRETRIAL STATEMENT**

    **A.  Parties and Counsel**

Plaintiff:
Jonathan W. Rude

Plaintiff's Counsel:

| | |
|---|---|
| Paul J. Riley, Esq. | Rick A. Rude, Esq. |
| Suite 600 | Suite 103 |
| 1000 Connecticut Avenue, N.W. | 207 Park Avenue |
| Washington, D.C. 20036 | Falls Church, VA. 22046 |
| (202) 352-7677 | (703) 536-3063 |

Defendants:
Anthony B. Wood

Defendant's Counsel:
Barry M. Tapp, Esq.
14662 Cambridge Circle
Laurel, MD. 20707
(301) 725-6030

Dean A. Cibel and
The Dancing Crab At Washington Harbour, LP
D/b/a Tony & Joes Seafood Place

1

Defendants' Counsel:
R. Page Wyrough, Esq.
15051 Marlboro Pike
Upper Marlboro, MD. 20772
(301) 627-4600

The below is submitted pursuant to the Court's Order of May 30, 2008.

1. **All the information required by Local Civil Rule 16.5(b)**

    A. **Plaintiff's Statement of the Case.**

Plaintiff brought an action for assault and battery and intentional infliction of emotional distress based upon an incident that occurred on June 27, 2004 in the District of Columbia. There is complete diversity between plaintiff and defendants and the amount in controversy exceeds $75,000.00. The court has jurisdiction to hear the complaint pursuant to 28 U.S.C. 1332.

Defendant Dancing Crab at Washington Harbour, d/b/a Tony & Joes Seafood Place is a public establishment conducting business at the Washington Harbour Complex located at 3000-3050 K Street, N.W. Mr. Dean A. Cibel and Mr. Anthony B. Wood were employees of the Dancing Crab. Mr. Cibel was employed as a manager and Mr. Wood was a member of the 'door staff'. Tony & Joe's had established a strict employee code of conduct as well as a job description for the door staff.

Plaintiff alleges that he was assaulted/attacked by employees of Tony & Joe's Seafood Place. He alleged that Wood, Olayinka Adeboyeku and Oluwatosin Adeboyeku blocked the main entrance/exit of Tony & Joe's and were intending to attack him. The managers on duty were Robert Puzio and Dean A. Cibel. Puzio and Cibel, even though they were in a position to and had the duty to do so, failed to intervene, restrain or otherwise prevent the involved employees from attacking plaintiff.

The Dancing Crab management had earlier notice of, and were aware, that Olayinka Adeboyeku had previously left his duties, followed and assaulted another patron in the garage area of the Complex. The June 27, 2004 attack on plaintiff was the third such incident involving an assault by Olayinka Adeboyeku. Defendants were negligent in failing to properly supervise, control or disciple Adeboyeku. It was fully foreseeable that plaintiff was going to be attacked by the involved employees. Adeboyeku's actions violated the Dancing Crab employee policies. Defendants were grossly negligent in the retention of Olayinka Adeboyeku.

Olayinka  Adeboyeku and Anthony Wood searched the Harbour Complex looking for plaintiff. They observed Plaintiff walking away from the Complex on K Street, N.W. where upon they chased and attacked him.  Wood admitted to the blindsiding and tackling plaintiff onto a cement sidewalk. Wood also acknowledged that Adeboyeku repeatedly struck and kicked plaintiff in the face and head.

Plaintiff sustained serious injuries, including a concussion, multiple facial fractures, broken eye socket, broken nose, dislocated shoulder, numerous contusions and abrasions, torn clothing and permanent nerve damage to his face. Plaintiff was taken to George Washington University Hospital by ambulance.

II.     **Statement of Case of the Dancing Crab and Dean Cibel**

This action arises from an incident which was preceded by a confrontation between the Plaintiff and Olayinka  Adeboyeku during which the Plaintiff and several of his friends goaded and taunted Olayinka Adeboyeku.  As a result of that incident, the Plaintiff was barred from the premises of the Dancing Crab.  Despite the ban, the Plaintiff appeared at the Dancing Crab a week after that incident and on the night of the alleged

assault.  At that time, both Olayinka  Adeboyeku and Anthony Wood had been paid and were off the clock.

The Defendant, Olayinka  Adeboyeku, was agitated by the presence of the Plaintiff on the premises despite the banning.  The Plaintiff and three of his friends were escorted off the premises by an off duty Metropolitan police officer.  After the Plaintiff released the officer, an altercation occurred off premises between Olayinka Adeboyeku and the Plaintiff.  During that altercation, the Plaintiff and one of his three friends assaulted Olayinka  Adeboyeku.  Anthony Wood intervened.  The fight between the Plaintiff and  Olayinka Adeboyeku continued.  The Plaintiff was injured during that fight.

### III.    **Anthony Wood's Statement of the Case**

This case arises from an incident that occurred near the sidewalk on K St., NW in Georgetown.   The  incident  involved  a  fight  between  the  plaintiff  and  Olayinka Adeboyeku in which the friends of the plaintiff intervened to assist the plaintiff.  Upon observing the attack on Olayinka Adeboyeku,. Wood tackled the plaintiff, let him up and stated that if they were going to fight it had to be a fair fight, not three-on-one.  After, the plaintiff go to his feet, he and Olayinka Adeboyeku continued fighting.

### B.    **Plaintiff's Statement of Claims.**

a.   Assault and Battery as to defendant Woods.

b.   Negligence in the Hiring, supervision, control and retention of Adeboyeku and Wood as to defendants' Cibel and the Dancing Crab at Washington Harbour, LP.

c.   Negligence in failing to provide the duty of care to an invitee required of a public establishment in the District of Columbia.

Plaintiff is seeking punitive damages against all three defendants on the claims of assault and battery, negligence in the hiring, supervision and retention of Adeboyeku and Wood.

    C. **Defendants' stated defenses.**

      1. **Stated Defenses of the Dancing Crab and Dean Cibel**

        a.      The Defendants were not negligent as alleged.

        b.      The individual defendants, Anthony Wood and Olayinka Adeboyeku, were not acting as the agent, servant or employee or within the course and scope of their employment at the time of the acts or omissions alleged.

        c.      The Plaintiff was a trespasser.

        d.      The Plaintiff contributed to the incident and assumed the risk of his injuries.

        e.      The liability of these Defendants is derivative and to the extent that the individual defendants, Anthony Wood and Olayinka, are not liable, these Defendants cannot be held liable.

    **D. Defendant Wood's Stated Defenses**

    Defense of a Third Person

    E. **Plaintiff's witnesses.**

1. Custodian of Records, GWU Hospital. Medical and invoicing. (30 minutes)

2. Custodian of Records, Sibley Hospital, Medical and invoicing. (30 Minutes)

3. Custodian of Records, Professional Sports Care & Rehabilitation, Medical and invoicing. (30 minutes)

4.  Howard Smith, MPD, 3320 Idaho Avenue, N.W. Washington, D.C.; he is expected to testify to the condition of plaintiff and the scene after the attack on plaintiff. (One hour)

5.  Mark D. Lee, MPD, 3320 Idaho Avenue, N.W., Washington, D.C.; he is expected to testify regarding the attack on plaintiff, his investigation and the arrest of Anthony Wood and the condition of plaintiff at the hospital. (One hour)

6.  Nelson M. Morais, MPD, 3320 Idaho Avenue, N.W., Washington, D.C.; he is expected to testify to his investigation of the attack, the identification of Adeboyeku and arrest as a fugitive, and the condition of plaintiff. (One hour)

7.  Edmund Kennedy, MPD, 301 Indiana Avenue, N.W., Washington, D.C.; he is expected to testify regarding the attack on plaintiff. (One hour)

8.  Jonathan Cummings, 833 Mackall Avenue, McLean, VA; he is expected to testify regarding the attacks on him by Adeboyeku, the standards of conduct and the communications with Robert Puzio. (One hour)

9.  Denisha Natasha Jones, 201 N. Rose Avenue, Bloomington, IN; Deposition testimony read into record as per designated extracts (July 28, 2006).

10. James J. Sylvester, Camp Pendleton, CA. Deposition testimony read into record as per designated extracts. (June 26, 2006 and December 15, 2006)

11. Michael Gillman, 201 So. Biscayne Boulevard, Miami, FL.; he is expected to testify regarding the events of June 20th and June 27th, 2004, the standards of conduct for door staff and the threats made by Olayinka Adeboyeku. (Deposition to be read into the record if he does not appear)

12. Robert Owen, MPD, 3320 Idaho Avenue, N.W., Washington, D.C.; he is expected to testify regarding the events of June 26-27[th], 2004, and plaintiff's condition/injuries. (One hour)

13. Glenn Luckett, MPD, IPS/MPD Training Facility, Washington, D.C.; he is expected to testify regarding banning, the events of June 26-27[th], 2004, plaintiff's physical injuries on June 27, 2004. (One hour)

14. Jonathan W. Rude, 1822 Briar Ridge Ct., McLean, VA; he is expected to testify regarding his injuries sustained as a result of the June 27, 2004 attack, the events of June 20, 2004 and the standards of conduct for door staff. (One hour)

15. Juliet Lee, MD. GWU Hospital, 2150 Pennsylvania Avenue, N.W., Washington, D.C.; she is expected to testify regarding her examination of plaintiff and his injuries sustained on June 27, 2004. (One hour)

16. Craig E. Geist, MD GWU Dept. of Ophthalmology, 2150 Pennsylvania Avenue, N.W., Washington, D.C.; he is expected to testify to plaintiff's injuries and his treatment of plaintiff, including the permanent nerve damage. (One hour)

17. Stephen J. Wall, MD, 2141 K Street, N.W., Washington, D.C.; he is expected to testify to plaintiff's injuries, his treatment and the causation of the injuries to plaintiff's face. ** (Two hours)

18. Benjamin Shaffer, MD, 2021 K Street, N.W., Washington, D.C.; he is expected to testify to plaintiff's injuries and his treatment of plaintiff. (One hour)

19. David L. Carl, 1308 9th Street, N.W., Washington, D.C.; he is expected to testify regarding Wood's immunity letter and Wood's statements against interest made outside the court room at his preliminary hearing. (Hostile Witness) (One hour)

20. Anthony B. Wood, 4413 Jay Street, N.E., Washington, D.C.; He is expected to testify regarding the events of June 26-27[th], 2004, his immunity letter and public conversation with David Carl. (Hostile Witness) (May call, Two Hours)

21. Robert Puzio, 1200 Oak Hill Place, Annapolis, MD; he is expected to testify regarding the employment policies and standards of conduct, the events of June 20, 2004 and June 27, 2004. (Hostile Witness) (May call, Two hours)

22. All of defendants' identified witnesses.

23. Any witnesses necessary to the impeachment of a defense witness or exhibit.

### F. Dancing Crab and Dean Cibel Witnesses

1. Gregory Casten, 9470 Seven Locks Road, Bethesda, Maryland 20817; he is expected to testify regarding the hiring of Wood and Adeboyeku, the policies and operation of the Dancing Crab, the investigation and history of the incidents involving the Plaintiff and the individual Defendant, Adeboyeku, and Plaintiff's banning.

2. Jonathan Q. Eagleton, 6475 Cheyenne Drive, Apt. 203, Alexandria, Virginia, 22312; he is expected to testify regarding the policies and operations of the Dancing Crab, the incidents between the Plaintiff, his friends and the individual Defendant, Adeboyeku, and Plaintiff's banning.

3. Charles Moran, 4814 Nebraska Avenue, NW, Washington, DC 20116; he is expected to testify regarding the policies and operations of the Dancing Crab, the incidents between the Plaintiff, his friends and the individual Defendant, Adeboyeku, and Plaintiff's banning.

4. Oluwatosin Adeboyeku, 11106 Bennington Drive, Upper Marlboro, Maryland 20772, he is expected to testify regarding the policies and operations of the Dancing Crab, the incidents between the Plaintiff, his friends and the individual Defendant, Adeboyeku, and Plaintiff's banning.

5. David Kevin Pera, 3305 Ardley Court, Falls Church, Virginia 22041 he is expected to testify regarding the policies and operations of the Dancing Crab, the incidents between the Plaintiff, his friends and the individual Defendant, Adeboyeku, and Plaintiff's banning.

6. Olayinka Adeboyeku, 11106 Bennington Drive, Upper Marlboro, Maryland 20772, he is expected to testify regarding the policies and operations of the Dancing Crab, the incidents between the Plaintiff and his friends, the altercation with the Plaintiff and his friends, and Plaintiff's banning.

7. Custodian of Records, Secure Medical Care and Holy Cross Hospital

8. Samir Michael Zarkhosh, he is expected to testify to facts concerning the altercation between the Plaintiff and Olayinka Adeboyeku and Anthony Wood.

    **G. Defendant's Wood's Witnesses**

All witnesses listed on plaintiff's and co-defendant's witness list.

**Plaintiff's Trial Exhibits**

1. Plaintiff Medical Records from GWU University Hospital.

2. Plaintiff's Medical Records From Sibley Hospital.

3. Plaintiff's medical records associated with secondary treatment and rehabilitation.

4. Plaintiff's Medical Invoices/billing for medical treatment; Summary Excel document.

5.  Tony & Joe's Door Staff Manual.

6.  Tony & Joe's Oceanside Management Employment Manual.

7.  Olayinka Adeboyeku's employment application.

8.  Door Staff Schedules May – June 2004.

9.  Resume of Juliet Lee, MD.

10. Resume of Dr. Stephen Wall, MD

11. Resume of Craig Geist, MD

12. Resume of Benjamin Shaffer, MD

13. Police Report – Author Mark D. Lee

14. Official Record – Maryland District Court Case 06D00148819.

15. Indictment – November 2, 2004 Olayinka Adeboyeku

16. Police photographs of Crime Scene- K Street, N.W.

17. Police photographs of plaintiff on June 27, 2004 at GWU Hospital

18. Drawing of Anthony Wood – Exhibit 5 to July 11, 2006 deposition.

19. Drawing of Tony & Joe's Patio Bar

20. Photograph of back exit to Tony & Joe's Seafood Place

21. Wood interview Transcript June 27, 2004 (video optional)

22. Wood Immunity Letter

23. Wood Exhibit No. 4 to July 11, 2006 deposition

24. Dean Cibel's Answers to Plaintiff's Admissions

25. The Dancing Crab's Answers to Plaintiff's Admissions

26. Charge slip record of June 20, 2004 Dancing Crab at Washington Harbour

27. Photograph of Plaintiff July 6, 2004

28. Plaintiff's shirt worn June 27, 2004

29. Rehabilitation apparatus for shoulder injury.

30. Plaintiff's telephone record for June 20, 2004 reflecting call to Robert Puzio

31. Robert Puzio's telephone records for May-June 2004

32. Anthony Wood's telephone records for June-July 2004

33. Sample Payout Slips for Dancing Crab.

34. Dancing Crab Closing Financial Report for June 25, 2004 (Casten Dep. Ex. 21).

35. Dancing Crab Closing Financial Report for June 26, 2004 (Casten Dep. Ex. 22)

36. Dancing Crab Closing Financial Report for June 27, 2004 (Casten Dep. Ex. 23)

37. All exhibits identified by defendants.

38. Any exhibits necessary to the impeachment of a defense witness.

**Defendants, Dancing  Crab and Dean Cibel Trial Exhibits**

2.  Medical Records of Olayinka Adeboyeku's treatment at Holy Cross Hospital

3.  Statement of James Sylvester

4.  All exhibits identified by the Plaintiff and the other Defendant

    A.  **Plaintiff's Deposition Designations**

Gregory Casten

Page 8, lines 9-13
Page 13, lines 11-15
Page 37, lines 1-16
Page 38, lines 2-22
Page 39, lines 1-15
Page 40, lines 1-22
Page 41, lines 1-17
Page 66, lines 10-17
Page 67, lines 4-22
Page 82, lines 14-22
Page 83, lines 1-22
Page 84, lines 1-21

Page 86, lines 20-22
Page 87, lines 1-22
Page 88, lines 1-2

Dean Cibel

Page 20, lines 11-22
Page 24, lines 13-22
Page 25, lines 1-3, 13-22
Page 26, lines 1-6
Page 47, lines 19-22
Page 48, lines 1-5
Page 51, lines 2-16
Page 53, lines 20-22
Page 54, lines 1-4
Page 58, lines 8-12
Page 76, lines 21-22
Page 77, lines 1-17
Page 89, lines 8-22
Page 90, lines 1-5
Page 92, lines 16-19
Page 96, lines 4-16
Page 97, lines 15-18
Page 101, lines 9-22
Page 102, lines 1-22
Page 103, lines 1-10
Page 104, lines 1-19
Page 107, lines 5-14
Page 112, lines 11-22
Page 113, lines 1-4

Charles Moran

Page 6, lines 6-21
Page 16, lines 16-22
Page 17, lines 1-8
Page 19, lines 6-21
Page 22, lines 10-22
Page 23, lines 1-22
Page 25, lines 10-22
Page 26, lines 8-19
Page 30, lines 19-22
Page 31, lines 1-4
Page 32, lines 11-13
Page 33, lines 5-22

Robert Puzio

Page 4, lines 11-18
Page 13, lines 2-18
Page 14, lines 1-4
Page 15, lines 7-17
Page 16, lines 3-18
Page 18, lines 16-22
Page 19, lines 1-4
Page 22, lines 20-22
Page 23, lines 1-7
Page 26, lines 1-5
Page 35, lines 7-15
Page 37, lines 9-22
Page 38, lines 1-11
Page 40, lines 14-22
Page 41, lines 1-22
Page 42, lines 1-14
Page 50, lines 3-22
Page 51, lines 1-2
Page 52, lines 13-22
Page 54, lines 5-11
Page 55, lines 15-17
Page 56, lines 15-17, 21-22
Page 57, lines 1-2
Page 58, lines 3-22
Page 59, lines 1-8
Page 63, lines 3-5
Page 69, lines 4-12, 21-22
Page 70, lines 1-3
Page 82, line 15
Page 90, lines 6-22
Page 91, lines 1-7
Page 94, line 22
Page 95, lines 1-18

Denisha Natasha Jones

Page 3, lines 1-16
Page 5, lined 21-22
Page 6, lines 1-9
Page 7, lines 1-22
Page 8, lines 7-22
Page 9, lines 21-22
Page 10, lines 1-22

Page 11, lines 1-22
Pge 12, lines 1-22
Page 13, lines 3-16, 22
Page 14, lines 1-2


James Sylvester-I

Page 6, lines 3-25
Page 7, lines 1-14
Page 8, lines 6-25
Page 9, lines 1-9
Page 10, lines 9-13
Page 11, lines 1-25
Page 12, lines 1-18
Page 15, lines 16-25
Page 16, lines 1-14, 23-25
Page 17, lines 1-19
Page 31, lines 11-25
Page 32, lines 1-6
Page 38, lines 24-25
Page 39, lines 1-25
Page 40, lines 1-21

James Sylvester-II

Page 7, lines 15-24
Page 14, lines 17-18, 25
Page 15, lines 1-25
Page 16, line 1
Page 17, lines 1-25
Page 19, lines 4-16, 21-25
Page 20, lines 1-2, 7-16, 25
Page 21, lines 1-25
Page 22, lines 1-8, 10-15, 20-23
Page 23, lines 4-7, 9-23
Page 24, line 3
Page 29, lines 23-25
Page 30, lines 1-25
Page 31, lines 1-3
Page 34, lines 3-25
Page 35, lines 1-3


Michael Gillman

Page 4, lines 4-25
Pages 5 line 1, to Page 30, line 8


<u>Anthony Wood-I</u>

Page 8, lines 18-22
Page 9, lines 1-3
Page 12, lines 4-14
Page 16, lines 16-21
Page 24, lines 2-20
Page 25, lines 14-22
Page 26, lines 1-2, 11-22
Page 29, lines 1-22
Page 30, lines 1-2, 17-22
Page 31, lines 1-5, 12-21
Page 38, lines 11-22
Page 40, lines 5-11
Page 43, lines 13-18
Page 44, lines 4-6, 20-22
Page 45, lines 1-8
Page 47, line 22
Page 48, lines 1-6
Page 50, lines 4-11
Page 69, lines 18-22
Page 70, lines 1-22
Page 71, lines 1-11
Page 72, lines 1-13
Page 92, lines 8-18
Page 93, lines 16-22
Page 94, lines 1-7
Page 105, lines 19-21
Page 106, lines 1-9
Page 109, lines 2-4

<u>Anthony Wood-II</u>

Page 16, lines 12-22
Page 17, lines 1-4
Page 22, lines 11-22
Page 23, lines 1-6
Page 31, lines 3-22
Page 32, line 1, 9-22
Page 33, lines 1-9
Page 34, lines 12-21
Page 35, lines 21-22

Page 36, line 1
Page 43, lines 5-22
Page 44, lines 5-21
Page 45, lines 1-12
Page 46, lines 5-9
Page 51, lines 18-21
Page 53, lines 6-22
Page 54, lines 1-22
Page 557, lines 11-22
Page 58, lines 1-9
Page 59, lines 7-22
Page 60, lines 1-2
Page 61, lines 1-13
Page 63, lines 6-20
Page 64, lines 11-20
Page 76, lines 12-22
Page 77, lines 1-7, 20-22
Page 78, 1-22
Page 79, lines 1-10


## Cross Designations of the Dancing Crab & Dean Cibel

Gregory Casten

Page 6, lines 6-9
Page 8, lines 16-17
Page 9, lines 2-4
Page 11, lines 4-7
Page 17, lines 10-20
Page 18, lines 1-22
Page 19, lines 1-13
Page 34, lines 8-22
Page 35, lines 1-22
Page 36, lines 1-14, 19-22
Page 37, lines 16-22
Page 38, line 1
Page 39, lines 20-22
Page 41, lines 18-19, 22
Page 42, lines 1-18

The Defendants object to the designations at page 13, lines 11-15 and page 67, lines 4-22.

The Defendants, the Dancing Crab and Dean Cibel, object to the proffered use of this deposition as it is not in conformance with Rule 32.

Robert Puzio

Page 4, lines 9-10
Page 8, 15-22
Page 9, lines 1-10
Page 10, lines 21 through page 13, line 4
Page 14, lines 6-22
Page 15, lines 1-6
Page 19, 10-22
Page 20, lines 1-12
Page 23 lines, 8-14
Page 24, lines 17-22
Page 25, lines 1-22
Page 35, lines 16-19
Page 51, lines 3-8
Page 59, lines 10-13
Page 63, lines 20-22
Page 64, lines 1-13
Page 68, lines 18-22
Page 69, lines 1-3
Page 70, lines 4-22
Page 71, lines 1-22
Page 72, lines 1-4
Page 79, lines 10-14
Page 80, 18-22
Page 81, lines 1-22
Page 82, lines 1-19

The Defendants object to the designations at Pages 90, 91, 94 and 95.

The Defendants, the Dancing Crab and Dean Cibel, object to the proffered use of this deposition as it is not in conformance with Rule 32.

Charles Moran

Page 4, lines 9-12
Page 5, lines 18-22
Page 6, lines 1-5
Page 7, lines 1-11
Page 11, lines 11-22
Page 12, lines 5-22
Page 12 through Page 16, line 15
Page 18, lines 8-22
Page 19, lines 1-5
Page 20 through Page 22, line 9
Page 24 through Page 25, line 9

Page 26, lines 1-7, 20-22
Page 29, lines 19-22
Page 30, lines 1-4, 7-18
Page 32, lines 14-16, 18-22
Page 33, lines 1-5
Page 34, lines 1-5

These Defendants object to the designation of page 32, lines 11-13.

The Defendants, the Dancing Crab and Dean Cibel, object to the proffered use of this deposition as it is not in conformance with Rule 32.

James Sylvester-I

Page 4, lines 8-12
Page 5, lines 7-9, 13-25
Page 6, lines 1-2
Page 7, lines 15-22
Page 8, lines 1-5
Page 9, lines 10-25
Page 10, lines 1, 14-25
Page 14, lines 6-7, 12-14, 15-25
Page 15, lines 1-15
Page 17, lines 20-23
Page 19, line 19 through page 25, line 1
Page 25, lines 17-25
Page 26, lines 1-9, 15-19, 21-25
Page 27, lines 1-8, 11-25
Page 28 through page 31, line 5
Page 33, lines 6-11, 23-25
Page 34, lines 1-9, 14-25
Page 35, lines 1-21
Page 36, line 17 through page 38, line 8
Page 42, lines 12-25
Page 43 lines 1-10

The Defendants object to the designations at page 10, lines 9-13, page 39, lines 1-25 and page 40 lines 1-21.

James Sylvester-II

Page 8, lines 17-25
Page 37, lines 4-8, 11-21
Page 39, lines 10-16, 21-24
Page 57, lines 2-25
Page 58, lines 1-23

These Defendants object to all designations that are duplicative of the designations in Sylvester I. The Defendants object to the designations at page 17, lines 1-25 and page 24, line 3.

Denisha Natasha Jones

Page 13, lines 17-21
Page 14, lines 6-22
Pages 15 through 18, line 17
Page 18, lines 20-22
Page 19, lines 2-22
Page 20, lines 1-3

These Defendants object to the designation of page 9 lines 21-22; page 10, lines 1-16; and page 13, lines 8-12.

The Defendants, the Dancing Crab and Dean Cibel, object to the proffered use of this deposition as it is not in conformance with Rule 32.

Michael Gillman

The Defendants, the Dancing Crab and Dean Cibel, object to the proffered use of this deposition as it is not in conformance with Rule 32.

### B. **Plaintiff's Damages.**

Plaintiff suffered substantial physical injuries, including pain and suffering and permanent facial nerve damage. Plaintiff underwent three surgeries and a total of eight months of rehabilitation. Plaintiff has submitted a Summary of the medical expenses which total $73,600.29. Plaintiff is seeking a damage award for the involved pain and suffering, the permanent injury, and an award of punitive damages.

### 5. **PLAINTIFF'S STIPULATION OF FACTS.**

Pursuant to the Order of the court filed May 30, 2008 the parties hereby stipulate as follows: **(Note-the below reflects defendants' admission responses, deposition answers and contents of documents)**

1. The Dancing Crab at Washington Harbour, LP conducts business as a restaurant, bar and dining establishment at 3000-3050 K Street, N.W., Washington, D.C.

2. The Dancing Crab at Washington Harbour, LP conducts business under the trade name of "Tony & Joe's Seafood Place".

3. Tony & Joe's Seafood Place is a public establishment open to the public and subject to the anti-discrimination statutes of the District of Columbia.

4. Tony & Joe's Seafood Place was licensed to sell alcoholic beverages by the District of Columbia Alcoholic Beverage Regulation Administration.

5. Tony & Joe's Seafood Place business was subject to the regulations of the Alcoholic Beverage Regulation Administration.

6. Tony & Joe's Seafood Place established a bar closing time of 2:00 a.m. that was in effect during the period June 1, 2004 through July 30, 2004.

7. Dean A. Cibel was employed by Tony &Joes Seafood Place as a manager during the period May 1, 2004 through July 30, 2004.

8. Dean A. Cibel was issued a manager's license by the District of Columbia Alcoholic Beverage Control Board that was in effect during the period June 1, 2004 through July 30, 2004.

9. Robert Puzio was employed by Tony & Joe's Seafood Place as a manager during the period May 1, 2004 through July 30, 2004.

10. Anthony B. Wood was employed by Tony & Joe's Seafood Place as a member of the door staff during the period May 1, 2004 through Mid-July 2006.

11. Anthony B. Wood was working as a doorman the evening of June 26-27, 2004.

12. Oluwatosin Adeboyeku was employed by Tony & Joe's Seafood Place during the period May 1, 2004 through Mid-July 2006.

13. Olayinka Adeboyeku was employed by Tony & Joe's as a member of the door staff during the period June 1, 2004 through June 27, 2004.

14. Oluwatosin Adeboyeku was working at Tony & Joe's Seafood Place the evening of June 26-27, 2004.

15. Olayinka Adeboyeku was working at Tony & Joe's Seafood Place as a doorman the evening of June 19-20, 2004.

16. Olayinka Adeboyeku was working at Tony & Joe's Seafood Place as a doorman the evening of June 26-27, 2004.

17. Anthony B. Wood possessed a criminal conviction history that included prior felony convictions for crimes of violence, including unlicensed possession of weapons, possession of drugs, and distribution of drugs. (Dancing Crab's answer to complaint, pg. 2, p. 16; Admission. Resp. #48)

18. Dean A. Cibel was present and working as a manager for Tony & Joe's Seafood Place the evening of June 19-20, 2004.

19. Dean A. Cibel was present at the facilities of Tony & Joe's Seafood Place at approximately 11:00 a.m. to approximately 3:00 p.m. on June 20, 2004.

20. On the morning and early afternoon of June 20, 2004 Dean A. Cibel, accompanied by Anthony B. Cibel, greeted patrons and brunch/lunch guests at Tony & Joe's Seafood Place.

21. Plaintiff was also present at Tony & Joe's Seafood Place during the period 12 p.m. to approximately 3:00 p.m. on June 20, 2004.

22. Tony & Joe's Seafood Place provided plaintiff and his guests with a fifty (50%) percent discount on the bill for the brunch.

23. The waitress that served the brunch to plaintiff was Denisha Natasha Jones.

24. Plaintiff provided Denisha Natasha Jones with a tip in the amount of $60.00 which reflected the dollar amount of the 50% discount that Tony & Joe's Seafood Place provided to plaintiff.

25. Dean A. Cibel was present and working as manager the evening of June 26-27, 2004.

26. Dean A. Cibel was present at the facilities of Tony & Joe's Seafood Place during the period 1:00 a.m. to approximately 3:00 a.m. on June 27, 2004.

27. Michael Gillman was employed by Tony & Joe's Seafood Place as a member of the door staff during the period June 1, 2004 through June 27, 2004.

28. James J. Sylvester was employed by Tony & Joe's Seafood Place as a member of the door staff and then as a bar back the summer season of 2004.

29. Tony & Joe's Seafood Place facilities include an interior office in which Tony & Joe's has monitors on which the images from surveillance cameras are displayed.

30. The surveillance cameras provide a view of the interior bar and lounge area of Tony & Joe's Seafood Place.

31. On June 27, 2004 Anthony B. Wood was arrested and charged with aggravated assault on plaintiff. (Admiss. Resp. #3)

32. On July 8, 2004 Olayinka Adeboyeku was arrested by the Montgomery County Police and charged as being a fugitive from arrest in the District of Columbia (Admiss. Resp. #6)

33. On July 14, 2004 Olayinka Adeboyeku was arraigned in the Superior Court of the District of Columbia and charged with aggravated assault on plaintiff. (Admiss. Resp. #7)

34. That in May –June 2004, the work duties of Robert Puzio included the responsibility for hiring, supervision and disciple of door staff.

35. Robert Puzio was responsible for the supervision and disciple of Anthony B. Wood.

36. Robert Puzio was responsible for the supervision and disciple of Olayinka Adeboyeku.

37. The duties of managers of Tony & Joe's Seafood Place included the supervision of door staff as well as restaurant service personnel.

38. Tony & Joe's Seafood Place had a Door Staff Manual which contained a description of the job duties of the door staff.

39. The duties of the door staff including helping in the clean up of the facilities after closing, restocking the bars, and providing security to escort other staff members safely to their cars.

40. Olayinka Adeboyeku and Anthony B. Wood were subject to the standards of conduct established by Tony & Joe's Seafood Place and were required to help clean up the restaurants after closing. (Admiss. Resp. #21,22, 27, deps. Responses)

41. Tony & Joe's Seafood Place Door Staff Manual prohibited "fights, pushing matches, and threats".

42. Tony & Joe's Seafood Place had an Employee Manual identified as the employee manual for "Oceanside Management Corporation".

43. The conduct of the door staff was subject to the contents of both the Door Staff Manual and the Employee Manual.

44. The Employee Manual provided standards of conduct for the employees in regard to employee's treatment of customers, managers and other employees.

45. The Employment Manual permitted the drinking of alcoholic beverages by employees for a period of one hour after the end of the employee's work shift.

46. The Employment Manual made a distinction between conduct infractions which resulted in "progressive disciple" and those which resulted in immediate termination.

47. The Employment Manual contained a list of conduct which was to result in the immediate termination of the employee.

48. The Employment Manual listed, among other items, the following conduct as resulting in immediate termination: (1) discourtesy, rudeness, or a bad attitude toward customers or managers, (2) willful destruction of property, (3) fighting, threatening, or abusive language or harassment of other employees or guests, (4) committing immoral acts or indecent conduct or a violation of a no solicitation rule.

49. It was a normal occurrence for people to remain in the inside bar area of Tony & Joe's Seafood Place after 2:00 a.m.

50. Individuals that were allowed to remain in the inside bar area after 2:00 a.m. included friends of employees that were there to pick up the employee to give the employee a ride home.

51. On June 27, 2004 James Sylvester and Michael Gillman invited plaintiff into the main inside bar area of Tony & Joe's Seafood Place to wait for them so that plaintiff could give Mr. Gillman a ride home.

52. During the period June 1, 2004 through July 30, 2004 Mr. Jonathan Eagleton was the restaurant manager at Nick's Riverside Grill and was not a manager or nor an employee of Tony & Joe's Seafood Place.

53. On June 20, 2004 Olayinka Adeboyeku engaged in a confrontation with Mr. Jonathan Cummings in front of the lower fountain at the Washington Harbour Complex.

54. On June 20, 2004 Olayinka Adeboyeku left his posted location and went to the garage area of the Washington Harbour Complex and engaged in an altercation with Jonathan Cummings.

55. On June 20, 2004, plaintiff called Robert Puzio at 1:51 a.m. to report to Mr. Puzio the altercation between Olayinka Adeboyeku and Jonathan Cummings.

56. The cell phone records of Robert Puzio reflect that Puzio received a telephone call lasting two minutes from plaintiff's cell phone at 1:51 a.m. on June 20, 2004.

57. The cell phone records of Robert Puzio reflect that Puzio received a telephone call from Michael Gillman at 3:38 a.m. on June 27, 2004.

58. Michael Gillman informed Mr. Puzio of the events that had occurred involving Anthony B. Wood, Olayinka Adeboyeku and plaintiff and further informed Mr. Puzio that Gillman was quitting his employment with Tony & Joe's Seafood Place.

59. On June 27, 2004 at 2:00 a.m. Olayinka Adeboyeku, accompanied by Anthony B. Wood and Oluwatosin Adeboyeku stood outside the main entrance/exit of Tony & Joe's Seafood Place.

60. Olayinka Adeboyeku was acting in an agitated manner including pounding his fist into his hand, banging and pulling on the locked doors, verbally threatening plaintiff, proceeding into the summer garden/patio area of Tony & Joe's and tipping over tables, kicking chairs.

61. Anthony B. Wood approached Robert Owen and Glenn Luckett telling them that there was a problem and that there was nothing he could do to stop it.

62. Robert Owen and Glenn Luckett entered Tony & Joe's Seafood Place and spoke to plaintiff informing him of what was transpiring and asking plaintiff if he would like to be escorted out a back/side entrance to avoid a confrontation.

63. At approximately 2:25 a.m. Robert Owen escorted plaintiff, Michael Gillman and two other individuals out a back/side entrance ending up on the boardwalk adjacent to the Potomac River.

64. Olayinka Adeboyeku and Anthony Wood followed Owen and plaintiff onto the boardwalk where Adeboyeku continued to bang on and tip over tables at the Sequoia Restaurant.

65. Robert Owen had to draw his mace canister ordering Adeboyeku and Wood back toward Tony & Joe's Seafood Place.

66. Olayinka Adeboyeku and Anthony Wood cut through the back/side entrance of Tony & Joe's Seafood Place passing through the main bar area where Adeboyeku announced his intent to attack plaintiff and further threatened James Sylvester.

67. Adeboyeku, accompanied by Anthony Wood, searched the garage area for plaintiff.

68. Anthony Wood, as they were leaving the garage told Adeboyeku that "he was going to get into trouble" if he went out after plaintiff.

69. Anthony Wood expected Adeboyeku to engage in conduct that would result in the arrest of Adeboyeku.

70. Adeboyeku and Wood observed plaintiff, Micheal Gillman and two other persons walking past the front of the Washington Harbour Complex and away from them.

71. Adeboyeku chased and ran after plaintiff as plaintiff walked up K Street.

72. Adeboyeku paced himself a step behind and to the left of plaintiff.

73. Adeboyeku lunged at plaintiff striking plaintiff in the back of his head.

74. Michael Gillman grabbed Adeboyeku in an attempt to restrain the attack on plaintiff.

75. After plaintiff had gotten up from the sidewalk, Anthony B. Wood blindsided and tackled plaintiff around his hips or thighs causing plaintiff to fall onto the cement sidewalk.

76. Olayinka Adeboyeku further engaged in an assault and battery of plaintiff.

77. Plaintiff sustained numerous physical injuries, including a concussion, dislocated shoulder, broken eye socket, multiple broken facial bones, broken nose, numerous cuts, contusions and abrasions, torn clothing.

78. Olayinka Adeboyeku and Anthony B. Wood then fled toward the Washington Harbour Complex.

79. Plaintiff was taken by ambulance from the scene of the attack to the George Washington University Hospital were he was admitted to the intensive care unit.

80. That subsequent to June 20, 2004 Olayinka Adeboyeku was retained as an employee of Tony & Joe's Seafood Place.

81. That Robert Puzio, between the period June 20 and 27, 2004, did not conduct any investigation of the events that occurred on June 20, 2004 between Olayinka Adeboyeku and Jonathan Cummings.

82. That subsequent to June 28, 2004 Olayinka Adeboyeku was terminated as an employee of Tony & Joe's Seafood Place.

83. That subsequent to June 28, 2004 Anthony B. Wood was retained as an employee of Tony & Joe's Seafood Place.

84. Plaintiff incurred medical expenses in the amount of $73,600.29 as a result of the attack.

(Plaintiff's Proposed Fact Stipulations-to be provided upon response of defendants to the above Fact Stipulations). These proposed stipulations to include as follows:

    a.  That after Olayinka Adeboyeku first struck plaintiff in the head, plaintiff was then only trying to defendant himself. (Wood-II, Dep. Page 61, lines11-13, Wood Police Interview, page 6).

    b.  That Anthony Wood positioned himself between Michael Gillman and Olayinka Adeboyeku/plaintiff telling Gillman that it was going to be a 'fair fight'. (Wood Amended Admission responses, no. 42).

c.  That Anthony Wood was approximately 5' 10" tall and weighed 240-260 pounds in June 2004.

d.  That Olayinka Adeboyeku was approximately 6'0" tall and weight approximately 245-250 pounds in June 2004.

e.  That Olayinka Adeboyeku kicked plaintiff in the head and face several times during the alleged altercation, including as plaintiff lay unconscious on the sidewalk. (Wood-II, dep. Page 53, Wood Police Interview, pages 7, 10, 12).

f.  Olayinka Adeboyeku struck plaintiff in the head repeatedly as plaintiff's head was bouncing off the sidewalk and while plaintiff lay unconscious and unable to defend himself. (Wood Police Interview, pages 7, 11-13).

g.  Anthony B. Wood was called as a witness at the criminal trial of Olayinka Adeboyeku at which time Wood demanded and was provided with immunity from criminal prosecution for his participation in the June 27, 2004 attack on plaintiff. (Wood Amended Admissions, 48, 50, Ex. 4-Immunity Ltr)

**DANCING CRAB'S & CIBEL'S RESPONSE TO REQUEST FOR STIPULATION OF FACTS**

The Dancing Crab and Dean Cibel respond to the Plaintiff's request for stipulations as follows:

1.  These Defendants will stipulate to the facts contained in paragraphs 1, 2, 4, 6 through 19, 25 through 28, 38, 80, 82, and 83

2.  These Defendants will not stipulate to the facts contained in paragraphs 3, 5, 20

through 24,  29 through 37, 39, 40 through 79, 81, and 84.

The Dancing Crab and Dean Cibel will not stipulate to the facts set forth in

paragraphs a, b, e, f, or g.

The Dancing Crab and Dean Cibel will stipulate to the facts set forth in paragraphs c

and d.

**DEFENDANT ANTHONY WOOD DOES NOT STIPULATE TO ANY OF THE PLAINTIFF'S REQUESTED STIPULATIONS OF FACT**

6.  **STIPULATIONS CONCERNING AUTHENTICITY OF DOCUMENTS.**

The parties have exchanged trial exhibit lists. The parties hereby stipulate to the

authenticity of the following listed trial exhibits:

1.  Plaintiff's Medical Records from GWU University Hospital.

2.  Plaintiff's Medical Records from Sibley Hospital.

3.  Plaintiff's Medical Records associated with secondary treatment and

rehabilitation.

4.  Plaintiff's Medical Invoices/billing for medical treatment as reflected in Summary

Excel document.

5.  Tony & Joe's Seafood Place Door Staff Manual.

6.  Tony & Joe's Seafood Place Oceanside Management Employment Manual.

7.  Olayinka Adeboyeku's employment application to Tony & Joe's Seafood Place.

8.  Tony & Joe's Door Staff Schedules May 1-15, 2004 and June 21-27, 2004.

9.  Resume of Juliet Lee, M.D.

10. Resume of Stephen Wall, M.D.

11. Resume of Craig Geist, M.D.

12. Resume of Benjamin Shaffer, M.D.

13. Police Report Complaint Number 04088184, 2 pages June 28, 2004.

14. Official Record – Maryland District Court Case 06D00148819

15. Indictment – November 2, 2004 Olayinka Adeboyeku.

16. Police Photographs of Crime scene, K Street, N.W.

17. Police Photographs of plaintiff on June 27, 2004 taken as GWU Hospital.

18. Drawing made by Anthony Wood, Exhibit 5 to July 11, 2006 deposition.

19. Drawing of Patio area of Tony & Joe's Seafood Place.

20. Photograph of back exit to Tony & Joe's Seafood Place.

21. Anthony B. Wood MPD Interview Transcript June 27, 2004.

22. Anthony B. Wood Immunity Letter.

23. Anthony B. Wood Exhibit No. 4, criminal conviction history to July 11, 2006 deposition.

24. Dean A. Cibel, extracted responses to Plaintiff's Admissions.

25. Tony & Joe's Seafood Place extracted responses to Plaintiff's Admissions.

26. Charge Slip record, June 20, 2004 Tony & Joe's Seafood Place, 50% discount.

27. Photograph of plaintiff taken on July 6, 2004.

28. Plaintiff's shirt worn June 27, 2004.

29. Rehabilitation apparatus for shoulder injury (demonstrative evidence).

30. Plaintiff's telephone record for June 20, 2004 reflecting call to Robert Puzio.

31. Robert Puzio's telephone records for May-June 2004.

32. Anthony B. Wood's telephone records for June-July 2004.

33. Sample Tony & Joe's Payout Slips.

34. Tony & Joe's Seafood Place Financial Report for June 25, 2004 (Casten deposition exhibit no. 21).

35. Tony & Joe's Seafood Place Financial Report for June 26, 2004 (Casten deposition exhibit no. 22)

36. Tony & Joe's Seafood Place Financial Report for June 27, 2004 (Casten deposition exhibit no. 23).

**DEFENDANT WOOD STIPULATES TO THE AUTHENTICITY MEDICAL RECORDS OF PLAINTIFF ONLY AT GWU AND SIBLEY HOSPITAL & 18 & 19, supra.**

**7.   STIPULATIONS CONCERNING ADMISSIBILITY OF DOCUMENTS.**

The parties hereby stipulation to the admission of the following listed trial exhibits:

A.  Plaintiff's Exhibits 1-4, medical records, invoices and summary excel sheet.

Defendants, the Dancing Crab and Dean Cibel, will stipulate to the admissibility of these records.

B.  Plaintiff's Exhibits 4-8, defendant door staff manual, employment manual, employment application of Olayinka Adeboyeku and door staff schedules.

C.  Plaintiff's Exhibits 9-12, resumes of physicians treating plaintiff.

Defendants, the Dancing Crab and Dean Cibel, will not stipulate to the admissibility of these records.

D.  Plaintiff's Exhibit 13 – Police Report complaint, June 27, 2004 author, Mark D. Lee, MPD.

Defendants, the Dancing Crab and Dean Cibel, will not stipulate to the admissibility of these records.

E.  Plaintiff's Exhibit 14 – Official Record, Maryland District Court, Case No. 06D00148819.

Defendants, the Dancing Crab and Dean Cibel, will not stipulate to the admissibility of these records.

F.  Plaintiff's Exhibit 15 – Official Record, Superior Court of the District of Columbia, Case No. F-040-4460/4085, Indictment.

Defendants, the Dancing Crab and Dean Cibel, will not stipulate to the admissibility of these records.

G.  Plaintiff's Exhibit 16 – Photograph of Crime Scene, June 27, 2004 K Street, N.W., Washington, D.C.

Defendants, the Dancing Crab and Dean Cibel, will stipulate to the admissibility of these records.

H.  Plaintiff's Exhibit 17 – Photographs of plaintiff, June 27, 2004 at GWU University Hospital.

Defendants, the Dancing Crab and Dean Cibel, will stipulate to the admissibility of these records.

I.  Plaintiff's Exhibit 18 – Drawing made by Anthony B. Wood, July 11, 2006.

Defendants, the Dancing Crab and Dean Cibel, will stipulate to the admissibility of these records.

J.  Plaintiff's Exhibit 19 – Drawing of Tony & Joe's Seafood Place Patio area.

Defendants, the Dancing Crab and Dean Cibel, will stipulate to the admissibility of these records.

K.  Photograph of back exit to Tony & Joe's Seafood Place.

Defendants, the Dancing Crab and Dean Cibel, will stipulate to the admissibility of these records.

L.  Anthony B. Wood MPD Interview transcript June 27, 2004.

Defendants, the Dancing Crab and Dean Cibel, will not stipulate to the admissibility of these records.

M.  Anthony B. Wood Immunity Letter.

Defendants, the Dancing Crab and Dean Cibel, will not stipulate to the admissibility of these records.

N.  Anthony B. Wood, criminal conviction history, Wood deposition Exhibit 4.

Defendants, the Dancing Crab and Dean Cibel, will not stipulate to the admissibility of these records.

O.  Dean A. Cibel, extracted responses to plaintiff's Admissions.

Defendants, the Dancing Crab and Dean Cibel, will not stipulate to the admissibility of these records.

P.  Tony & Joe's Seafood Place extracted responses to plaintiff's Admissions.

Defendants, the Dancing Crab and Dean Cibel, will not stipulate to the admissibility of these records.

Q.  Charge Slip record, June 20, 2004 Tony & Joe's Seafood Place.

Defendants, the Dancing Crab and Dean Cibel, will stipulate to the admissibility of these records.

R.  Photograph of plaintiff taken July 6, 2004.

Defendants, the Dancing Crab and Dean Cibel, will stipulate to the admissibility of these records.

S.  Plaintiff's shirt worn June 27, 2004 (demonstrative evidence).

No stipulation is necessary.

T.  Rehabilitation apparatus for shoulder injury (demonstrative evidence).

No stipulation is necessary.

U.  Plaintiff's telephone record for June 20, 2004 reflecting call to Robert
     Puzio.

Defendants, the Dancing Crab and Dean Cibel, will not stipulate to the admissibility of these records.

V.  Robert Puzio's telephone records for June – July 2004.

Defendants, the Dancing Crab and Dean Cibel, will not stipulate to the admissibility of these records.

W. Tony & Joe's Sample Payout Slips.

Defendants, the Dancing Crab and Dean Cibel, will not stipulate to the admissibility of these records.

X.  Plaintiff's Exhibits 34-36, Tony & Joe's Seafood Place Financial Reports
     for June 25, June 26, and June 27, 2004.

Defendants, the Dancing Crab and Dean Cibel, will not stipulate to the admissibility of these records.

**DEFENDANT WOOD STIPULATES TO THE ADMISSIBILITY OF PLAINTIFF'S G, H, I & J.**

8. **MOTIONS TO BE DECIDED BEFORE OR AT COMMENCEMENT OF TRIAL.**

Plaintiff will file the following:

1. Plaintiff's renewed motion for sanctions for non-production of financial records necessary to punitive damages claim and to defendants' claim of common operation of restaurants at the Washington Harbour Complex.

2. Plaintiff's motion to exclude witnesses and any evidence not previously identified in response to plaintiff's discovery requests.

3. Plaintiff's motion for rule on witnesses, excluding plaintiff as necessary to assist counsel at trial..

Defendant Wood anticipates filing a motion *in limitine* regarding reference to police records, criminal trial proceeding and immunity letter

9. **PROPOSED AMENDMENTS TO PLEADINGS.**

Plaintiff is not proposing any amendment to his pleadings at this time.

**A. Defendant Dancing Crab and Dean Cibel Proposed Amendments**

These Defendants may move to amend their answer to add the defenses of release, payment or accord and satisfaction depending upon the content of the alleged "confidential settlement memorandum" between the Plaintiff and the Defendant, Olayinka Adeboyeku.

10. **ESTIMATED TIME OF TRIAL.**

Plaintiff estimates that presentation of plaintiff's case in chief will take 2 to 3 days.

Amount of time necessary to Rebuttal cannot be stated.

Defendants, the Dancing Crab and Dean Cibel, estimates that the presentation of Defendants' defense will take 1 day.

**11. ANY WAIVER OF JURY TRIAL.**

Defendants have requested jury trial.

**12. PROPOSED AND AGREED VOIR DIRE QUESTIONS.**

1. Has any member of the panel any knowledge, from any source, about the incidents involving the parties to this action or know Jonathan W. Rude, Olayinka Adeboyeku, Anthony B. Wood, Courtney Kelly, William "Billy" Korman, Jr., Dean A. Cibel, Anthony Cibel, Nicholas Cibel, Csabal Magassey, Rodger Weeks, or Gregory Casten.

2. Has any member of the panel ever been employed at or by the following entities: The Dancing Crab at Washington Harbour, LP, Nick's Riverside Grill, Cabanas, Oceanpro Industries, Inc., Profish, Ltd., Oceanside Management Corporation, The Dancing Crab Restaurant, or Kaufman's Tavern.

3. Does any member of the panel know, or is a member of the panel a friend of, or have any knowledge of, any witnesses in this case: See parties' witness lists.

4. Does any member of the panel know, or is any member of the panel a friend of, the attorneys in this case: Paul J. Riley, Rick A. Rude, R. Page Wyrough, Barry M. Tapp.

5. Has any member of the panel, or any close friend or relative, ever been a plaintiff, or called as a witness by a plaintiff, in any criminal action.

6. Has any member of the panel, or any close friend or relative, ever been a defendant, or called as a witness by a defendant, in any criminal action.

7.  Has any member of the panel, or any close friend or relative, ever been to The
    Dancing Crab at Washington Harbour, LP d/b/a Tony & Joe's Seafood Place,
    Nick's Riverside Grill, Cabanas, The Dancing Crab Restaurant in Washington,
    D.C., or Kaufman's Tavern in Annapolis, MD.

8.  Have you or any member of your family been a defendant in a lawsuit or had a
    claim of any kind filed against them? If so, when, where and under what
    circumstances.

9.  Have you or any member of your family ever been accused of assaulting anyone.

10. Has any member of the panel or any close friend or family member ever been
    employed in the field of law enforcement.

11. Is there any member of the panel that has any legal training.

12. Is there any member of the panel who, for any reason, is unable to sit in judgment
    on a case involving the individuals and businesses that have been identified as
    defendants.

13. Is there any reason why you could not sit as a juror for 4 days.

14. Is there any reason, not heretofore discussed, why any member of the panel feels
    that he or she would be unable to sit and hear this case and then render a fair and
    impartial verdict.

**13. <u>PROPOSED JURY INSTRUCTIONS</u>**

Standardized Civil Jury Instructions for the District of Columbia

<u>Tony Wood's Jury Instructions:</u>
    **I.**    **Function of the Judge and Jury**
        1-1        Function of the Court
        1-2        Function of the Jury
        1-3        Significance of Party Designations
        1-4        Juror's Duty to Deliberate

|       | 1-5  | Attitude and Conduct of Jurors |
|       | 1-6  | Instructions to Be Considered as a Whole |
|       | 1-7  | Court's Commenting on the Evidence |
|       | 1-8  | Court's Questions to Witnesses |
|       | 1-9  | Jury Not to Take Cue from Judge |
|       | 1-10 | Ruling on Objections |
|       | 1-11 | Equality of Litigants--Corporations |
|       | 1-12 | Equality of Litigants--Individuals |

**II.     Weighing the Evidence**

|       | 2-1  | Evidence in the Case |
|       | 2-2  | Evidence in the Case—Judicial notice |
|       | 2-3  | Inferences |
|       | 2-4  | Inadmissible and Stricken Evidence |
|       | 2-5  | Statements of Counsel |
|       | 2-6  | Jury Recollection Controls |
|       | 2-7  | Evidence Admitted Against One Party Only |
|       | 2-8  | Burden of Proof |
|       | 2-9  | Evidence Produced by Adversary |
|       | 2-10 | Direct and Circumstantial Evidence |

**III.    Evaluating the Witnesses**

|       | 3-1  | Jury to Determine Credibility of Witnesses |
|       | 3-2  | Number of Witnesses |
|       | 3-3  | Expert Opinion |
|       | 3-5  | Depositions as Evidence |
|       | 3-6  | Impeachment by Prior Inconsistent Statements |

**IV.    Multiple Parties**

|       | 4-3  | Multiple Defendants |
|       | 4-5  | Consideration of the Evidence—Corporate Party's Agents and Employees |
|       | 4-6  | Corporate Entity—Alter Ego |

**XII   Damages-General**

|       | 12-1 | Damages-Jury to Award |
|       | 12-2 | Extent of Damages-Proximate Cause |
|       | 12-3 | Burden of Proof—Speculative Damages |
|       | 12-4 | Multiple Defendants—Size of Verdict |
|       | 12-5 | Damages Verdict—Multiple Defendants |

**XIII.   Personal Injury Damages**

|       | 13-1 | Damages-Elements |
|       | 13-7 | Aggravation of Preexisting Condition |

**XIX   Assault and Battery**

19-1     Assault
19-3     Battery
19-6     Assault and Battery-Affirmative Defenses

<u>Dancing Crab and Dean Cibel's Proposed Jury Instructions</u>

**V.     Negligence**

5.01    Negligence
5.02    Negligence Defined
5.03    Relative Concept'
5.04    Extreme Caution or Exceptional Skill Not Required
5.05    Right to Assume Proper Conduct by Others
5.06    No Comparative Negligence
5.12    Proximate Cause Defined
5.15    Contributory Negligence Defined
5.16    Assumption of the Risk Defined

**VI.    Employer-Employee Liability**

6.01 Establishing Employer Employee Relationship
6.02  Vicarious Liability Bases
6.04 Agency or Scope of Employment Contested
6.05 Employer and Employee Sued

**X.     Premises Liability**

10.01   Owner's Duty Dependent on Plaintiff's Status
10.02   Trespasser – Definition of and Duty Toward

These Defendants adopt and incorporate the proposed jury instructions of Anthony Wood with the exception of proposed jury instruction 4-6. These Defendants also reserve the right to submit such special jury instructions as the testimony allowed and evidence admitted during trial warrants.